UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LORETTA JEAN BERNARDI** and **SOLOMON HUEBNER-MENDOZA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NATIONAL DEBT RELIEF, LLC**,<br><br>Defendant. | Case No. 1:25-cv-06334-GHW-HJR |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


MEMORANDUM OF LAW ........ 1

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

A. NDR and Its Website ........ 2

B. Advertising Tools on NDR's Website ........ 3

C. Plaintiffs' Interaction with the Advertising Tools on NDR's Website ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 4

I. As a Party to Plaintiffs' Communications with the Website, NDR Cannot Be Liable for a Direct Violation of Section 631(a). ........ 5

II. Plaintiffs Have Not Alleged Facts Sufficient to State a Plausible Aiding-and-Abetting Claim Against NDR Under Section 631(a). ........ 5

A. Plaintiffs' Allegations Fail to Establish That Each of the Advertisers Violated Section 631(a). ........ 7

1. Section 631(a)'s First Clause Applies Only to Interceptions Over a Phone Line and Thus Does Not Apply Here. ........ 7

2. Plaintiffs Fail to Allege a Violation of Section 631(a)'s Second Clause. ........ 7

3. Plaintiffs' Failure to Allege Plausible Violations of Section 631(a)'s First and Second Clauses Precludes Them from Establishing a Violation of the Third Clause. ........ 10

B. Even if Plaintiffs Could Establish that The Advertisers Violated CIPA, They Have Not Alleged Facts Sufficient to Establish that NDR Acted With the Knowledge and Intent Necessary to Hold It Liable for the Advertiser' Violations. ........ 11

III. Any Ambiguity in Section 631(a) Should be Construed in NDR's Favor Under California's Rule of Lenity. ........ 13

CONCLUSION ........ 14

WORD COUNT CERTIFICATION ........ 15

CERTIFICATE OF SERVICE ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ....9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....3, 4

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-01434-SSS-KKX, 2024 WL 2228973 (C.D. Cal. May 6, 2024)....4, 5, 6

*Cody v. Lacoste USA, Inc.*,
No. 8:23-cv-00235-SSS-DTB, 2024 WL 3761288 (C.D. Cal. July 30, 2024) ....5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....9

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)....4

*Doe v. Eating Recovery Center, LLC*,
No. 3:23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....2, 8, 13

*In re Google Assistant Privacy Litigation*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....4, 5

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)....5

*Heiting v. Taro Pharmaceuticals* ,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....7, 9

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ....5

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....4, 6, 11, 12

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................7

*Torres v. Prudential Financial, Inc.*,
No. 3:22-cv-07465-CRB, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................9

*Valenzuela v. Kroger Company*,
No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025) ....................6

*Valenzuela v. Super Bright LEDs Inc.*,
No. 5:23-cv-01148, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ....................7, 9, 10

**State Cases**

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ....................13

*Licea v. Finish Line, Inc.*,
No. 23STCV22390[1] (Cal. Super. Jul. 10, 2024) ....................11, 12

*People v. Beeman*,
35 Cal. 3d 547 (1984) ....................6, 11

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ....................13

**State Statutes**

CALIFORNIA PENAL CODE § 631(a) .................... *passim*

[1] Attached to the Declaration of A. Chapman as **Exhibit A**.

## MEMORANDUM OF LAW

Defendant National Debt Relief, LLC ("NDR"), by and through undersigned counsel, hereby moves to dismiss Plaintiffs' First Amended Complaint (the "FAC").

## PRELIMINARY STATEMENT

Plaintiffs assert a single claim against NDR under Section 631(a) of the California Invasion of Privacy Act ("CIPA") based on NDR's alleged use of common analytical and advertising tools provided by third-party platforms—including Meta, Google, Microsoft, Twitter, TikTok, The Trade Desk, and Claritas (collectively, the "Advertisers")—on NDR's public website, www.nationaldebtrelief.com (the "Website"). According to Plaintiffs, NDR's use of such tools violated Section 631(a)—a criminal statute enacted in 1967 to prohibit unauthorized wiretapping or eavesdropping on confidential communications—because it enabled the Advertisers to collect certain information about Plaintiffs' interactions with the Website.

Plaintiffs' claim fails as a matter of law for several reasons.

First, Plaintiffs' own allegations establish that NDR was a party to any "communications" they had with the Website. Courts consistently hold that Section 631(a) does not apply to the participants of a communication. Thus, NDR cannot be liable for a direct violation of Section 631(a).

Second, Plaintiffs cannot allege facts sufficient to circumvent this general prohibition under a derivative aiding-and-abetting theory of liability. To assert a plausible aiding-and-abetting claim against NDR, Plaintiffs must allege, at a minimum, that a third party—in this case, the Advertisers—independently violated Section 631(a). Plaintiffs' vague, generalized allegations concerning how and when Advertisers use information collected by tracking technologies fail to clear this hurdle.

Third, even if Plaintiffs could plausibly allege a predicate CIPA violation by the Advertisers, their aiding-and-abetting claim against NDR would still fail because the FAC lacks facts sufficient to establish that NDR acted with the requisite mental state. Plaintiffs do not allege that NDR knew any of the Advertisers were unlawfully using information collected by the tracking technologies, let alone acted with the purpose of facilitating any such unlawful use. To the contrary, Plaintiffs allege that NDR used the technologies on its Website for its own legitimate business purposes, such as to monitor performance analytics and to provide more effective advertising.

Finally, as recently emphasized by another federal district judge in a case involving the same theory of CIPA liability Plaintiffs assert against NDR here, any ambiguity concerning the scope of Section 631(a)—a criminal statute—must be construed narrowly under California's rule of lenity. *Doe v. Eating Recovery Center, LLC*, No. 3:23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Plaintiffs' proposed interpretation of CIPA would not only defy this principle, but it would also effectively criminalize the standard use of widely-adopted web technologies, an outcome the enacting legislature could not possibly have intended.

For these reasons, the Court should dismiss the FAC in its entirety, with prejudice.

## FACTUAL BACKGROUND[2]

### A. NDR and Its Website

NDR owns and operates the Website, "through which visitors may apply for [debt relief] services," among other things. FAC ¶¶ 1, 14, 22. To submit a debt relief application on the Website, visitors must submit "their current debt amount, and personal information about

[2] For the purposes of this motion only, NDR accepts as true all non-conclusory allegations in Plaintiffs' FAC.

themselves, such as their full name, phone number, and email address." *Id.* ¶¶ 2, 23, 30, 56, 60, 72.

### B. Advertising Tools on NDR's Website

NDR's Website utilizes advertising and analytics technologies that were designed by some of the world's most highly-scrutinized and heavily-regulated advertising technology behemoths including Meta and Google, "the world's largest advertising platform" which "offer[s] multiple products with billions of users worldwide." *Id.* ¶ 49; *see also id.* ¶¶ 35–48 (outlining the generic capabilities of Meta's tracking technologies), ¶¶ 66–72 (same for X's tracking technologies), ¶¶ 73–76 (same for Microsoft's tracking technologies), ¶¶ 77–82 (same for TikTok's tracking technologies), ¶¶ 83–86 (same for Trade Desk's tracking technologies), ¶¶ 87–95 (same for Claritas's tracking technologies). NDR uses these technologies on its Website "for the purposes of profiling [Plaintiffs] and marketing to them by targeted advertising." *Id.* ¶ 3; *see also id.* ¶¶ 33, 51, 67.

### C. Plaintiffs' Interaction with the Advertising Tools on NDR's Website

Plaintiffs are California residents. *Id.* ¶¶ 12–13. "Within the last twelve months, [they both] applied for debt consolidation on NDR's Website but decided not to use any of its services." *Id.* ¶¶ 12–13, 111–12, 118–19. As part of the application process, Plaintiffs "sent communications to NDR including [their] current amount of debt, full name, email address, mailing address, and telephone number." *Id.* ¶¶ 113, 120; *see also id.* ¶¶ 2, 23, 30, 56, 60, 72. Plaintiffs claim that, "because NDR installed the Advertisers' technology on its website, . . . , the Advertisers were able to collect, learn, and analyze the content of [Plaintiffs'] communications to assist them in their own business purposes." *Id.* ¶¶ 117, 124.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, Plaintiffs' allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (cleaned up).

## ARGUMENT

Plaintiffs assert a single claim against NDR under Section 631(a) of CIPA. FAC ¶¶ 134–43. Section 631(a) prohibits any person from: (1) intentionally wiretapping, or making an unauthorized connection, with any telegraph, telephone wire, line, cable, or instrument; (2) willfully reading the "contents or meaning" of a communication while in transit over a wire without all parties' consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." CAL. PENAL CODE § 631(a); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

Plaintiffs' CIPA claim fails because: (1) NDR was a party to Plaintiffs' alleged communications with the Website and, thus, it cannot be liable for a direct violation under any of the first three clauses of Section 631(a); and (2) Plaintiffs' allegations do not support holding NDR liable under the fourth clause for aiding and abetting any violation by the Advertisers.

## I. As a Party to Plaintiffs' Communications with the Website, NDR Cannot Be Liable for a Direct Violation of Section 631(a).

Parties to a communication cannot be held liable for a direct violation of Section 631(a). *See Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-KKX, 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024). Here, there is no dispute that NDR, as owner and operator of the Website, was a party to any purported communications that Plaintiffs may have had with the Website platform while visiting it. FAC ¶¶ 14, 113, 120. Thus, to state a claim against NDR under Section 631(a), Plaintiffs must allege facts sufficient to establish that NDR aided and abetted a third party's direct violation of the statute. *See Boscov's*, 2024 WL 2228973, at *2.

## II. Plaintiffs Have Not Alleged Facts Sufficient to State a Plausible Aiding-and-Abetting Claim Against NDR Under Section 631(a).

To plausibly state a Section 631(a) claim based on a derivative aiding-and-abetting theory, Plaintiffs must first allege facts sufficient to establish that a third party (here, the Advertisers) committed a predicate violation one of the section's first three clauses. CAL. PENAL CODE § 631(a); *see also Boscov's*, 2024 WL 2228973 at *2 ("In order to sustain [an aiding and abetting] claim, Plaintiff must adequately plead that [the third party] itself engaged in conduct falling under one of the first three prongs of the statute."); *Cody v. Lacoste USA, Inc.*, No. 8:23-cv-00235-SSS-DTB, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) (finding a plaintiff must establish that a third party "engaged in conduct falling under one of the first three prongs" of Section 631(a) to maintain a claim under the statute's aiding and abetting prong); *see also Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal of Section 631(a) claim due to plaintiff's failure to establish predicate violation); *Graham*, 533 F. Supp. 3d at 833 (holding defendant was not liable for aiding and abetting a third party advertiser's wrongdoing "because there [was] no wrongdoing"); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946–47 (C.D. Cal. 2023) (same).

Upon establishing a predicate violation of CIPA by one or more of the Advertisers, Plaintiffs would need to next allege facts sufficient to establish that NDR "aided, agreed with, employed or conspired with"[3] each of the Advertisers to "unlawfully do, or permit, or cause to be done" the act the Advertiser(s) purportedly took in violation of Section 631(a). CAL. PENAL CODE § 631(a).

Finally, Plaintiffs must plausibly allege that NDR: (1) had knowledge of each Advertiser's unlawful conduct, and (2) acted with each Advertiser "***in order to*** have the third party perform acts that violate the statute." *YETI*, 754 F. Supp. 3d at 942 (emphasis in original); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (holding a plaintiff must establish a defendant "act[ed] with knowledge of the criminal purpose of the perpetrator ***and*** with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.") (emphasis in original); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025) (affirming Section 631(a)'s scienter requirement).

Plaintiffs' allegations fail to satisfy any—let alone all—of the requirements for stating a plausible aiding-and-abetting claim against NDR. Although Plaintiffs assert a panoply of alleged acts of various unrelated Advertisers, they fail to allege facts suggesting, much less showing, that NDR knew such acts to be unlawful or that it did anything for the purpose of advancing them. To the contrary, the FAC is bereft of allegations that NDR had any contact with the Advertisers whatsoever prior to using the tracking technologies on its Website, which, under even the most generous reading of the FAC, confirms NDR was using only for its own legitimate, business-oriented reasons—not to aid third-party Advertisers in committing any crime.

---

[3] NDR references this language colloquially as "aiding and abetting," consistent with how other courts have referred to claims brought under this provision of Section 631(a). *See, e.g.*, *Boscov's*, 2024 WL 2228973 at *2.

**A. Plaintiffs' Allegations Fail to Establish That Each of the Advertisers Violated Section 631(a).**

To plausibly state an aiding-and-abetting claim under CIPA, Plaintiffs must first establish that each Advertiser violated the first, second, or third clause of Section 631(a). *See, e.g.*, *Boscov's*, 2024 WL 2228973 at *2. They have failed to do so.

*1. <u>Section 631(a)'s First Clause Applies Only to Interceptions Over a Phone Line and Does Not Apply Here.</u>*

The first clause of Section 631(a) gives rise to liability only when an individual or entity "intentionally taps, or makes an unauthorized connection . . . with any telegraph or telephone wire, line cable or instrument[.]" CAL. PENAL CODE § 631(a). "Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (collecting cases); *see also Valenzuela v. Super Bright LEDs Inc.*, No. 5:23-cv-01148, 2023 WL 8424472, at *3 (C.D. Cal. Nov. 27, 2023) (holding that Section 631(a)'s first clause "does not apply to Internet communications").

Here, Plaintiffs affirmatively allege that their data was intercepted **on the Website**—i.e., via the Internet—as opposed to over a telegraph or telephone wire, line, cable, or instrument. *See* FAC ¶¶ 114–15, 121–22. Thus, they cannot establish that the Advertisers' alleged conduct violated Section 631(a)'s first clause.

*2. <u>Plaintiffs Fail to Allege a Violation of Section 631(a)'s Second Clause.</u>*

To state a wiretapping claim under the second clause of Section 631(a), Plaintiffs must allege facts sufficient to establish the each of the Advertisers willfully read, or attempted to read, or to learn the contents or meaning of any message, report, or communication, "while the same is" either "in transit," "passing over any wire, line, or cable," or "being sent from, or received at any place within [California]." CAL. PENAL CODE § 631(a); *Heiting v. Taro Pharms.*, 728 F. Supp. 3d

1112, 1124 (C.D. Cal. 2024) ("To state a claim under the second clause of Section 631(a), a plaintiff must allege facts demonstrating the statute's 'in transit requirement' has been met.").

This statutory language imposes a contemporaneity requirement. It is not enough to merely allege that the Advertisers attempted to read or learn the contents of a communication. Rather, Plaintiffs must allege facts sufficient to show that the Advertisers made "some effort at understanding the substantive meaning of the message, report, or communication" **while** the same is in transit, passing over a wire, or being sent from or received in California. *Torres v. Prudential Fin., Inc.*, No. 3:22-cv-07465-CRB, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025); *see also Eating Recovery Center*, 2025 WL 2971090 at *5–6 (finding a third party "must do something more than just intercept the communication while it is in transit to be held liable" to sustain a predicate violation under Section 631(a)'s second clause).

Plaintiffs' allegations fail to satisfy the second clause's contemporaneity requirement. They do not allege that any of the Advertisers attempted to read or learn the content of Plaintiffs' communications with the Website while those communications were in transit or while being sent or received in California. To the contrary, the FAC affirmatively and repeatedly alleges that the Advertisers read or learned the purported contents of Plaintiffs' communications sometime **after** those communications were intercepted. *See, e.g.,* FAC ¶ 33 ("Meta's advertising services are top-of-the line due to its sophisticated data collection tools that record voluminous information about millions of unique individuals' interactions with webpages both on its platforms and across the internet. **After gathering such information**, Meta employs innovative user categorizing systems to understand and predict how such individuals will engage with content in the future[.]" (emphasis added)), ¶ 55 (". . . Website owners may install the DoubleClick code on their websites to capture and transmit records of user interactions and communications to Google through HTTP requests.

Google **then** processes the data and adds it to categorized datasets, forming the basis for the targeted advertising that Google sells to its marketing and advertising customers." (emphasis added)), ¶ 57 ("**With this information in hand**, DoubleClick constructs user profiles using data compiled through cookies and tracking technologies." (emphasis added)), ¶ 93 ("By placing a pixel on your website, Claritas captures that website user information. **Then** using our industry-leading Identity Graph, we combine this website data with your… data… to create a more complete profile of the anonymous visitor." (emphasis added)). This temporal gap between the Advertisers' receipt of Plaintiffs' communications and their alleged attempts to process the same precludes Plaintiffs from establishing a plausible violation of Section 631(a)'s second clause.

At the October 22, 2025 hearing before this Court, Plaintiffs effectively conceded that their allegations do not satisfy the second clause's in-transit element and claimed, instead, that the Advertisers violated CIPA by attempting to read or learn the contents of communications sent from or received in California. *See also* FAC ¶ 141 (alleging CIPA violation based on Plaintiffs' transmission of "communications to NDR using wires, lines, or cables within California, sent their communications from California, and received responses to their communications with NDR's Website from within California"). Courts have "repeatedly rejected" this very argument, in part because "the structure and text of the second clause suggest that the 'sen[ding], or receiv[ing]' of messages still has a contemporaneous requirement." *Heiting*, 728 F. Supp. 3d at 1125; *Super Bright LEDs*, 2023 WL 8424472 at *10 (rejecting argument that "the word 'while' only applies to the 'in transit' portion of the second clause rather than the 'sent or received' portion"); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (rejecting plaintiff's attempt to "avoid the simultaneity argument merely because she sends or receives a message in California"); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (holding that "the

key word 'while' applies to the entire clause"). To adopt Plaintiffs' contrary view would create "an interpretation of extraordinary breadth." *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021).

Construing the statute by its plain terms, Plaintiffs have failed to plausibly allege that the Advertisers' post-collection analysis and processing of Plaintiffs' communications gives rise to a violation of Section 631(a)'s second clause.

*3. Plaintiffs' Failure to Allege Plausible Violations of Section 631(a)'s First and Second Clauses Precludes Them from Establishing a Violation of the Third Clause.*

The third clause of Section 631(a) prohibits the Advertisers from "attempt[ing] to use or communicate information obtained as a result of engaging in either of the previous two activities[.]" CAL. PENAL CODE § 631(a). Thus, "[t]o establish a violation of the third clause, a CIPA plaintiff 'must establish that the information at issue . . . was obtained through a violation of the first or second clauses.'" *Super Bright LEDs*, 2023 WL 8424472 at *11 (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020)).

Here, Plaintiffs have not alleged facts sufficient to show that the Advertisers violated either the first clause or the second clause of Section 631(a). They are, therefore, precluded from establishing that the Advertisers violated the third clause.

Because Plaintiffs have failed to establish a direct violation of Section 631(a)'s first, second, or third clauses by any of the Advertisers, their aiding and abetting claim against NDR should be dismissed. *See, e.g.*, *Super Bright LEDs*, 2023 WL 8424472 at *11 ("because the Complaint has not adequately alleged any violation of the first three clauses by [third party], it has not stated a claim against [defendant] under the fourth clause").

### B. Even if Plaintiffs Could Establish that The Advertisers Violated CIPA, They Have Not Alleged Facts Sufficient to Establish that NDR Acted With the Knowledge and Intent Necessary to Hold It Liable for the Advertisers' Violations.

To state a viable aiding-and-abetting claim against NDR for CIPA violations purportedly perpetrated by the Advertisers, Plaintiffs must plausibly allege that NDR acted both with knowledge of the Advertisers' unlawful conduct and with a specific intent to aid in the Advertisers' unlawful purpose. *See YETI*, 754 F. Supp. 3d at 942 (holding that the aiding and abetting party must have "act[ed] with the third party ***in order to*** have the third party perform acts that violate the statute" (emphasis added)); *Beeman*, 35 Cal. 3d at 560; *Licea v. Finish Line, Inc.*, No. 23STCV22390 (Cal. Super. Jul. 10, 2024) (dismissing Section 631(a) claim where plaintiff failed to adequately allege the defendant acted with the requisite knowledge and intent) (attached to the Chapman Decl. as **Exhibit A**). Plaintiffs' non-conclusory allegations fail to establish that NDR acted with either the requisite knowledge or the specific intent necessary to sustain this claim.

As multiple federal and state courts have held in this precise context, generalized allegations that a defendant installed and benefitted from some of the most commonly-used advertising technologies in the world does not give rise to a plausible inference that the business acted with the knowledge required to maintain a criminal aiding and abetting theory. *See, e.g., YETI*, 754 F. Supp. 3d at 942 ("By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute. Such a defendant has not aided, agreed with, or employed the third party ***to*** perform the acts that violate the wiretapping statute." (emphasis in original)); *Finish Line*, Exh. A at 5–6 (allegations that the third party touted the technology's capabilities to the public was not sufficient to demonstrate

that the defendant "knew, let alone facilitated, the purported misconduct," by using that third party's technology on its website).

Here, Plaintiffs allege the Advertisers used data collected by the advertising technologies for advertising and to "retarget" website visitors with advertisements that might be of interest to the users. FAC ¶¶ 33, 51, 67. Plaintiffs do not, however, allege that NDR knew—or even could have known—how the Advertisers would purportedly use data collected from NDR's Website. In any event, as other courts have found, allegations that a defendant knew a tool **could be** used for advertising purposes are insufficient as a matter of law to maintain a claim under Section 631(a), and thus Plaintiffs' aiding and abetting theory fails on the knowledge element alone. *YETI*, 754 F. Supp. 3d at 943; *Finish Line*, Exh. A at 5–6.

Plaintiffs' claim also fails because nowhere in the FAC do they allege that NDR installed the advertising technologies on its Website ***with the purpose of*** enabling the Advertisers to violate Section 631(a)—or any other statute, for that matter. To the contrary, Plaintiffs allege that NDR used the tracking technologies for the purposes of receiving "enhanced analytics and improved advertising and marketing capabilities provided by the Advertisers." *See* FAC ¶ 5; *see also* Plaintiffs' October 21, 2025 letter to the Court ("NDR installed the AdTech to obtain (i) access to targeted, behavioral advertising; (ii) increased return on its marketing investments; and (iii) detailed analytics about its customers provided by the AdTech Companies."). None of NDR's alleged purposes for using the tracking technologies on its Website satisfy the intent required to state a viable aiding-and-abetting claim under Section 631(a).

Nor is it enough for Plaintiffs to merely allege that NDR intended to install the advertising technology on its Website. *See, e.g.*, *YETI*, 754 F. Supp. 3d at 944. Plaintiffs must establish that

NDR acted with the specific intent to aid in the Advertisers' unlawful conduct. Since Plaintiffs have not done so, their claim should be dismissed.

**III. Any Ambiguity in Section 631(a) Should be Construed in NDR's Favor Under California's Rule of Lenity.**

Plaintiffs' allegations fail under the plain terms of Section 631(a). But even if Plaintiffs could offer a second alternative reading of the statute under which their allegations might suffice, their claim would still fail, because the Court must resolve any such ambiguity in the statute in NDR's favor under California's rule of lenity.

California courts apply the rule of lenity to ambiguous criminal statutes—even when, as here, the statute can be enforced in civil actions. *Eating Recovery Center*, 2025 WL 2971090 at *1 (citing *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001)). Because Section 631(a) is housed within California's Penal Code and carries criminal penalties, the rule of lenity applies.

Indeed, just recently, Judge Chhabria of the Northern District of California applied the rule of lenity to Section 631(a) after finding its language to be ambiguous:

> The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute. . . .

*Eating Recovery Center*, 2025 WL 2971090 at *1. Given this ambiguity, the court emphasized that "courts should generally resolve [CIPA's] many ambiguities in favor of the narrower interpretation," consistent with the rule of lenity. *Id.*

To be clear, NDR maintains that Plaintiffs' theory fails under a straightforward application of the statutory text. But even if not, "with construction of a criminal statute, [NDR] must be given the benefit of every reasonable doubt as to whether the statute applies to [it]." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). Thus, if Plaintiffs

ask this Court to stretch CIPA's language to cover the routine use of advertising technologies offered by globally-recognized advertising platforms and common to nearly every modern website, the Court should decline to do so. There is no indication the California Legislature ever contemplated such a sweeping application when enacting CIPA decades ago.

## CONCLUSION

Plaintiffs have failed to allege facts sufficient as a matter of law to support their CIPA claim against NDR, and they lack a good faith basis for amending their complaint (again) with facts that would cure the current pleading deficiencies. Accordingly, NDR respectfully requests that the Court dismiss Plaintiffs' claim with prejudice.

DATED: November 10, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*

Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

## WORD COUNT CERTIFICATION

I, the undersigned, hereby certify that this Memorandum contains 4,169 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and it is in compliance with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: November 10, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ Gregory P. Szewczyk*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2025, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Samuel R Jackson
Carney Bates & Pulliam, PLLC
One Allied Drive
Ste 1400
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: sjackson@cbplaw.com

BY: */s/ Stephanie Agabo*
Stephanie Agabo
*On behalf of Defendant, National Debt Relief, LLC*