UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LORETTA JEAN BERNARDI** and **SOLOMON HUEBNER-MENDOZA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NATIONAL DEBT RELIEF, LLC**,<br><br>Defendant. | Case No. 1:25-cv-06334-GHW-HJR |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Plaintiffs Have Not Alleged Facts Sufficient to Establish that the Advertisers Attempted to Learn or Read the Content of Their Communications "While" Being Sent From California. .......... 2

II. Plaintiffs' Allegations Do Not Establish that NDR Acted with Sufficient Knowledge and Intent to Sustain Their Aiding-and-Abetting Claim. .......... 7

III. NDR's Interpretation of CIPA Comports with the Plain Text and is Consistent with the Statute's Purpose; Any Doubts Fall in NDR's Favor Under the Rule of Lenity. .......... 10

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Balestrieri v. SportsEdTV, Inc.*,
No. 3:25-cv-04046, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025)........................................9

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)........................................................................2

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)........................................................................9

*Doe v. Eating Recovery Center, LLC*,
No. 3:23-cv-05561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)........................2, 3, 6, 7, 11

*Esparza v. UAG Escondido A1 Inc.*,
No. 3:23-cv-0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)..........................................7

*Heiting v. athenahealth, Inc.*,
No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024)........................................4

*Heiting v. Taro Pharmaceuticals*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)........................................................................5

*James v. Walt Disney Company*,
No. 3:24-cv-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)........................................9

*Mata v. Zillow Group, Inc.*,
No. 24-cv-01095, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)........................................6

*Mitchell v. Sonesta Internationall Hotels Corporation*,
No. 2:24-cv-02603, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........................................11

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024)........................................................................9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)........................................................................11

*Smith v. Rack Room Shoes, Inc., Smith*,
No. 3:24-cv-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)........................................9

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)........................................................................9, 10

*Springfield Hospital, Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) ....................................................................................10

*Torres v. Prudential Financial, Inc.*,
No. 3:22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)..................................2, 3, 5

*Wooden v. United States*,
595 U.S. 360 (2022)..........................................................................................................11

*Yates v. United States*,
574 U.S. 528 (2015)............................................................................................................8

**State Statutes**

CALIFORNIA PENAL CODE § 631(a) ........................................................................... *passim*

CALIFORNIA PENAL CODE § 638.50(b) .......................................................................12

## PRELIMINARY STATEMENT

Plaintiffs make two major concessions in their Opposition:

(1) Plaintiffs concede they can only bring an aiding-and-abetting claim against NDR under Section 631(a)'s fourth clause because NDR was a party to Plaintiffs' communications with the Website; and

(2) Plaintiffs concede that to state an aiding-and-abetting claim, they must allege facts sufficient to establish **both** that (1) the Advertisers committed a predicate violation of Section 631(a)'s second clause,[1] **and** (2) NDR "aid[ed], agree[d] with, employ[ed], or conspire[d] with" the Advertisers with the requisite knowledge and intent.

Two primary issues remain—either of which, if decided in NDR's favor, warrants dismissal.

The first issue is whether Plaintiffs' allegation that the Advertisers "intercepted" their communications with the Website and "then" processed them is sufficient to establish that the Advertisers "attempted to read or learn" the contents of their communications "while" being sent from California, as required to establish a violation of Section 631(a)'s second clause. Plaintiffs argue "yes" based on a broad interpretation of Section 631(a) that ignores key words and penalizes conduct the legislature could not have possibly intended. Under NDR's interpretation—which, by contrast, is grounded in the statute's plain text and prevents the kind of privacy harm the legislature intended without collaterally criminalizing websites' ubiquitous use of online advertising tools—the answer is "no." While trial court decisions are split, NDR's interpretation is most aligned with Section 631(a)'s text and is independently supported by California's rule of lenity.

The second issue is whether Plaintiffs' conclusory allegation that NDR deliberately installed the advertising technologies on its Website, alone, is enough to give rise to aiding-and-

[1] Plaintiffs acknowledge that Section 631(a)'s first clause does not apply here and that their ability to plausibly allege a violation of the third clause is contingent on whether they have plausibly alleged that the Advertisers violated the second clause.

abetting liability under Section 631(a). Courts have held it is not. Rather, Plaintiffs must allege that NDR not only acted in concert with the Advertisers in some way, but also that it installed the tracking technologies (1) knowing the Advertisers would use them in violation of Section 631(a)'s second clause, (i.e., to contemporaneously learn or read the contents of Plaintiffs' communications), and (2) for the purpose of facilitating such a violation. Plaintiffs' allegations fall short on all counts.

## ARGUMENT

### I. Plaintiffs Have Not Alleged Facts Sufficient to Establish that the Advertisers Attempted to Learn or Read the Content of Their Communications "While" Being Sent From California.

Plaintiffs argue they have plausibly alleged a violation of Section 631(a)'s second clause based on the Advertisers alleged "interception" of their communications "in real-time." *See* ECF No. 22 ("Opp.") at 6–7. Their argument fails for several reasons.

First, Plaintiffs' conclusory allegations do not establish the facts required by Section 631(a)'s plain text: that the Advertisers attempted **to read or learn** the content of Plaintiffs' communications "**while the same is**" either "in transit" or "being sent from, or received at any place within [California]." CAL. PENAL CODE § 631(a) (emphasis added). These "key" words show the legislature's intent to prohibit third parties from **contemporaneously** attempting to learn or read private communications, not to criminalize all potential means by which third parties might acquire communications. *See* ECF No. 19 ("Mot.") at 9–10 (quoting *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024)).

The importance of adhering to Section 631(a)'s plain text was reinforced in *Torres* and *Eating Recovery Center*. In those cases, Judge Breyer and Judge Chhabria—both of whom have extensive experience with Internet tracking cases—emphasized that a Section 631(a) claim cannot rest solely on mere interception of a plaintiff's communications. *See Doe v. Eating Recovery*

*Center, LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) ["*ERC*"]; *Torres v. Prudential Financial, Inc*., 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). The plaintiff must allege **both** that the third party attempted to read or learn the contents of their communications, **and** that it did so "while" the communications were in transit or "while" being sent to or from a server in California. *See ERC*, 2025 WL 2971090 at *6.

During the parties' October 22, 2025 pre-motion hearing, the Court specifically asked Plaintiffs (through counsel) to identify the facts in the FAC that satisfied Section 631(a)'s "while in transit" requirement; they were unable to do so. They argued, instead, that their claim was based on the Advertisers' alleged interception of communications sent from a California server and was not dependent on the timing of the alleged interception—effectively conceding that the FAC's allegations did not meet the contemporaneity requirement.

NDR's Motion established that Section 631(a)'s contemporaneity requirement applies equally to communications intercepted "in transit" and communications sent from a California server. *See* Mot. at 9–10. Unable to refute this legal authority, Plaintiffs now backpedal from their prior position, claiming that their general allegations about how the Advertisers' tracking technologies work are sufficient to establish "real time" interception by the Advertisers.

Plaintiffs' argument is undermined by their own pleadings. To start, despite repeatedly asserting in their Opposition that the Advertisers intercepted their communications "in real time," Plaintiffs make no corresponding allegation in their FAC. Nor does the FAC allege that the Advertisers used the tracking technologies to read or learn the content of their communication "while" in transit or "while" the communications were being sent from a California server. Indeed, in the section of their FAC purporting to list the "facts" supporting their Section 631(a) claim, Plaintiffs assert no allegations whatsoever actually reflecting **when** the Advertisers purportedly

attempted to learn or read the contents of their communications. *See* FAC ¶ 139. Rather, consistent with the position they took at the pre-Motion hearing, Plaintiffs allege merely that they "transmitted such communications to NDR" from California. *Id.* ¶ 141. These allegations fail to satisfy Section 631(a)'s contemporaneity requirement.

Second, not only did Plaintiffs fail to plead sufficient facts, but also, they affirmatively alleged facts that, if taken as true, establish that the Advertisers did **not** contemporaneously attempt to read or learn the contents of their communications. *See* Mot. at 8–9 (*citing, e.g.*, FAC ¶ 33 (alleging that Advertiser used its systems to understand information "**[a]fter gathering [it]**"),¶ 55 (alleging that tracking technology "capture[s] and transmit[s]" user's communication to Advertiser, which "**then** processes the data") (emphases added)). Plaintiffs fail to explain how these allegations—which establish a temporal gap between Advertisers' receipt of communications and any alleged attempts to learn or read or discern their contents—can be reconciled with Section 631(a)'s contemporaneity requirement.

Even adopting Plaintiffs' own unsupported characterization of the FAC's allegations, Plaintiffs have alleged, at most, that NDR's use of trackers enabled the Advertisers to "systematically intercept communications" in "real time." Opp. at 6. These allegations still fall short of stating a plausible claim. Courts routinely reject "broad allegations of data interception in 'real time' as overly conclusory and vague." *See Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (listing cases).

Equally unavailing is Plaintiffs' attempt to backfill their failure to allege facts sufficient to satisfy the contemporaneity requirement with screenshots of "split-screens" purporting to show real-time categorization of information transmitted to the Website. *See id.* at *5 (holding that

"graphics" in complaint purporting to show "network transmissions" were "largely unintelligible and [did] not readily illustrate real-time transmissions").

Third, NDR's Motion is supported by numerous well-reasoned opinions decided based on commonsense readings of Section 631(a)'s plain text that Plaintiffs fail to meaningfully distinguish. *See* Mot. at 7–8 (citing, e.g., *Torres*, *Eating Recovery Center*, and *Heiting v. Taro Pharms.*).

Plaintiffs argue *Torres* is distinguishable because it involved "session replay," but the technology is analogous—it is a piece of code defendant installed on its website that transmitted information about users' website interactions to the code's developer. 2025 WL 1135088 at *5–*6. More importantly, while the court found Section 631(a) did not apply because the third party did not use the data for its own purposes, it also **independently held** that the plaintiffs failed to satisfy Section 631(a)'s contemporaneity requirement. On that point, the court held that a plaintiff must allege that the third party "attempt[ed] to understand or interpret the **substantive meaning** of a communication" while it is being transmitted. *See id.* at *6 (emphasis in original). Here, Plaintiffs allege, at most, that Advertisers "intercepted" communications in real-time which, under *Torres*, is insufficient.

Plaintiffs argue that *ERC* is distinguishable because it was decided on summary judgment. But NDR cites *ERC* for its legal rule; not for its facts, that is: a "filtering process that simply sorts out certain data . . . can't fairly be characterized as an effort at understanding the meaning of the communication." 2025 WL 2971090 at *5. Plaintiffs allege even less here—mere interception—which is not enough.

Plaintiffs next argue that *ERC* is distinguishable because it involved only one of the seven tracking technologies (specifically, Meta's) at issue here. But Plaintiffs fail to explain how any of

the alleged differences between Meta's technology and that of the other Advertisers bears on NDR's argument. NDR seeks dismissal based on Plaintiffs' failure to allege facts sufficient to establish that the tracking technologies enabled the Advertisers to contemporaneously learn or read the content of their communications. Any purported technological differences between the trackers are irrelevant.

Finally, the cases Plaintiffs cite as grounds for denying NDR's Motion are inapposite.

Unlike in this case, the plaintiffs in the Opposition's cited cases all alleged that the third-party advertisers violated Section 631(a) by intercepting their communications "while in transit." *See, e.g.*, *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024). Here, in contrast, Plaintiffs bring their Section 631(a) claim based on the Advertisers' alleged interception of their communications "while they were being sent from a place within California"—that is, at the time Plaintiffs communicated with the Website but before the communications were actually "in transit." Opp. at 4. The FAC uses the phrase "in transit," by contrast, a total of four times and only where quoting or describing Section 631(a).

This distinction is critical. According to Plaintiffs' own allegations, the Advertisers cannot intercept a user's communications until **after** the "user's internet browser . . . sends [a] request to NDR's server" and, "[i]n response to the request, NDR's server sends [a response] back to the [user's] browser[.]" FAC ¶ 61. Because interception allegedly occurs during the second step (i.e., NDR's response), and **not** during Plaintiffs' initial communication with the Website, it is not plausible that the Advertisers intercepted—let alone attempted to read or learn the contents of—Plaintiffs' communications "while" those were being transmitted from Plaintiffs' California servers.

Second, Plaintiffs' cases rely upon an interpretation of Section 631(a) that incorrectly divorces its "read or learn" requirement from the contemporaneity requirement, to wit: "[I]f someone intercepts a communication as part of an attempt to learn its contents, it doesn't matter whether the learning occurs while the communication is still in transit or later on, because the interception is still part of an 'attempt to learn' the contents of the communication." *ERC*, 2025 WL 2971090 at *6.

While courts are split on whether this is a proper interpretation of the statute,[2] Judge Chhabria in *ERC*, after thoroughly analyzing the issue, held that "the better conclusion," here, is that an advertiser "must do something more than just intercept the communication while it is in transit to be held liable." 2025 WL 2971090 at *6. Here, Plaintiffs have alleged, at most, that the Advertisers "intercepted" the communications which, again, is not sufficient.

Because Plaintiffs have failed to allege facts sufficient to plausibly allege that the Advertisers intercepted their communications "while" sent from their servers in California, let alone that the Advertisers contemporaneously attempted to read or learn the substance of those communications while being transmitted, Plaintiffs' claim fails.

## II. Plaintiffs' Allegations Do Not Establish that NDR Acted with Sufficient Knowledge and Intent to Sustain Their Aiding-and-Abetting Claim.

Even if Plaintiffs had established a predicate violation by the Advertisers, their claim fails because they have not alleged facts showing NDR "aid[ed], agree[d] with, employ[ed], or

[2] Plaintiffs' contention that "there is a well-developed body of law regarding the sufficiency of allegations at the pleading stage in the AdTech context relevant to this case" is simply wrong. Even the cases they cite in the Opposition recognize there is a split in how trial courts interpret Section 631(a). *See, e.g.*, *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (recognizing that "[c]ourts have split on whether these kinds of allegations are sufficient to satisfy the "in transit" requirement"). Unlike Plaintiffs, NDR has acknowledged the split and explained why the opinions it relies upon have adopted the better legal interpretation.

conspire[d] with" the Advertisers with the knowledge and purpose of facilitating the violation. *See* Mot. at 11–12.

Plaintiffs argue that all they must do to state a plausible aiding-and-abetting claim against NDR is allege that NDR intentionally installed tracking technologies on its Website and benefitted from them. Opp. at 10–12. Their argument fails.

To start, Plaintiffs fail to point to any non-conclusory allegations in the FAC sufficient to support a finding that NDR "aid[ed], agree[d] with, employ[ed], or conspire[d] with" the Advertisers to do anything, let alone engage in criminal conduct. Under the principle of *noscitur a sociis* ("a word is known by the company it keeps"), Plaintiffs needed to allege some coordinated effort between NDR and the Advertisers to claim NDR should be held liable for the Advertisers' alleged violations. *See Yates v. United States*, 574 U.S. 528, 543 (2015). Plaintiffs allege nothing of the sort here. They do not allege NDR contracted with, paid, or even communicated with Advertisers about the tracking technologies. To the contrary, Plaintiffs concede NDR acted "unilaterally"—not in concert with the Advertisers—when it installed the code on its Website. Opp. at 12, 15. Without allegations plausibly establishing that NDR aided, agreed with, employed, or conspired with the Advertisers to violate the statute, Plaintiffs' aiding-and-abetting theory fails.

Furthermore, absent any alleged contact between NDR and the Advertisers, Plaintiffs' claim that NDR knew how and when the Advertisers would intercept and process Plaintiffs' communications is just not plausible.

Plaintiffs' argument also fails because they have not adequately explained how their allegation that NDR's "primary motivation" of "economically benefit[ting]" from its use of the tracking technologies equates to an allegation that NDR installed the Trackers for the specific

purpose of enabling the Advertisers to violate Section 631(a). Opp. at 13. Because Plaintiffs have identified no other allegations that would satisfy the "intent" requirement, their claim fails.

Plaintiffs' cited cases are inapposite. The court in *Smith v. Rack Room Shoes, Inc.* relied on *Walt Disney*, which was decided under a much narrower standard: specifically, whether the plaintiffs had adequately alleged that the website operator intended for the third party to intercept the data at issue. *See Smith*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (citing *James v. Walt Disney Co.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025)).[3] Here, Plaintiffs must establish much more than just that NDR intended for Advertisers to intercept Plaintiffs' communications. They must allege facts sufficient to establish that NDR was acting with the Advertisers "**in order to** have the [Advertisers] perform acts that violate the statute." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). They have not done so.

*Rack Room Shoes* and *Walt Disney* are also distinguishable because intent was inferred from contractual relationships between the website owners and technology providers, which are not alleged here.

Plaintiffs attempt to distance themselves from *YETI Coolers* and *Finish Line* by arguing that the "operative complaint [in those cases] failed to allege that the defendant itself installed and configured the offending tracking technology or that the defendant's purpose was to utilize the illegally intercepted content for its own economic gain." Opp. at 14. Not so. *YETI Coolers* makes clear that the plaintiff had alleged that the "[d]efendant integrated [the third party's] online

[3] The same holds true for the other cases Plaintiffs cite. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. 2024) (analyzing whether plaintiff pled facts sufficient to show defendant acted with intent "of intercepting wire communications"); *see also Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378 (S.D.N.Y. 2024) (analyzing sufficiency of pleadings under intent standard applicable to federal wiretap statute); *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025) (adopting wrong standard from *Walgreen* to analyze intent requirement under CIPA).

payment processing platform into its website" and that the fraud detection services defendant received benefited from the third party's "network-wide insights." 754 F.Supp.3d 933, 938, 943. So, too, in *Finish Line*, where the allegations are even more akin to those asserted by Plaintiffs here.

Plaintiffs next argue *Finish Line* is distinguishable because "[n]othing in the case suggested Finish Line specifically configured the third-party technology, much less configured it to share specific types of sensitive communications," whereas in this case they have alleged that NDR "deliberately and unilaterally installed and configured" the trackers "to intercept financial communications directly from its Website." Opp. at 15. Plaintiffs have lost sight of what specifically they must allege to support their aiding and abetting claim. It is not enough for them to allege that NDR intended to enable the Advertisers to intercept Plaintiffs' communications. Rather, Plaintiffs must allege that NDR intended to enable the Advertisers to contemporaneously read or learn the content of Plaintiffs' communication in violation of Section 631(a). Plaintiffs' generic intent-related allegations do not suffice.

Because Plaintiffs have not adequately alleged that NDR installed the third-party code on its Website knowing the Advertisers would contemporaneously attempt to read or learn the content of Plaintiffs' communication for the Advertisers' own purposes, "let alone facilitated[] the [Advertisers'] purported misconduct," Plaintiffs' claim fails. *Finish Line*, Exh. A at 5–6.

## III. NDR's Interpretation of CIPA Comports with the Plain Text and is Consistent with the Statute's Purpose; Any Doubts Fall in NDR's Favor Under the Rule of Lenity.

NDR's primary arguments for dismissal are grounded in Section 631(a)'s plain text. Plaintiffs' arguments, by contrast, require the Court to give short shrift to some of the statute's key words and adopt a broad interpretation based on CIPA's purpose and legislative history, *see* Opp. at 8, 10 n.6—arguments that assume the statute is ambiguous. *See Springfield Hosp., Inc. v.*

*Guzman*, 28 F.4th 403, 422 (2d Cir. 2022) ("a court may engage with legislative history only when the plain meaning of a provision is ambiguous").

The current split among trial courts on how to interpret Section 631(a) reflects, in one judge's view, that CIPA is a "total mess," making it nearly "impossible to determine whether a defendant's online conduct fits within the language of [CIPA]." *ERC*, 2025 WL 2971090 at *1. This is precisely the situation the rule of lenity addresses.

Plaintiffs do not dispute that the rule of lenity can apply to CIPA's provisions—even those that impose both civil and criminal liability—or that the rule's application, here, would warrant dismissal. Instead, they argue that the rule applies only to "grievous ambiguities" in statutes and that no grievous ambiguity exists here. Opp. at 15–16. This argument is flawed.

First, as recently analyzed by Justice Gorsuch's concurrence in *Wooden v. United States*, there is no well-founded requirement that courts find a "grievous" ambiguity before applying the rule of lenity. 595 U.S. 360, 394 n.4 (2022).

Second, while Plaintiffs may disagree with *ERC*, there is no disputing that Judge Chhabria, a seasoned judge with deep experience in cases of this kind, conducted an in-depth review of the statute and concluded the rule of lenity should apply. Considering all the reasons supporting his holding—including that the broader interpretation threatens to criminalize vast swaths of the Internet, it is hard to imagine a more grievous ambiguity. *See* 2025 WL 2971090 at *6.

And third, none of Plaintiffs' cases undermine *ERC*'s analysis of Section 631(a). *Riganian v. LiveRamp Holdings, Inc.* involved the interpretation of a different section of CIPA. 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) (analyzing Section 638.50(b) of CIPA). *Mitchell v. Sonesta Int'l Hotels Corp.* did not even analyze the issue because the defendant raised it for the first time in its

reply brief, and thus the plaintiffs did not have an opportunity to address it. 2024 WL 4471772, at *9 n.12 (C.D. Cal. Oct. 4, 2024).

Accordingly, to the extent this Court deems Section 631(a) ambiguous, it should resolve the ambiguity in favor of NDR under the rule of lenity.

## CONCLUSION

Plaintiffs' allegations are legally insufficient to support their derivative aiding-and-abetting claim. They have already amended their complaint once and declined another opportunity to amend during the pre-Motion process. For these reasons, NDR respectfully requests that the Court dismiss Plaintiffs' claim with prejudice.

DATED: December 22, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *<u>/s/ J. Matthew Thornton</u>*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**WORD COUNT CERTIFICATION**

I, the undersigned, hereby certify that this Memorandum contains 3,494 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and it is in compliance with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: December 22, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2025, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Samuel R Jackson
Carney Bates & Pulliam, PLLC
One Allied Drive
Ste 1400
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: sjackson@cbplaw.com

BY: */s/ Sherri Clark*
Sherri Clark
*On behalf of Defendant, National Debt Relief, LLC*