UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 7/16/2026

LORETTA JEAN BERNARDI, *individually and on behalf of all others similarly situated, et al.*,

Plaintiffs,

-v-

NATIONAL DEBT RELIEF, LLC,

Defendant.

**REPORT AND RECOMMENDATION**

25-CV-6334 (GHW) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Gregory H. Woods, United States District Judge:**

Plaintiffs Loretta Jean Bernardi and Solomon Huebner-Mendoza ("Plaintiffs"), on behalf of themselves and others similarly situated, bring this action against defendant National Debt Relief, LLC ("NDR" or "Defendant") for invading their privacy by enabling certain third-party advertisers (the "Advertisers") to learn their personal financial information in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a). NDR moves to dismiss Plaintiffs' Amended Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs seek leave to file a Second Amended Complaint if this Court finds their pleading insufficient. For the reasons described below, the undersigned respectfully **RECOMMENDS** that NDR's Motion to Dismiss be **DENIED**.

## I. BACKGROUND

### A. Factual Background

NDR is a debt relief provider incorporated in New York. Amended Class Action Complaint ("AC"), ECF No. 6 ¶ 14. NDR operates a website, located at https://www.nationaldebtrelief.com (the "Website"), which allows visitors to complete an online application for its debt relief services. *Id.* ¶¶ 1–2. This online application solicits applicants to submit sensitive personal and financial information, including their full names, phone numbers, email addresses, and current debt amounts. *Id.* ¶ 2. Submitting this information is mandatory to complete the application process. *Id.* At no point in the application process do users provide consent for "any third party to capture and analyze their communications with NDR" on the Website. *Id.* ¶ 6.

Plaintiffs Loretta Jean Bernardi and Solomon Huebner-Mendoza are California residents who applied for debt consolidation but decided not to use NDR's services. *Id.* ¶¶ 12–13. After providing their personal and financial information on the Website, Plaintiffs received numerous phone calls and advertisements from NDR and other debt relief companies. *Id.* ¶¶ 115, 122.

Plaintiffs allege that NDR intentionally deployed on its Website certain tracking technologies created by seven third-party Advertisers, which are companies that provide internet-based advertising services: Meta, Google, X Corp. ("X"), Microsoft, TikTok, The Trade Desk ("TD"), and Claritas. *Id.* ¶¶ 1–3, 33–95. These tracking technologies are said to be active on each page users can visit on the

Website. *Id.* ¶ 100. Plaintiffs claim that NDR's installation of these tracking technologies aids the Advertisers in learning and using the content of their communications with NDR, which include sensitive personal and financial information, in violation of Section 631(a) of CIPA. *Id.* ¶¶ 1–3, 10, 98. The Advertisers "build profiles for NDR's users using the captured sensitive personal and financial information and target them with advertising on behalf of the Advertisers' clients (including NDR)." *Id.* ¶ 8. In exchange for aiding the Advertisers, NDR allegedly receives "benefits associated with [the Advertisers'] online web presence." *Id.* ¶ 98.

**B. Procedural Background**

Plaintiffs filed the original complaint on August 1, 2025, ECF No. 1, and an Amended Complaint on October 6, 2025, ECF No. 6. The Amended Complaint asserts a single claim against NDR for invasion of privacy under CIPA.[1] Defendant moved to dismiss the AC with prejudice, ECF No. 18, and filed a supporting memorandum of law, ECF No. 19 (the "Motion"), on November 10, 2025. On December 8, 2025, Plaintiffs filed their opposition to Defendant's motion, which requested leave to amend if this Court finds the AC insufficient. ECF No. 22 (the "Opp."). Defendant filed its reply on December 22, 2025. ECF No. 25 (the "Reply").

[1] Plaintiffs' claim arises under Section 631(a) of CIPA. Cal. Penal Code § 631(a).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the court "draws all reasonable inferences in the plaintiffs' favor, assumes all well-pleaded factual allegations to be true, and determines whether they plausibly give rise to an entitlement to relief." *Camm v. Reach Fin., LLC*, No. 25-CV-1921, 2026 WL 861670, at *3 (S.D.N.Y. Mar. 30, 2026) (cleaned up) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

However, "this requirement is inapplicable to legal conclusions." *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 194 (S.D.N.Y. 2022) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" at the pleading stage. *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, the complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must allege "enough to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action" to survive the pleading stage. *Camm*, 2026 WL 861670, at *3 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Plaintiffs assert a single claim under Section 631(a) of CIPA. AC ¶¶ 134–143. CIPA was enacted in 1967 to criminalize wiretapping and eavesdropping on private communications. *Doe v. Eating Recovery Center, LLC*, 806 F. Supp. 3d 1109, 1111 (N.D. Cal. 2025). California courts have recognized that CIPA was enacted to "better address new devices and techniques that create a serious threat to the free exercise of personal liberties." *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-6709, 2026 WL 183852, at *3 (N.D. Cal. Jan. 23, 2026) (internal quotation marks omitted) (quoting Cal. Penal Code § 630). Thus, California courts have "broadly applie[d] the statute to new technologies." *Id.* (citing *Ribas v. Clark*, 696 P.2d 637, 639–41 (Cal. 1985)).

Although it is a criminal statute, CIPA authorizes private civil actions. *Eating Recovery Center*, 806 F. Supp. 3d at 1111–12; *See* Cal. Penal Code § 637.2(a). In relevant part, Section 631(a) provides:

> [a]ny person who . . . intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, . . . or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable[.]

Cal. Penal Code § 631(a).

Section 631(a) contains four clauses providing relief: the "[d]efendant either (1) engaged in intentional wiretapping; (2) willfully read the contents or meaning of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024) (internal quotation marks omitted) (summarizing Cal. Penal Code § 631(a)).

Plaintiffs claim that NDR violated the fourth clause of Section 631(a) by aiding the Advertisers in violating the second and third clauses, although the parties' briefing focuses on the second clause.[2] *See* AC ¶ 137 (alleging that NDR "aided, agreed with, employed, and/or conspired with the Advertisers to learn or attempt to learn the contents of Plaintiffs' and the Class members' communications with NDR"). To sustain a claim for violation of the fourth clause of Section 631(a), Plaintiffs must plead two elements. First, they must allege that the Advertisers "engaged in conduct falling under one of the first three prongs of the statute." *Cody v. Lacoste USA, Inc.*, No. 8:23-CV-00235, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024). Second, Plaintiffs must plead that NDR "knew about [the Advertisers']

---

[2] A claim for violation of the third clause of Section 631(a) requires an underlying violation of either the first clause or the second clause. Plaintiffs do not assert a violation of the first clause (*see* Opp. at 9 n.3) and Defendants' argument for dismissal of the claim for aiding a violation of the third clause focuses exclusively on whether Plaintiffs sufficiently allege violation of the second clause (*see* Motion at 14). Accordingly, the undersigned addresses the sufficiency of Plaintiffs' pleading of an underlying violation of the second clause without addressing whether Plaintiffs sufficiently allege the remaining elements of a claim for violation of the third clause, which is apparently not challenged on this motion.

unlawful conduct" and "acted with the intent of aiding [them] in the unauthorized collection and transmission of Plaintiffs' sensitive personal information." *Camm*, 2026 WL 861670, at *9 (citing *YETI Coolers*, 754 F. Supp. 3d at 942).

### A. Plaintiffs Sufficiently Plead Underlying CIPA Violations by the Advertisers

#### 1. The Second Clause of Section 631(a) Requires Reading or Learning Contents While a Communication is In Transit

The parties appear to dispute what is required to state a claim for the predicate violation by the Advertisers, *i.e.*, that the Advertisers' tracking tools violate the second clause of Section 631(a), which requires willful reading of the contents of a communication without consent.[3] Starting with the statutory language, the second clause applies to one who "reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit . . . or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Plaintiffs contend that it is sufficient to allege that communications are "*intercepted* in real time through the use of computer code" to state a claim for violation of the second clause. Opp. at 11–12[4] (emphasis added) (quoting *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. UAG Escondido A1 Inc.*, No. 23-CV-0102, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024))). Defendant argues that, in addition to real-time interception, Plaintiffs must allege a contemporaneous "attempt to *read or*

---

[3] Defendant does not dispute on this motion that that Advertisers acted without Plaintiffs' consent.

[4] Pages cited in court filings refer to the ECF-generated pagination.

*learn* the contents of [Plaintiffs'] communications" while they are in transit. Reply at 8 (emphasis added). Courts sometimes refer to this as the "in transit" requirement.

The plain language of the statute supports Defendant's construction. The second clause of Section 631(a) applies to one who "*reads,* or attempts to read*, or to learn the contents* or meaning of any . . . communication *while the same is in transit* . . . ." (emphasis added). Cal. Penal Code § 631(a). Thus, this provision expressly requires reading or attempting to learn the contents of the communication. Simply intercepting a communication without attempting to derive something from its contents while the communication is "in transit" would fall outside the plain words of the statute.

Two recent decisions by California federal courts reached this same conclusion. In *Torres v. Prudential Fin., Inc.*, the court granted summary judgment in defendant's favor because "nothing in the record plausibly indicate[d]" that the third party read the communications' contents while they were in transit, even though the third party "intercept[ed] the contents . . . in real time and store[d] the recording" on its server. No. 22-CV-07465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). The *Torres* court found that the third party's storage of data did not "analyze, summarize, or otherwise interpret Plaintiffs' data" and was therefore distinguishable from companies that "creat[e] personal profiles that can then be marketed to third-party advertisers." *Id.* at *6 (drawing a contrast between storing data and the fact pattern in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

589 (9th Cir. 2020)). *Torres* supports the conclusion that the second clause of Section 631(a) requires something more than simultaneous interception and storage of the communicated information.

Six months later, another decision addressing the "in transit" requirement found, "the better conclusion is that you must do something more than just intercept the communication while it is in transit to be held liable." *Eating Recovery Center*, 806 F. Supp. 3d at 1118 (granting summary judgment to defendant). That court explained that construing Section 631(a) to apply to the mere interception of a communication would render Section 632 superfluous because that provision makes it unlawful "to eavesdrop upon or record." *Id.* (internal quotation marks omitted). Thus, NDR correctly argues that Section 631(a)'s "read . . . or learn" requirement should not be divorced from the "while . . . in transit" requirement. Reply at 11.

That said, Plaintiffs correctly note that at the pleading stage, the "relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Additionally, the decisions in *Torres* and *Eating Recovery Center* addressed motions for summary judgment, not motions to dismiss. Given this information disparity at the pleading stage, courts have concluded that "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata*, 2024 WL 5161955, at *6

(alteration in original) (*quoting Esparza*, 2024 WL 559241, at *3). Meeting this pleading threshold will provide defendant with "fair notice . . . of when [Plaintiffs] believe [the Defendant] intercepts their communications." *Gray v. Luxottica of Am., Inc.*, No. 8:24-CV-00160, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) (internal quotation marks omitted) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)).

The undersigned concludes that the second clause of Section 631(a) requires contemporaneous reading or learning of the contents of communications while they are in transit.[5] But at the pleading stage, a plaintiff need only allege facts giving rise to a plausible inference that this requirement is met and California courts have been flexible in determining what factual allegations suffice.

### 2. Plaintiffs Sufficiently Plead the "In Transit" Requirement

Next, it is necessary to evaluate whether the Amended Complaint sufficiently alleges simultaneous reading or learning by the Advertisers while communications are in transit. NDR contends that the AC lacks the necessary factual allegations, while Plaintiffs contend that their complaint alleges "that the interceptions systematically occur in real time as the user inputs information into the Website." Opp. at 11.[6]

---

[5] Defendant also argues that "any ambiguity in Section 631 should be construed in NDR's favor under California's rule of lenity." Motion at 17. Because the undersigned adopts NDR's construction, it not necessary to consider the rule of lenity.

[6] NDR also asserts that Plaintiffs' claim is "based on the Advertisers' alleged interception of communications sent from a California server and [is] not dependent on the

A review of the Amended Complaint shows that it sufficiently alleges that at least one of the Advertisers — Meta — simultaneously reads or learns the contents of consumers' communications with NDR. These allegations plead a predicate violation, even strictly applying the "in transit" requirement at the pleading stage. For several additional Advertisers, the AC adequately alleges simultaneous *interception* of communications, which multiple California decisions have considered sufficient at the pleading stage. For several other Advertisers, the AC fails to meet even this more lenient pleading standard. The bottom line is that Plaintiffs sufficiently allege a predicate violation of the second clause of Section 631(a) regardless of which party is correct about what is required to satisfy the "in transit" requirement at the pleading stage.

According to the Amended Complaint, the Meta Pixel is a string of code that "operates from within Defendant's website code and forces the subscriber's browser to share information with Meta." AC ¶ 43. The AC illustrates Meta Pixel's location within NDR's Website through screenshots. *Id.* ¶ 35, Figures 9–10. Because NDR embedded this code in its Website, "[t]he Meta Pixel operates *automatically when the user loads the website* to monitor, record, collect, and *analyze* all of the user's online interactions." *Id.* ¶ 37 (emphasis added). Drawing reasonable inferences in Plaintiffs' favor, this is an allegation of simultaneous reading or learning.

---

timing of the alleged interception." Reply at 7. While this might have been Plaintiffs' position at the October 22, 2025 pre-motion conference, that is not what Plaintiffs argue in their briefing, nor is it all that is alleged in the Amended Complaint. As described below, the AC plausibly alleges simultaneous *reading* of communications by at least one of the Advertisers, which is sufficient even under NDR's view of CIPA's pleading requirements.

The AC provides additional details supporting its assertion that Meta reads the contents of user communications with NDR while they are in transit. According to the AC, "[t]he Meta Pixel monitors the website's users *as they interact with the website*[.]" *Id.* ¶ 35 (emphasis added). Plaintiffs allege that "*when* a user proceeds through NDR's application process . . . Meta *learns the contents of such communications* including the user's name, phone number, email address, that the user is applying for NDR's debt consolidating services, and the amount of debt the user is seeking to consolidate." *Id.* ¶ 39 (emphases added). Further, "*[w]hen* Meta intercepts such user communications to NDR, the Pixel transmits unique identifiers to Meta that identify the user . . . and indicat[e] that the user is a person interested in debt relief services." *Id.* ¶ 40 (emphasis added). NDR's alleged use of the Conversions API (CAPI) further allows Meta to "*instantaneously* identify" subscribers' Facebook profiles. *Id.* ¶ 47 (emphasis added). Accepting the truth of these allegations, and drawing reasonable inferences in Plaintiffs' favor, Plaintiffs adequately plead that Meta reads or learns the content of user communications while they are in transit to NDR.

This conclusion is consistent with other decisions addressing the "in transit" requirement. For example, a CIPA claim was found sufficient where a plaintiff alleged that embedded code allowed a third party to engage in secret real-time interception of messages sent by a chat feature, allowing the third party to harvest data from these communications. *Valenzuela*, 686 F. Supp. 3d at 977. As that court explained, harvesting data "would almost certainly constitute reading, or

attempting to read or to learn" within the meaning of the second clause of Section 631(a). *Id.* Similarly, where a third party received chat messages either before or simultaneously with the intended recipient, the complaint plausibly alleged a violation of CIPA clause two because defendant allowed the third party to "listen in" on chats with its website users. *D'Angelo*, 2023 WL 7006793, at *8–9. Finally, another court in this District upheld CIPA claims against a debt consolidation company where there were similar allegations that, through the use of tracking tools, a third-party advertiser "eavesdropped on and intercepted Plaintiffs' private communications . . . including the outcomes of their loan applications." *See Camm*, 2026 WL 861670, at * 8 (observing that "many federal district courts in California applying CIPA have found that the unauthorized interception and transmission of website users' information by third-party tracking tools . . . qualify as underlying violations of Section 631(a)") (citing cases). Here, the AC plausibly alleges that, through the operation of Meta Pixel, Meta contemporaneously listened in on and harvested data from communications with NDR's Website.

Defendant attacks the sufficiency of Plaintiffs' allegations by highlighting language suggesting that there is a temporal gap between the interception of communications and Meta's data analysis. Motion at 12–13. For instance, the AC states that Meta uses "innovative user categorizing systems to understand and predict how individuals will engage with content in the future" only "*after* those communications [are] intercepted." *Id.* at 12 (emphasis in original) (citing AC ¶ 33). While this language arguably means that Meta uses certain categorizing systems

after interception, it does not negate Plaintiffs' other allegations that Meta also analyzes data while it is in transit. In other words, drawing all reasonable inferences in Plaintiffs' favor, the AC plausibly alleges that Meta does both: it reads or analyzes data both contemporaneously *and* after the communication is intercepted. Because the AC plausibly pleads the former, it gives rise to a reasonable inference of reading or learning the contents of communications while they are in transit. *See Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556).[7]

In theory, an analysis of whether Plaintiffs sufficiently allege a predicate violation of CIPA could end here. But some California federal courts have found that allegations of simultaneous *interception* are sufficient to satisfy the "in transit" requirement at the pleading stage. *See Mata*, 2024 WL 5161955, at*6 ("allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement"). The AC meets this more lenient pleading standard for several additional Advertisers.

For example, the AC alleges that Google's DoubleClick code "capture[s] and transmit[s] records of user interactions and communications" and "Google Analytics's code causes the browser to send the user's IP address . . . *simultaneously* with the user's communications with NDR and interactions on its Website." AC ¶¶ 54, 62 (emphasis added). Plaintiffs illustrate the code's operation on the Website

[7] The undersigned acknowledges that *Eating Recovery Center* concluded on summary judgment that the Meta tracking tools at issue there did not satisfy the "in transit" requirement. That summary judgment decision, based on the factual record in a different case, does not detract from the sufficiency of Plaintiffs' allegations here.

through screenshots and allege, "Google *learns* [the applicant's] full name . . . and that he *is filling* out an application for debt consolidation with NDR." *Id.* ¶ 56, Figures 11–12 (emphasis added). These allegations about Google are less clear than those regarding Meta as to whether the learning or reading occurs while communications are in transit. NDR highlights language suggesting that there is a temporal gap between the interception of the communications and the actual reading or learning of the substantive content of the data. Motion at 13. For example, the AC alleges that records of user interactions are transmitted to Google, which "Google *then processes* . . . and adds . . . to categorized datasets[.]" AC ¶ 54 (emphasis added). "*With this information in hand*, DoubleClick constructs user profiles[.]" *Id.* ¶ 57 (emphasis added).

For X, the AC alleges that "X *surveils* users' online activities" and "*learns* users' full names, emails, . . . and that they *are applying* for debt consolidation with NDR via the Website." *Id.* ¶¶ 66, 72 (emphases added). For both Microsoft and Claritas, the AC alleges that "in addition to transmitting a user's communications" . . . Microsoft and Claritas' respective code cause "the browser to send the user's IP address . . . through HTTP requests *simultaneously* with the user's communications with NDR and interactions on its Website." *Id.* ¶¶ 76, 95 (emphasis added). When combined with the descriptions of each Advertiser's code (Google's DoubleClick and Analytics, *Id.* ¶¶ 54–65; X's Pixel, *Id.* ¶¶ 68–72; Microsoft's UET Tag, *Id.* ¶¶ 73–76; and Claritas' Pixel, *Id.* ¶¶ 89–95), these allegations sufficiently plead simultaneous interception of communications with NDR. Although the AC does not clearly allege

that these Advertisers read or learn the contents while communications are in transit, there are cases finding this level of detail sufficient at the pleading stage. *See D'Angelo*, 2023 WL 7006793, at *8 ("a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and this third-party recorder").[8]

In summary, Plaintiffs' allegations are sufficient to plead that at least one Advertiser, Meta, engages in simultaneous reading or learning within the meaning of the second clause of Section 631(a), even assuming that contemporaneous interception, alone, is insufficient at the pleading stage. Plaintiffs therefore satisfy the first requirement for liability under clause four: they adequately plead an underlying violation of clause two of Section 631(a) by at least one of the Advertisers.

### B. Plaintiffs Sufficiently Plead NDR's Knowledge and Intent Under Section 631(a)

To state a claim for aiding a CIPA violation under the fourth clause of Section 631(a), Plaintiffs must allege that NDR possessed the requisite knowledge and

[8] In contrast, the AC's allegations regarding TikTok and TD are insufficient to satisfy the "in transit" requirement even under a more lenient pleading standard. For TikTok, the AC alleges the "TikTok Pixel utilizes the '_ttp' cookie" which contains "a unique identifier used to match a user to their activities" and is "[sent] back to TikTok . . . in conjunction with communications users submit when applying . . . on the Website." AC ¶¶ 79–80. Use of the phrase "in conjunction with" is too vague to allege simultaneous interception and transmission. Similarly, for TD, the AC alleges that "when the TD Pixel fires on the Website, it transmits users' amount of debt," but lacks sufficiently clear allegations about the timing of this transmission. *Id.* ¶ 84. It is conceivable that Plaintiffs could bolster these allegations through an amendment.

intent in relation to the Advertisers' underlying violations. *See YETI Coolers*, 754 F. Supp. 3d at 942–43. Defendant argues that Section 631(a) liability requires NDR to have "act[ed] with the third party *in order to* have the third party perform acts that violate the statute[,]" which the AC fails to allege. Motion at 15 (emphasis in original) (citing *YETI Coolers*, 754 F. Supp. 3d at 942). In response, Plaintiffs contend that "NDR intentionally and unilaterally installed the AdTech Trackers on its Website with the full understanding that the technology's purpose was to enable the Advertisers to intercept the content of . . . customers' . . . communications on the Website." Opp. at 17.

To support their scienter argument, Plaintiffs cite allegations that the Advertisers' tracking technology is "not necessary for the Website's functions[,]" "do not appear on a website by happenstance[,]" and indicate that NDR "obtain[ed] the necessary code and implement[ed] such tracking technology on its website." AC ¶¶ 96–97. Drawing reasonable inferences in Plaintiffs' favor, these allegations are sufficient to plead that NDR intentionally installed the tracking technologies on its Website.

The Amended Complaint goes even further, alleging that NDR directly guided and benefited from the Advertisers' use of their tracking tools in violation of CIPA. Plaintiffs allege that "NDR specified the types of information it desired the Advertisers to extract from its Website . . . including communications regarding their amount of debt[.]" *Id.* ¶ 99. In turn, the Advertisers' learning the contents of these communications enabled them to "provide NDR with benefits associated with

their online web presence[,]" indicating that "NDR's aiding the Advertisers' interception of users' sensitive personal and financial information was and is deliberate." *Id.* ¶ 98. These "data-driven advertising practices" (*i.e.*, the Advertisers reading the content of user communication with the Website) allegedly benefited NDR by (1) enhancing the effectiveness of NDR's own ads and (2) providing NDR analysis of user interaction with the Website based on data that the Advertisers' tracking tools collected "while operating on the Website." *Id.* ¶ 8. These allegations support a reasonable inference that NDR knew of and intended for the Advertisers to perform the acts that violated CIPA.

NDR responds that its receipt of an economic benefit does not "equat[e] to an allegation that NDR installed the Trackers for the specific purpose of enabling the Advertisers to violate Section 631(a)," citing, *inter alia*, *YETI Coolers*. Reply at 12–13 (citing Opp. at 13). The *Camm* decision is instructive as to why *YETI Coolers* has little application to the facts alleged here. As the *Camm* court observed, the defendant in *YETI Coolers* only "allowed the third party to incorporate customers' financial information into its fraud prevention system." *Camm*, 2026 WL 861670, at *9 (citing *YETI Coolers*, 754 F. Supp. 3d at 938). Thus, the underlying CIPA violation in *YETI Coolers* was the "third party's secondary, unauthorized act of marketing customer information to merchants — and not the third party's collection of customer information itself[.]" *Id.* In contrast, the underlying CIPA violation alleged in *Camm* was the third party's collection of Plaintiff's financial information. *Id.* Thus, *Camm* found that plaintiff's allegations that defendant "configure[d] the

Tracking Tools on [its] website so that [the third-party advertiser] could capture user-specific information" satisfied the knowledge and intent requirements. *Id.*

A similar conclusion is warranted here. Plaintiffs allege that NDR "obtain[ed] the necessary code and implement[ed] [it] on its website." AC ¶¶ 96–97. Additionally, the AC alleges that NDR both instructed the Advertisers on the type of information it wanted them to extract from its Website (*i.e.*, "communications regarding their amount of debt[,]" which is the substance of consumers' communications with the Website) and benefited from the enhanced marketing that the Advertisers were able to provide to NDR due to their contemporaneous analysis of intercepted communications from Website users. AC ¶¶ 5, 99. Thus, Plaintiffs allege that NDR took intentional steps to facilitate and benefit from the Advertisers' underling CIPA violations. These allegations plausibly plead NDR's knowledge and intent with respect to the Advertisers' underlying violation of the second clause of Section 631(a) of CIPA. *See Iqbal*, 556 U.S. at 670.

## IV. CONCLUSION

For the reasons described above, the undersigned respectfully **RECOMMENDS** that NDR's Motion to Dismiss be **DENIED**.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed

with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods, United States Courthouse, 500 Pearl Street, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Woods.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 16, 2026
New York, New York

Henry J. Ricardo
United States Magistrate Judge