UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LORETTA JEAN BERNARDI** and **SOLOMON HUEBNER-MENDOZA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NATIONAL DEBT RELIEF, LLC**,<br><br>Defendant. | Case No. 1:25-cv-06334-GHW-HJR |

**DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................ 1

Background ........................................................................ 2

Standard of Review ........................................................................ 3

Specific Objections ........................................................................ 3

Argument ........................................................................ 4

I. The R&R Improperly Excused Plaintiffs from Alleging That Any Advertiser Attempted to Read or Learn the Contents of Plaintiffs' Communications "While" in Transit. ........................................ 4

A. The R&R purported to adopt the correct contemporaneity standard but did not apply it. ........................................ 5

B. The R&R incorrectly treated the operation of NDR's Website code as conduct by the Advertisers. ........................................ 7

C. The R&R disregarded allegations that affirmatively negate contemporaneity. ........................................ 8

II. The R&R Improperly Inferred Knowledge and Intent from Allegations That Describe Ordinary Commercial Benefits. ........................................ 9

A. Intentional installation of commonplace advertising code and receipt of marketing benefits do not establish knowledge or intent. .......... 9

B. The R&R did not address Plaintiffs' concession that NDR acted "unilaterally," not in concert with any of the Advertisers. ....................... 10

C. The R&R did not apply the rule of lenity to the fourth clause's scienter element. ........................................ 11

CONCLUSION ........................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 8

*Camm v. Reach Fin., LLC*,
2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) .......... 9

*Catania v. United Fed'n of Teachers*,
No. 1:21-CV-1257-GHW, 2022 WL 767107 (S.D.N.Y. Mar. 12, 2022) .......... 3

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 5, 6

*Doe v. Eating Recovery Ctr., LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 6, 11

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) .......... 11

*Licea v. Finish Line, Inc.*,
No. 23STCV22390 (Cal. Super. Ct. July 10, 2024) .......... 10

*Mata v. Zillow Group, Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 5, 6

*Ortiz v. Deckers Outdoor Corp.*,
No. 25-CV-09631-RFL, 2026 WL 1243675 (N.D. Cal. May 6, 2026) .......... 6

*People v. Beeman*,
35 Cal. 3d 547 (1984) .......... 2

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 2, 9, 10

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 6, 8

*Wooden v. United States*,
595 U.S. 360 (2022) .......... 11

*Yates v. United States*,
574 U.S. 528 (2015) .......... 11

**Statutes**

Cal. Penal Code § 631(a) .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 .......... 6

Fed. R. Civ. P. 72(b)(3) .......... 3

Defendant National Debt Relief, LLC ("NDR") respectfully objects to the July 16, 2026 Report and Recommendation of Magistrate Judge Henry J. Ricardo (ECF 26, the "R&R"), which recommends denial of NDR's motion to dismiss the First Amended Complaint ("FAC").

**PRELIMINARY STATEMENT**

Plaintiffs assert a single claim under Section 631(a) of the California Invasion of Privacy Act ("CIPA")—a provision of California's penal code—premised on NDR's installation of free, publicly available code on its website (the "Website"). According to the FAC, NDR's installation of the code enabled third parties (the "Advertisers") to intercept Plaintiffs' communications with the Website. Because NDR cannot be directly liable under Section 631(a), Plaintiffs base their claim entirely on the statute's derivative liability provision, claiming that NDR "aid[ed], agree[d] with, employ[ed], or conspire[d] with" seven Advertisers—none of which Plaintiffs sued—to commit a predicate violation of Section 631(a)'s second clause. (FAC ¶¶ 134–43.) Plaintiffs' theory required them to plead: (1) that the Advertisers attempted to read or learn the contents of their communications "while" those communications were in transit (the contemporaneity requirement); and (2) that NDR aided, abetted, or conspired with the Advertisers with knowledge of and intent to further that unlawful conduct.

In the R&R, Judge Ricardo correctly reaffirmed Section 631(a)'s contemporaneity requirement and held that allegations that an Advertiser's "intercept[ion] [of] a communication without attempting to derive something from its contents while the communication is 'in transit' would fall outside the plain words of the statute." (R&R 8, 10.) However, when analyzing whether Plaintiffs had alleged a predicate violation by the Advertisers, the R&R applied a "more lenient pleading standard" that treated bare allegations of simultaneous interception as sufficient—even after acknowledging that the FAC "does not clearly allege that these Advertisers read or learn the

contents while communications are in transit . . ..” (R&R 13–16.) The R&R thus incorrectly concluded that Plaintiffs had plausibly alleged a predicate CIPA violation by five of the seven Advertisers.

Having found a predicate violation, the R&R turned to whether Plaintiffs alleged facts sufficient to support the knowledge and intent requirement of their derivative claim against NDR. Section 631(a)’s aiding and abetting provision reaches only a defendant who acts “with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.” *People v. Beeman*, 35 Cal. 3d 547, 560 (1984); *accord Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). The R&R inferred both elements from three allegations: that NDR installed the code, specified categories of data it wished to receive, and obtained analytics and advertising benefits. (R&R 17–19.) Those allegations describe NDR’s ordinary commercial motive to use the code for its own benefit—not intent to facilitate a crime purportedly committed by others. Under the R&R’s reasoning, any website operator’s installation of commonplace code alone satisfies the scienter for a criminal aiding-and-abetting theory—regardless of what the operator knew or intended. That reading writes the knowledge and intent elements out of Section 631(a), and California’s rule of lenity, which the R&R never applied to the statute’s scienter requirement, forecloses such an expansive interpretation.

NDR respectfully requests that the Court decline to adopt the R&R and dismiss Plaintiffs’ FAC with prejudice.

## BACKGROUND

Plaintiffs are California residents who applied for debt consolidation services on the Website. (ECF 6 (“FAC”) ¶¶ 12–13.) They allege that NDR installed on the Website code created by seven Advertisers—Meta, Google, X Corp., Microsoft, TikTok, The Trade Desk, and

Claritas—to obtain analytics and targeted-advertising benefits for itself. (*Id.* ¶¶ 3, 5, 8, 29, 33–95.) Plaintiffs do not allege that NDR created the code, commissioned it, or communicated with any Advertiser about it. Their single claim asserts derivative liability under Section 631(a)'s fourth clause for aiding, agreeing with, employing, or conspiring with the Advertisers to learn the contents of Plaintiffs' communications. (*Id.* ¶¶ 134–43.)

NDR moved to dismiss the FAC on November 10, 2025, arguing that: (1) as a party to Plaintiffs' communications, NDR cannot be liable for a direct violation of Section 631(a); (2) Plaintiffs failed to allege any Advertiser read or learned the contents of their communications while in transit; and (3) Plaintiffs failed to allege NDR acted with the requisite knowledge and intent. (ECF 18–19 (the "Motion").) Plaintiffs opposed on December 8, 2025 (ECF 22 (the "Opposition")), and NDR replied on December 22, 2025 (ECF 25 (the "Reply")). Judge Ricardo issued the R&R on July 16, 2026. (ECF 26.)

**STANDARD OF REVIEW**

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to[,]" and "may accept, reject, or modify the recommended disposition . . . ." Fed. R. Civ. P. 72(b)(3); *see also Catania v. United Fed'n of Teachers*, No. 1:21-CV-1257-GHW, 2022 WL 767107, at *1 (S.D.N.Y. Mar. 12, 2022) (Woods, J.).

**SPECIFIC OBJECTIONS**

NDR seeks de novo review of each of the following specific findings, conclusions, and recommendations in the R&R:

- The conclusion that the FAC plausibly alleges that Meta contemporaneously read or learned the contents of Plaintiffs' communications while those communications were in transit. (R&R 11–14.)
- The application of a "more lenient pleading standard" under which allegations of simultaneous interception alone establish a predicate violation of Section 631(a)'s second clause by any of the Advertisers. (R&R 13–16.)

- The conclusion that the FAC's allegations of a "temporal gap" between interception and analysis do not defeat the plausibility of Plaintiffs' contemporaneity allegations. (R&R 13–14.)

- The conclusion that NDR's intentional installation of code, specification of data categories, and receipt of analytics and marketing benefits for itself support a reasonable inference that NDR knew of and intended for the Advertisers to violate Section 631(a). (R&R 16–19.)

- The failure to address Plaintiffs' concession that NDR acted "unilaterally," and the corresponding absence of any finding on the concerted-action requirement of Section 631(a)'s fourth clause. (R&R 16–19.)

- The failure to apply California's rule of lenity to Section 631(a)'s knowledge and intent requirement. (R&R 10 n.5, 16–19.)

- The ultimate recommendation that NDR's motion to dismiss be denied. (R&R 19.)

## ARGUMENT

### I. The R&R Improperly Excused Plaintiffs from Alleging That Any Advertiser Attempted to Read or Learn the Contents of Plaintiffs' Communications "While" in Transit.

Because Plaintiffs proceed solely under Section 631(a)'s fourth clause, they must first plead that the Advertisers "engaged in conduct falling under one of the first three prongs of the statute"—here, the statute's second clause. (R&R 6.) The R&R correctly held that the second clause requires "contemporaneous reading or learning of the contents of communications while they are in transit," and that mere interception "would fall outside the plain words of the statute." (R&R 8, 10.) The R&R then erred in three ways: (A) it abandoned that construction and applied a "more lenient" standard that credited conclusory allegations; (B) it treated the Advertisers' code and the Advertisers themselves as interchangeable; and (C) it disregarded allegations affirmatively negating contemporaneity.

### A. The R&R purported to adopt the correct contemporaneity standard but did not apply it.

Plaintiffs contended throughout their briefing that to state a claim under CIPA, they need only allege that the Advertisers "intercepted" their communications "in real time." (Opposition 6–7.) The statute requires more. Section 631(a)'s second clause expressly requires a third party to read, or attempt to read, or to learn the contents or meaning of a communication "while the same is in transit . . .." Cal. Penal Code § 631(a). Interception, storage, or after-the-fact analysis does not give rise to a claim.

Consistent with the statute's plain text, the R&R rejected Plaintiffs' argument and held that the second clause requires "contemporaneous reading or learning of the contents of communications while they are in transit" and that mere interception "would fall outside the plain words of the statute." (R&R 8, 10.) It also recognized that it need not credit Plaintiffs' conclusory allegations. (R&R 4.)

Yet rather than applying those standards, the R&R credited Plaintiffs' conclusory allegations under what it described as a "more lenient pleading standard" drawn from *Mata v. Zillow Group, Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024), and *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023). It held on the one hand that real-time interception alone "would fall outside the plain words of the statute" (R&R 8), while concluding on the other that Plaintiffs' allegations of real-time interception sufficed—an irreconcilable inconsistency.

That inconsistency matters most for Meta, the Advertiser the R&R focused most of its analysis on. (*See* R&R 11–13.) The allegations the R&R credited—that the Meta Pixel "monitors" users and that Meta "learns the contents" of their communications (FAC ¶¶ 35, 37, 39)—are conclusory labels, not facts showing Meta attempted to read or learn contents while the

communications were in transit. Stripped of those labels, the FAC alleges only that code installed by NDR transmits data to Meta. That is interception, which the R&R acknowledged is insufficient. R&R at 8–9 (citing *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5–6 (N.D. Cal. Apr. 17, 2025), and *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (a third party "must do something more than just intercept the communication while it is in transit")).

The R&R's reliance on *Mata* and *D'Angelo* to justify its application of a "more lenient" standard is misplaced. Both rest on the premise that information about data capture "resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo*, 2023 WL 7006793, at *8. That is a rationale about proof, not about elements of a claim, and Rule 8 does not relax merely because facts are purportedly difficult to obtain. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Those cases were also factually different: the *D'Angelo* plaintiff alleged that the third party received chat messages "either before or simultaneously with" the intended recipient and thereby "listen[ed] in" on the conversation. 2023 WL 7006793, at *8–9. Plaintiffs allege no analogue. The FAC uses "in transit" only when discussing the statute and alleges that Website code transmitted data during NDR's server response—after the Website received the user's communication. (FAC ¶ 61; Reply 6–7.) Courts routinely reject similar conclusory allegations of "real time" interception as sufficient to state a claim. *See, e.g.*, *Ortiz v. Deckers Outdoor Corp.*, No. 25-CV-09631-RFL, 2026 WL 1243675, at *3 (N.D. Cal. May 6, 2026).

The R&R discounted *Torres* and *Eating Recovery Center* because both were decided at summary judgment. (R&R 9–10, 14 n.7.) NDR cited those decisions for their construction of Section 631(a). (Reply 5.) A statute's meaning does not vary with procedural posture, and the R&R itself relied on both decisions in adopting the contemporaneity requirement. (R&R 8–10.)

Having accepted their holdings, the R&R could not invoke their posture to excuse Plaintiffs from pleading the conduct those holdings require.

The effect of applying the more lenient standard is clearest in the R&R's treatment of the remaining Advertisers. After crediting allegations that Google's code "capture[s] and transmit[s] records of user interactions," that "X surveils users' online activities," and that Microsoft's and Claritas's code "cause[s] the browser to send the user's IP address" (R&R 14–15 (quoting FAC ¶¶ 54, 66, 76, 95) (emphasis omitted)), the R&R acknowledged that "the AC does not clearly allege that these Advertisers read or learn the contents while communications are in transit . . .." (R&R 15–16.) That acknowledgment should have ended the analysis, as it did for TikTok and The Trade Desk. (R&R 16 n.8.)

### B. The R&R incorrectly treated the operation of NDR's Website code as conduct by the Advertisers.

Section 631(a)'s second clause reaches a "person who . . . reads, or attempts to read, or to learn the contents or meaning" of a communication. Cal. Penal Code § 631(a). It expressly requires contemporaneous action by the alleged interceptor. The allegations the R&R credited describe something different: the automatic operation of code NDR installed on its Website and what the Advertisers can purportedly do with data purportedly collected by the code post-interception.

The R&R's Meta analysis illustrates the problem. It relied on the FAC's description of the Meta Pixel as code that "'operates from within Defendant's website code and forces the subscriber's browser to share information with Meta'" and that "'operates automatically when the user loads the website to monitor, record, collect, and analyze all of the user's online interactions.'" (R&R 11 (quoting FAC ¶¶ 43, 37).) That is an allegation about what NDR's Website code does—not about anything Meta did, or when. The same conflation runs through the R&R's treatment of Google, X, Microsoft, and Claritas. (R&R 14–15.)

The distinction is not semantic. Automatic transmission of data by code is the mechanism of interception; it reflects nothing about whether the Advertisers attempted to "read" or "learn" the substance of what was transmitted. *See Torres*, 2025 WL 1135088, at *5 (requiring "some effort at understanding the substantive meaning of the message, report or communication"). By equating the code's operation with the Advertisers' conduct, the R&R never asked whether the FAC plausibly alleges that any Advertiser itself contemporaneously read or attempted to read the contents of Plaintiffs' communications. It does not.

**C. The R&R disregarded allegations that affirmatively negate contemporaneity.**

The FAC does not merely omit contemporaneity; it pleads facts inconsistent with it. According to Plaintiffs, Meta employs its "innovative user categorizing systems" only "[a]fter gathering such information . . .." (FAC ¶ 33.) Google "then processes the data and adds it to categorized datasets," and "[w]ith this information in hand, DoubleClick constructs user profiles . . .." (*Id.* ¶¶ 54, 57.) Claritas "captures that website user information" and "[t]hen . . . combine[s] this website data" to build a profile. (*Id.* ¶ 93.)

The R&R acknowledged this "temporal gap" but reasoned that the sequencing language "does not negate Plaintiffs' other allegations that Meta also analyzes data while it is in transit." (R&R 13–14.) The only allegations of contemporaneous analysis, however, are the conclusory ones the R&R should not have credited. A court draws reasonable inferences in a plaintiff's favor; it does not credit a conclusion that the plaintiff's own factual allegations contradict. *Iqbal*, 556 U.S. at 678–79. Setting the conclusory allegations aside, the FAC alleges interception followed by processing—conduct the R&R correctly held falls outside the statute. Properly applied, that analysis required the same result the R&R reached for TikTok and The Trade Desk: no predicate violation. (R&R 16 n.8.)

## II. The R&R Improperly Inferred Knowledge and Intent from Allegations That Describe Ordinary Commercial Benefits.

Even if Plaintiffs had pleaded a predicate violation, their claim still fails. The R&R correctly recognized that Plaintiffs must independently allege that NDR "knew about [the Advertisers'] unlawful conduct" and "acted with the intent of aiding [them] . . .." (R&R 6–7, 16–17 (quoting *Camm v. Reach Fin., LLC*, 2026 WL 861670, at *9 (S.D.N.Y. Mar. 30, 2026)).) Its application of that standard was erroneous in three respects: (A) it treated intentional installation and receipt of marketing benefits as proof of knowledge and intent; (B) it did not address Plaintiffs' concession that NDR acted "unilaterally"; and (C) it did not apply the rule of lenity to a scienter requirement imposed by California's penal code.

### A. Intentional installation of commonplace advertising code and receipt of marketing benefits do not establish knowledge or intent.

The R&R inferred that NDR "intentionally installed the tracking technologies on its Website" because the tools are "not necessary for the Website's functions," "do not appear on a website by happenstance," and required NDR to "obtain[] the necessary code and implement[]" it. (R&R 17 (quoting FAC ¶¶ 96–97).) Accepting that inference, it establishes only that the installation was not accidental—nothing about what NDR knew regarding how, when, or by what means any Advertiser might process intercepted data. Intentional installation is not intent to facilitate a crime. *YETI Coolers*, 754 F. Supp. 3d at 942, 944.

The R&R next inferred that NDR "knew of and intended for the Advertisers to perform the acts that violated CIPA" because NDR "specified the types of information it desired the Advertisers to extract from its Website" and the Advertisers "provide[d] NDR with benefits . . .." (R&R 17–18.) Neither allegation bridges the gap. Specifying data NDR wished to receive describes what NDR wanted for itself, not intent for the Advertiser to read or learn contents while in transit for its own unlawful purpose. And the benefits alleged—"enhanced analytics and

improved advertising and marketing capabilities" (FAC ¶ 5)—are ordinary objectives of digital marketing. Generalized allegations that a defendant installed and benefited from widely used advertising technologies do not support an inference of the knowledge required for criminal aiding and abetting. *YETI Coolers*, 754 F. Supp. 3d at 942–43; *Licea v. Finish Line, Inc.*, No. 23STCV22390 (Cal. Super. Ct. July 10, 2024) (Motion, Exh. A at 5–6).

The consequence of the R&R's reasoning is that scienter becomes automatic. Any operator that installs a tracking tool, identifies desired data, and obtains marketing value would face derivative criminal liability—without regard to what it knew or intended about how third parties might use the data for themselves. Such an interpretation effectively eliminates Section 631(a)'s knowledge and intent elements.

The R&R set aside *YETI Coolers* on a distinction the case does not support. In *YETI Coolers*, the court found allegations that the defendant was "knowledgeable of and benefitt[ed] from" the third party's services and assisted the third party "in intercepting and indefinitely storing this sensitive information" were conclusory and did not permit "a plausible inference that Defendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute." 754 F. Supp. 3d at 938–39, 943. The R&R purports to distinguish *YETI Coolers* on the grounds that the underlying violation there was the third party's marketing of customer information, not collection. (R&R 18.) But the *YETI Coolers* plaintiff alleged the third party "intercept[ed] and indefinitely store[d] consumers' personally identifiable information." 754 F. Supp. 3d at 938–39. The R&R's distinction is irreconcilable with that case's factual background.

### B. The R&R did not address Plaintiffs' concession that NDR acted "unilaterally," not in concert with any of the Advertisers.

Section 631(a)'s derivative liability clause applies only to a person who "aids, agrees with, employs, or conspires with" another. Cal. Penal Code § 631(a). Read together, those verbs require

some concerted undertaking. *See Yates v. United States*, 574 U.S. 528, 543 (2015). Plaintiffs do not allege that NDR contracted with, paid, or communicated with any Advertiser about the code. To the contrary, they characterized NDR's conduct as "unilateral[]." (Opposition 12, 15.) NDR raised that concession as an independent ground for dismissal, and the R&R did not address it. (*See* R&R 16–19.) The omission is consequential. Absent any alleged interaction between NDR and the Advertisers, there is no basis to infer that NDR knew how or when the Advertisers would process user data, and none to find the concerted conduct the statute requires—unlike nearly all the cases cited in the R&R, where intent was inferred from a contractual relationship between the operator and the technology provider. (Reply 9.)

**C. The R&R did not apply the rule of lenity to the fourth clause's scienter element.**

NDR argued that any ambiguity in Section 631(a) must be resolved in its favor under California's rule of lenity. (Motion 13–14; Reply 10–12.) The R&R declined to reach lenity for a single reason: it had adopted NDR's construction of the statute's contemporaneity requirement. (R&R 10 n.5.) However, it never addressed lenity as to Section 631(a)'s knowledge and intent requirement and proceeded to adopt the broadest available reading of it.

Section 631(a) is housed in California's Penal Code and carries criminal penalties, and California courts apply the rule of lenity even when such statutes are privately enforced. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112 (citing *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001)). "[C]ourts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Id.*; *see Wooden v. United States*, 595 U.S. 360, 394 n.4 (2022) (Gorsuch, J., concurring). The R&R's construction does the opposite. It extends derivative criminal liability to routine installation of code found on nearly every modern website, based on nothing more than the operator's desire for analytics and better marketing. If Section 631(a) reaches that conduct, the

California Legislature must clearly say so; a federal court should not adopt such an expansive reading of a 1967 wiretapping statute absent unambiguous textual support.

## CONCLUSION

For the foregoing reasons, NDR respectfully requests that the Court decline to adopt the Report and Recommendation, grant NDR's motion to dismiss, and dismiss Plaintiffs' CIPA claim with prejudice.

DATED: July 30, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *_/s/ J. Matthew Thornton_*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**WORD COUNT CERTIFICATION**

I, the undersigned, hereby certify that this Memorandum contains 3,483 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and it is in compliance with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: July 30, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*
Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2026, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Samuel R Jackson
Carney Bates & Pulliam, PLLC
One Allied Drive
Ste 1400
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: sjackson@cbplaw.com

BY: *\/s/ Jessica Leamant*
Jessica Leaman
*On behalf of Defendant, National Debt Relief, LLC*