**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**LORETTA JEAN BERNARDI and**
**SOLOMON HUEBNER-MENDOZA,**
individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

**Case No.**: 1:25-cv-06334-GHW-HJR

**NATIONAL DEBT RELIEF, LLC,**

Defendant.

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 3

a. The R&R Correctly Found That Plaintiffs Sufficiently Alleged the Advertisers Read and Learned the Contents of Plaintiffs' Communications While in Transit and Being Sent from Places in California. ..... 3

i. The Amended Complaint Sufficiently Alleges Contemporaneity. ..... 3

ii. The R&R Correctly Applied California Law Governing the "In Transit" Requirement. ..... 6

iii. The R&R Correctly Treated the Operation of the Advertiser's Tracking Technology on NDR's Website as Conduct by the Advertisers. ..... 8

iv. The AC's Allegations Regarding the Advertisers' Downstream Data Use (Violation of the Third CIPA Clause) Do Not "Negate" the Separate Allegations of Contemporaneous Interception (Violation of the Second CIPA Clause). ..... 10

b. The R&R Correctly Found That Plaintiffs Sufficiently Alleged NDR's Knowledge and Intent. ..... 11

i. The Amended Complaint Alleges Knowledge and Intent as Required Under Section 631(a)'s Fourth Clause. ..... 11

ii. California Courts Uniformly Hold That Intentional Installation and Configuration of Advertising Tracking Technology Meets the Knowledge Requirement Under CIPA. ..... 12

iii. NDR's Argument That Plaintiffs Must Expressly Plead a Formal Agreement with the Advertisers Is Unsupported by Law. ..... 14

iv. The R&R Correctly Declined to Apply the Rule of Lenity to the Knowledge Requirement. ..... 16

V. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Cases**

*Camm v. Reach Fin., LLC*,
2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ............ 9, 11, 12

*Cobbs v. PetMed Express, Inc.*,
824 F. Supp. 3d 1257 (S.D. Fla. 2026) ............ 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............ 12, 17

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ............ 7, 8

*DeMarco v. DNVB, Inc.*,
2026 WL 203742 (S.D.N.Y. 2026) ............ 3

*Doe v. Eating Recovery Center, LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ............ 16

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (D. Haw. 2026) ............ 13

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ............ 12, 15

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ............ 7, 8

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ............ 16

*Gliksman v. Healthline Media, LLC*,
No. 2:25-CV-07895 (C.D. Cal. 2026) ............ 13

*Goldstein v. Rumble, Inc.*,
No. 2:24-CV-08795-MRA-DFM (C.D. Cal. 2025) ............ 7

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ............ 7

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ............ 7

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) .................... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 9

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .................... 13

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................... 8

*Irick v. Capra*,
2024 WL 5039664 (S.D.N.Y. Dec. 9, 2024) .................... 3

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .................... 12, 14

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (N.D. Cal. 2026) .................... 7, 8

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .................... 7

*Licea v. Finish Line, Inc.*,
No. 23STCV22390 (Cal. Super. Ct. July 10, 2024) .................... 13

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .................... 7

*McCarter v. City of New York*,
2026 WL 866376 (S.D.N.Y. 2026) .................... 3

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .................... 16

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*,
341 F. Supp. 3d 334 (S.D.N.Y. 2018) .................... 3

*Ortiz v. Deckers Outdoor Corp.*,
2026 WL 1243675 (N.D. Cal. May 6, 2026) .................... 4

*R.C. v. Sussex Publishers, LLC*,
2026 WL 266450 (N.D. Cal. 2026) .................... 17

*Riganian v. LiveRamp Holdings, Inc.*,
791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) ........ 5

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025)........ 13, 17

*Semien v. PubMatic, Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........ 7, 8

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 7

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ........ 1, 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 13

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)........ 12, 15

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024)........ 12, 15

*United States v. Scott*,
990 F.3d 94 (2d Cir. 2021)........ 16

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 964 (C.D. Cal. 2023) ........ 9

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)........ 13, 15

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)........ 7

**Statutes**

28 U.S.C. § 636(b)(1) ........ 3
Cal. Penal Code § 631(a) ........ 1, 15, 16

**Rules**

Fed. R. Civ. P. 72(b) ........ 3

# I. INTRODUCTION

The Report and Recommendation ("R&R") correctly analyzed each element of Plaintiffs' claims under the California Invasion of Privacy Act and recommended denial of Defendant National Debt Relief's ("NDR") motion to dismiss in its entirety. NDR's objections do not identify any error in the R&R's analysis. Rather, they rehash arguments already considered and rejected, mischaracterize the Amended Complaint's detailed allegations, and ask this Court to impose pleading requirements that California courts have consistently rejected in the CIPA context. The R&R's analysis correctly evaluated the Amended Complaint's allegations of the contemporaneous actions of the Advertisers to learn the contents of Plaintiffs' communications, applied the correct standards for reviewing the allegations at this stage of the matter, appreciated the role the Advertisers play once NDR aided them to learn the contents of its users' communications, and accurately analyzed the allegations concerning NDR's knowledge and intent within the context of CIPA. Accordingly, The Court should overrule NDR's objections and adopt the R&R.

# II. BACKGROUND

The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630-38 ("CIPA") and was enacted to protect the privacy of Californians. CIPA § 630. CIPA was enacted to "better address new devices and techniques that create a serious threat to the free exercise of personal liberties." *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-6709, 2026 WL 183852, at *3 (N.D. Cal. Jan. 23, 2026) (internal quotation marks omitted) (quoting CIPA § 630). California courts have "broadly applie[d] the statute to new technologies." *Id.*

Cal. Penal Code § 631(a) provides that any person who commits one of the following four acts is liable under the statute:

1. "who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically,

inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or . . ."

2. "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or . . ."

3. "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or . . ."

4. "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . ."

Plaintiffs allege NDR committed two separate but interrelated violations. First, NDR violated the fourth clause by deliberately installing the Advertisers'[1] Trackers on its Website[2] so that they (in violation of the second clause) would intercept and learn the contents of the Plaintiffs' communications while they were in transit and while they were being sent from a place within California (specifically, Hopland and Fresno, California). AC at ¶ 3, 5 7-8, 12-13, 33-102, 112-124. Among other things, the Advertisers learned that Plaintiffs were in debt, the amount of their debt, and personal information like their name, phone number, and email address. *Id.* Second, NDR aided and employed the Advertisers to violate the third clause by using that wrongfully-obtained information to build and supplement profiles on Plaintiffs and to fuel their behavioral advertising businesses. *Id*. ¶¶ 33-95. NDR did all this for the specific purpose of causing the Advertisers to extract communications and interactions to serve targeted advertising to its past, current, and

[1] These Advertisers include some of the largest behavioral advertising companies in the world – Meta, Google, X, TikTok, Microsoft, The Trade Desk, and Claritas. *Id*. ¶¶ 33-95.
[2] https://www.nationaldebtrelief.com

potential customers, including Plaintiffs and the members of the proposed Class. *Id.* ¶ 5, 8, 33-95,115, 122.

## III. LEGAL STANDARD

A district court may accept, reject, or modify a Magistrate Judge's report and recommendation, and reviews de novo only those portions as to which a party makes a timely and specific objection that reasonably alerts the Court to the true ground for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *McCarter v. City of New York*, No. 21-cv-06321, 2026 WL 866376, at *5 (S.D.N.Y. 2026). Portions of the R&R not properly objected to, as well as objections that are conclusory, generalized, perfunctory, or merely reiterate original arguments already presented, are reviewed only for clear error. *Irick v. Capra*, No. 1:23-cv-09123 (JLR) (JLC), 2024 WL 5039664, at *2 (S.D.N.Y. Dec. 9, 2024). Rule 72 is designed to promote efficiency, not to allow parties to relitigate every argument which it presented to the Magistrate Judge. *Id.* (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018)). Other portions of the R&R, to which no specific objection is made, may be adopted as long as they are not clearly erroneous or contrary to law. *Id.* Arguments or factual assertions raised for the first time in objections are not proper objections and should not be considered where they could have been raised before the Magistrate Judge. *DeMarco v. DNVB, Inc.*, No. 23-cv-06319, 2026 WL 203742, at *4 (S.D.N.Y. 2026).

## IV. ARGUMENT

### a. The R&R Correctly Found That Plaintiffs Sufficiently Alleged the Advertisers Read and Learned the Contents of Plaintiffs' Communications While in Transit and Being Sent from Places in California.

#### i. The Amended Complaint Sufficiently Alleges Contemporaneity.

NDR's first objection is that the R&R improperly excused Plaintiffs from alleging that any Advertiser attempted to read or learn the contents of Plaintiffs' communications "while in transit

. . . or. . . being sent from [California].” CIPA § 631(a). This mischaracterizes both the AC and the R&R’s analysis.

The AC provides detailed, Advertiser-by-Advertiser allegations demonstrating that the Advertisers’ interceptions and learning of the contents of Plaintiffs’ communications occurs systematically as the user inputs information into the Website—in real time, as the webpage loads, and as the communications are in transit and being sent from Plaintiffs’ devices in California. The AC specifically describes, for each Advertiser, that each tracking technology systematically intercepted and learned communications on the Website as the user progressed through the series of webpages hosting the multi-step debt relief application, with the interceptions occurring as each webpage loads on users’ screens. AC ¶¶ 29-32, 33-95. These are far from bare conclusions. Instead, they are detailed allegations supported by forensic screenshots (Figures 9-13) that demonstrate, with split-screens, how, as the communications are *actually occurring* – in other words, in transit and being sent -- the Advertisers intercept, digest, and even categorize the content. *See* AC ¶¶ 39-40 and Figures 9-10 (Meta); ¶ 56 and Figures 11-12 (Google); ¶¶ 66, 71-72 (X/Twitter); ¶¶ 75-76 (Microsoft); ¶¶ 78-80 and Figure 13 (TikTok); ¶¶ 84-85 (The Trade Desk); ¶¶ 91-93 (Claritas). Unlike *Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675 at *3 (N.D. Cal. May 6, 2026), the AC alleges specific, simultaneous interception mechanisms with detailed technical allegations.[3] *See* AC ¶¶ 37, 39-40, 56, 62, 76, 95. Specifically, Figures 9-13 demonstrate

[3] NDR’s reliance on *Ortiz*, 2026 WL 1243675, is misplaced. The *Ortiz* complaint “contain[ed] only conclusory allegations that Deckers’s websites tracked and collected users’ data in real time” and “[a]t most, the complaint describes that when a user takes a certain action, a cookie *might* send information to a third party.” *Id.* at *3 (emphasis added). The *Ortiz* court found the allegations insufficient because they did “not indicate whether the cookie sends this information immediately or contemporaneously with the information’s creation.” *Id.* Here, the AC goes far beyond *Ortiz*: it provides forensic screenshots of real-time network traffic, details each Advertiser’s code and how it operates on the Website, and alleges that the Advertisers intercept and learn the contents of communications “simultaneously” with the user’s interactions. *See* AC ¶¶ 37, 39-40, 56, 62, 76,

the instantaneous parsing and learning of information as it is in transit and being sent from the users' browser. These allegations satisfy the "in-transit" requirement at the pleading stage. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025).

Contrary to NDR's characterizations, these allegations are not conclusory. For example, Figure 11 demonstrates that the network request is generated in real time as a user completes NDR's application. The Advertiser's technology contemporaneously intercepts the request URL, as well as the user's name, debt amount, email address, and phone number (as denoted in the red block). *Id.* ¶ 56 & Fig. 11. That request is the transmission, and its parameterized content is Google (DoubleClick) parsing the communication as the transmission occurs. *See id.* ¶ 39 n.4. There is no temporal gap – the transmission, interception, reading, and categorization all happens contemporaneously.

With respect to Meta specifically, the AC alleges that "[t]he Meta Pixel operates automatically when the user loads the website to monitor, record, collect, and analyze all of the user's online interactions." AC ¶ 37. "When a user proceeds through NDR's application process . . . Meta learns the contents of such communications including the user's name, phone number, email address, that the user is applying for NDR's debt consolidating services, and the amount of debt the user is seeking to consolidate." AC ¶ 39. NDR's use of the Conversions API further allows Meta to "instantaneously identify" subscribers' Facebook profiles. AC ¶ 47. The R&R correctly found that "[d]rawing reasonable inferences in Plaintiffs' favor, this is an allegation of simultaneous reading or learning." (R&R at 11.)

---

95, Figures 9-13. This is precisely the type of specificity that distinguishes sufficient complaints from those found wanting in *Ortiz*.

For the additional Advertisers, the AC alleges that Google Analytics's code "causes the browser to send the user's IP address . . . simultaneously with the user's communications with NDR and interactions on its Website," AC ¶ 62; that "X surveils users' online activities" and "learns users' full names, emails, . . . and that they are applying for debt consolidation with NDR," AC ¶¶ 66, 72; and that Microsoft's and Claritas's code causes "the browser to send the user's IP address . . . through HTTP requests simultaneously with the user's communications with NDR and interactions on its Website," AC ¶¶ 76, 95. These allegations go far beyond the conclusory, one-sentence allegations in the decisions upon which NDR relies in its Objection.[4]

ii. The R&R Correctly Applied California Law Governing the "In Transit" Requirement.

NDR's central complaint is that the R&R applied a "more lenient pleading standard" than NDR deems appropriate. Obj. at 5-7. However, the R&R correctly recognized that "at the pleading stage, a plaintiff need only allege facts giving rise to a plausible inference that this requirement is met and California courts have been flexible in determining what factual allegations suffice." (R&R at 10.)

It is well-recognized across the CIPA jurisprudence that "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient

[4] In a footnote, the R&R observed that the AC's allegations regarding TikTok and The Trade Desk used less precise phrasing regarding timing. R&R at 16, n 8. However, contrary to NDR's characterization, the R&R did not recommend dismissing those distinct allegations. Instead, the R&R recommended denial of NDR's motion in its entirety. *Id.* at 19. And for good reason, although the allegations as to those two specific technologies are less detailed than the allegations as to the other technologies, the R&R recognizes that "[i]t is conceivable that Plaintiffs could bolster these allegations through an amendment." *Id.* at 16, n. 8. Indeed, all of the AdTech Technologies operate in a substantively similar fashion, as can reasonably be inferred from the AC, and had the R&R recommended partial dismissal of those portions of the AC, Plaintiffs easily could amend to add additional clarification that the interceptions by X (TikTok) and The Trade Desk occur in materially the same manner – contemporaneously as the user's communications are being sent and transmitted to the Website.

factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)); *see also Jones v. Skullcandy, Inc.*, No. 25-CV-4295, 2026 WL 699819 (N.D. Cal. 2026); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025); *Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588-SI, 2026 WL 206855, at *7 (N.D. Cal. Jan. 27, 2026); and *Semien v. PubMatic, Inc.*, No. 25-CV-3164-SI, 2026 WL 216333, at *7-8 (N.D. Cal. Jan. 27, 2026).

"On a motion to dismiss, a plaintiff need not prove their theory of interception, but rather must provide fair notice to [d]efendants of when they believe [the defendant] intercepts their communications." *Gray v. Luxottica of Am., Inc.*, No. 8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024). Courts have consistently cautioned that "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023); *accord Goldstein v. Rumble, Inc.*, No. 2:24-CV-08795-MRA-DFM (C.D. Cal. 2025); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862-63 (C.D. Cal. 2024); and *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893-94 (S.D. Cal. 2025).

NDR's objection collapses the distinction between statutory construction and pleading standards. It argues that because the R&R accepted *Torres* and *Eating Recovery Center* for their interpretation of Section 631(a), the R&R could not "invoke their posture" to apply a different standard at the pleading stage. (Obj. at 7.) This conflates two different inquiries: the construction of the statute and the level of factual detail the AC must allege to give rise to a plausible inference

that NDR violated the statute. *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (at the motion-to-dismiss stage, "a plaintiff is not expected to prove or even know how and when its communications were captured"); *D'Angelo*, 2023 WL 7006793, at *8 (same); *Cobbs v. PetMed Express, Inc.*, 824 F. Supp. 3d 1257 (S.D. Fla. 2026) (same). NDR's proposition—that a plaintiff must comprehensively plead the precise internal data-processing mechanics of proprietary third-party technology before discovery—has been consistently rejected by California courts applying California law. *See Skullcandy*, 2026 WL 699819, at *17 (S.D. Cal. Mar. 12, 2026) (finding detailed descriptions of how tracking technology collects data in real time sufficient at the motion-to-dismiss stage, noting that "a true factual analysis of that issue was proper for summary judgment—not a motion to dismiss") (citing *Semien*, 2026 WL 216333, at *7-8); *Riganian* 791 F. Supp. 3d at 1092; *Krzyzek*, 2026 WL 206855, at *7). Requiring more "would require the CIPA plaintiff to engage in a one-sided guessing game" *Esparza*, 2024 WL 559241, at *3.

iii. The R&R Correctly Treated the Operation of the Advertiser's Tracking Technology on NDR's Website as Conduct by the Advertisers.

NDR makes a confusing argument that because the Advertisers' tracking technologies are deployed on its Website and operate automatically, the Advertisers themselves did not contemporaneously read or learn the content of Plaintiffs' communications. Obj. at 7-8. This argument should be rejected because it was never raised in NDR's motion. *See Irick*, 2024 WL 5039664, at *2 ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.") Regardless, it fails because it is completely contrary to the allegations in the AC.

The facts related to this argument are straightforward and easy to digest. NDR deployed the Advertisers' tracking technologies on its Website. AC ¶¶ 96-97, 29-32. Each tracking

technology is designed by the Advertisers to harvest information and transmit it directly to the Advertisers' servers. The Meta Pixel, for example, is a string of code that "operates from within Defendant's website code and forces the subscriber's browser to share information with Meta." AC ¶ 43. When a user proceeds through NDR's application process, the *Meta* Pixel transmits the user's communications *to Meta*—not to NDR, and with no continued involvement by NDR, other than having initially installed the Pixel on its Website. AC ¶¶ 39-40. The same is true of each Advertiser: NDR installed and configured the code, but the code then interacts as designed by the Advertisers to intercept and transmit content between the user's browser and the Advertiser. AC ¶¶ 54-57, 68-95.

NDR argues that because a website operator physically installs tracking code, the third-party advertising company that designed, controls, communicates with, and benefits from that code plays no role in what the code does. That is flatly contrary to the AC's allegation and established law (as well as a basic understanding of computer code and the surveillance technology that fuels behavioral advertising). California courts routinely find that AdTech companies read and learn the contents of communications precisely *through* the operation of their code that the website operator installs on their behalf. *See, e.g., Camm v. Reach Fin., LLC*, No. 25-CV-1921, 2026 WL 861670, at *8 (S.D.N.Y. Mar. 30, 2026) (finding that "many federal district courts in California applying CIPA have found that the unauthorized interception and transmission of website users' information by third-party tracking tools . . . qualify as underlying violations of Section 631(a)"; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 964, 977 (C.D. Cal. 2023)); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607-08 (9th Cir. 2020). The real-time processing—the code's interception of communications and the Advertisers' receiving and analyzing of the

intercepted data—is the Advertisers' conduct, facilitated by NDR's code installation. NDR's attempt to sever the two is incompatible with the AC's allegations, the statute, and the technology.

iv. The AC's Allegations Regarding the Advertisers' Downstream Data Use (Violation of the Third CIPA Clause) Do Not "Negate" the Separate Allegations of Contemporaneous Interception (Violation of the Second CIPA Clause).

NDR contends that the R&R "disregarded allegations that affirmatively negate contemporaneity" (Obj. at 8-9.), pointing to language in the AC alleging that Advertisers used the wrongfully intercepted content downstream to build and supplement profiles on Plaintiffs and to fuel their behavioral advertising businesses. Specifically, NDR points to the two following allegations: (a) "After gathering such information, Meta employs innovative user categorizing systems to understand and predict how such individuals will engage with content in the future (i.e., user profiling)." (AC ¶ 33), and (b) after Google intercepts, learns and categorizes the content of communications in real time, it "then processes the data and adds it to categorized datasets, forming the basis for the targeted advertising that Google sells to its marketing and advertising customers." AC ¶ 54.

NDR conflates two distinct violations of CIPA. As summarized in Section II, the AC alleges that NDR aided and employed the Advertisers to violate CIPA in two ways. First, NDR aided and employed the Advertisers to read and learn the contents of Plaintiffs' communications *while those communications are in transit* (a violation of the second clause). Second, NDR aided and employed the Advertisers to *subsequently use* the information obtained through those interceptions *downstream* to fuel behavioral advertising (a violation of the third clause). AC ¶¶ 33-95, 134-43. Alleging that NDR aided and employed Advertisers to violate the third clause in no way "negates" the separate allegations that NDR aided and employed the Advertisers to violate

the second clause. One does not negate the other; they are sequential steps, and distinct CIPA violations with distinct allegations in the AC.

**b. The R&R Correctly Found That Plaintiffs Sufficiently Alleged NDR's Knowledge and Intent.**

i. The Amended Complaint Alleges Knowledge and Intent as Required Under Section 631(a)'s Fourth Clause.

To state a claim under Section 631(a)'s fourth clause, Plaintiffs must allege that NDR "knew about [the Advertisers'] unlawful conduct" and "acted with the intent of aiding [them] in the unauthorized collection and transmission of Plaintiffs' sensitive personal information." *Camm*, 2026 WL 861670, at *9. The R&R correctly found that the AC satisfies this standard. (R&R at 17-19.)

The AC alleges that the Advertisers' tracking technologies are "not necessary for the Website's functions," that they "do not appear on a website by happenstance," and that NDR "obtain[ed] the necessary code and implement[ed] such tracking technology on its website." AC ¶¶ 96-97. Drawing reasonable inferences in Plaintiffs' favor, these allegations establish that NDR intentionally installed the tracking technologies on its Website. (R&R at 17.)

The R&R recognizes that the AC goes further. (R&R at 18.) The AC alleges that "NDR specified the types of information it desired the Advertisers to extract from its Website . . . including communications regarding their amount of debt." AC ¶ 99. In exchange, the Advertisers' learning the contents of these communications enabled them to "provide NDR with benefits associated with their online web presence," indicating that "NDR's aiding the Advertisers' interception of users' sensitive personal and financial information was and is deliberate." AC ¶ 98. These "data-driven advertising practices" benefited NDR by "(1) enhancing the effectiveness of the advertisements NDR places on the Advertisers' ad networks and/or (2) by receiving analysis

from the Advertisers concerning how users interact with its Website based on the data Advertisers' technology collects while operating on the Website." AC ¶ 8. The R&R correctly concluded that "[t]hese allegations support a reasonable inference that NDR knew of and intended for the Advertisers to perform the acts that violated CIPA." (R&R at 18.)

ii. California Courts Uniformly Hold That Intentional Installation and Configuration of Advertising Tracking Technology Meets the Knowledge Requirement Under CIPA.

NDR argues that intentional installation of the Advertiser's technology and receipt of marketing benefits "do not establish knowledge or intent." (Obj. at 9-10.) This argument is squarely foreclosed by a uniform body of California law. Courts consistently hold that allegations that a defendant intentionally installed tracking technology on its website to monitor, track, capture, and disclose users' online communications demonstrate sufficient knowledge and intent for derivative liability under Section 631(a). *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) ("[I]t is plausible to infer from [defendant's] alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept personally identifiable information and that [defendant] had the purpose of employing Meta and Attentive to do so."); *Camm*, 2026 WL 861670, at *9 (finding that allegations defendant "configure[d] the Tracking Tools on [its] website so that [the third-party advertiser] could capture user-specific information" satisfied the knowledge and intent requirements); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954-55 (N.D. Cal. 2023); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-4651, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839-40 (E.D. Cal. 2025); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023); *Walsh v. Dollar*

*Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025); *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1211 (D. Haw. 2026); *Gliksman v. Healthline Media, LLC*, No. 2:25-CV-07895 (C.D. Cal. 2026); *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *6 (C.D. Cal. July 31, 2024).

The reason for this consensus is straightforward: advertising tracking technologies like the Meta Pixel, Google Analytics, and the other AdTech NDR are purpose-driven instruments deployed in furtherance of achieving the single goal of surveilling users' communications to better serve them with advertising. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 997 (N.D. Cal. 2024) (finding the Pixel is "primarily or exclusively designed" for eavesdropping, is "invisible," and "transmits internet users' communications in real time directly to Meta"). These technologies differ in material ways from those at issue in *YETI Coolers* and *Finish Line*, where the technology was focused on a substantive business purpose[5] of those websites and where the technology's alleged use of data was separate from that purpose, unknown to the website operator, and did not benefit the website operator.[6] *See Rusow v. Skinspirit Essential LLC*, No. 24-CV-09317-CRB, 2025 WL 4657637, at *11 (N.D. Cal. Oct. 15, 2025) (distinguishing *YETI* and *Finish*

[5] In *YETI Coolers*, the defendant used Adyen, a third-party payment processor, to handle online purchases and provide fraud prevention services. 754 F. Supp. 3d at 938. In *Finish Line*, the defendant hired Genesys Cloud Services to provide live chat functionality for customer support on its website. *Licea v. Finish Line, Inc.*, No. 23STCV22390 at 2 (Cal. Super. Ct. July 10, 2024).

[6] The *YETI Coolers* court found the plaintiff failed to allege YETI had knowledge and intent because it could not "plausibly infer from Defendant's use of Adyen's fraud prevention services alone that Defendant *knew* that Adyen's services were based on its allegedly illegal interception and storing of financial information[.]" 754 F. Supp. 3d at 943. The *Finish Line* court found the complaint failed to allege how Finish Line "knew, let alone facilitated, the purported misconduct" or "intended to aid in Genesys' purported wrongful conduct." *Finish Line, Inc.*, No. 23STCV22390 at 5-6. In both cases (in contrast to the facts alleged here) the third party's data collection served a functional operational purpose (payment processing and fraud prevention; customer service chat), and the alleged CIPA violation arose from the third party's *secondary* use of that data—a use the website operator neither contracted for nor benefited from.

*Line*: "[E]ach [case] dismissed a CIPA aiding claim because the defendants did not know of the underlying conduct that formed the violation"). A website operator who obtains, installs, configures, and deploys AdTech—like the AdTech NDR deployed—*necessarily* knows what they do because intercepting and transmitting records of user interactions to the Advertiser is the *entire purpose of installing them*. *See James*, 701 F. Supp. 3d at 955 ("tracking technology cannot exist on a website without the permission of the website operator").

iii. NDR's Argument That Plaintiffs Must Expressly Plead a Formal Agreement with the Advertisers Is Unsupported by Law.

NDR insists that Plaintiffs cannot state a claim because they "do not allege NDR contracted with, paid, or communicated with Advertisers about the tracking technologies." (Obj. at 10-11.) NDR focuses on Plaintiffs' characterization of NDR's installation of the AdTech as "unilateral" to argue that the AC fails to allege the "concerted undertaking" that Section 631(a)'s fourth clause purportedly requires. This misstates the AC and misconstrues the R&R as not addressing the issue.

NDR's *installing* the code was a unilateral act—meaning that the decision to install the AdTech Trackers on the Website was NDR's alone. AC ¶¶ 96-100. That is a far cry from alleging that NDR had no connection to the Advertisers whatsoever. To the contrary, the AC alleges that NDR obtained the Advertisers' proprietary code from the Advertisers, AC ¶ 97; configured it to extract specific types of sensitive communications and identifying information (including users' debt amounts), AC ¶¶ 42, 60, 71, 75, 80, 84, 91, 99; and in return NDR received benefits including enhanced advertising effectiveness and user analytics, AC ¶¶ 5, 8, 98. The Advertisers, for their part, created the underlying code, contemporaneously received, read, and analyzed Plaintiffs' data through the operation of that code, and used the intercepted information to fuel behavioral advertising that benefited both themselves and NDR. AC ¶¶ 33-95. This is not a one-sided arrangement where NDR is doing the equivalent of borrowing a neighbor's lawn mower without

their permission. This is a symbiotic, ongoing relationship. As summarized in paragraph 5 of the AC:

> Both NDR and the Advertisers obtain a pecuniary benefit from NDR's installation of such tracking technologies. NDR benefits from enhanced analytics and improved advertising and marketing capabilities provided by the Advertisers; the Advertisers benefit by improving their profiling, tracking and targeted advertising products by incorporating the data received from NDR. For both, such benefits lead to increased profits. NDR purposefully traded its users' sensitive personal and financial information in exchange for these benefits.

Nor are express allegations of a formal contract required to state a claim under § 631.[7] *See Cousin*, 681 F. Supp. 3d at 1130 ("Plaintiffs [] allege throughout their pleading that Sharp intentionally procured Meta Pixel from Meta and installed it on their website... [which] is sufficient to plead that Sharp either aided, agreed, employed, or conspired with Meta in the alleged interception of their information and data without their consent."); *Walsh*, 2025 WL 2939229, at *17; *St. Aubin*, 2024 WL 4369675, at *8; *Toy*, 2024 WL 1701263, at *1, 3; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d at 839-40.

NDR argues the R&R did not address this issue, but this is not true: the R&R fully addressed this issue when it stated the two-element test for finding the requisite intent for violating CIPA. R&R at 6-7. Appropriately, NDR cites no authority for the proposition that Section 631(a) requires express allegations of a formal contract, direct payment, or bilateral negotiation between the website operator and the third-party Advertiser. As the R&R makes clear, that is because no such requirement exists. *See id*. The statute imposes liability on one who "aids, agrees with, employs, or conspires with" another to violate CIPA. Cal. Penal Code § 631(a). The verb

[7] Although the AC does not expressly allege that NDR obtained the advertising technology in a legal manner consistent with each Advertiser's terms of service, it can be reasonably inferred from the allegations that it did so, rather than somehow illegally obtaining pirated versions of the technology.

"employs" naturally encompasses deploying a tool created and controlled by another—which is precisely what NDR did when it installed and configured the Advertisers' tracking code on its Website.

iv. The R&R Correctly Declined to Apply the Rule of Lenity to the Knowledge Requirement.

NDR's final sub-objection on this point is that the R&R failed to apply California's rule of lenity to Section 631(a)'s knowledge and intent requirement. (Obj. at 11-12.) NDR argues that because CIPA is housed in California's Penal Code, any ambiguity in the scienter element must be resolved in its favor.[8] This argument fails because there is no ambiguity to resolve.

The R&R declined to reach lenity because it adopted NDR's own construction of the contemporaneity requirement—rendering lenity unnecessary on that point. (R&R at 10 n.5.) As to knowledge and intent, there exists no "grievous ambiguity," *United States v. Scott*, 990 F.3d 94, 121 (2d Cir. 2021): the statute requires that the defendant "aid[], agree[] with, employ[], or conspire[] with" the third party "to unlawfully do, or permit, or cause to be done" the prohibited acts. Cal. Penal Code § 631(a). The overwhelming majority have denied motions to dismiss based on allegations materially identical to those here. *See supra* Section IV.A.ii; *see also Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV-24-2603-GW-SSCx, 2024 WL 4471772, at *9 (C.D. Cal. Oct. 4, 2024) (declining to apply rule of lenity to Section 631(a) allegations).

---

[8] NDR's solitary authority for its lenity argument—*Doe v. Eating Recovery Center, LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025)—stands virtually alone in applying lenity to dismiss a Section 631(a) claim in the advertising-technology context, and even *ERC* applied lenity only to the "while in transit" element. Critically, *ERC* was decided on a full record at summary judgment. There is no reason to apply the rule of lenity to the knowledge requirement because there is no ambiguity or uncertainty as to its meaning. *See, e.g., Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025) ("the rule of lenity has little force in this context" because CIPA is not "egregiously ambiguous or uncertain" and "[i]ts language, structure, history, and purpose are sufficiently clear").

Further, NDR's lenity argument proposes no alternative meaning or interpretation. *R.C. v. Sussex Publishers, LLC*, No. 24-CV-2609-JSC, 2026 WL 266450 (N.D. Cal. 2026). NDR asks the Court to apply a different, heightened knowledge requirement in which the act must be intentional, *and* NDR's purpose must also be specifically to violate the law. *See* Obj. at 11 (insisting liability should not be extended to website operators who installed the AdTech with a "desire for analytics and better marketing"). The requisite intent under Section 631(a), however, is the intent to install the tracking technology with knowledge that it would function as designed (i.e., to permit third parties to intercept users' communications); not knowledge that such conduct constitutes a CIPA violation. *See Rusow v. Skinspirit Essential LLC*, No. 24-CV-09317-CRB, 2025 WL 4657637, at *11 (N.D. Cal. Oct. 15, 2025) ("[T]he Court reads section 631 as only requiring intentional conduct, *not knowledge of illegality*." (emphasis added)) *Cousin*, 681 F. Supp. 3d at 1130.

## V. CONCLUSION

For the foregoing reasons, this Court should overrule NDR's objections and adopt the R&R in its entirety. Should the Court nonetheless find any pleading deficiency in the wording of the AC, Plaintiffs respectfully request leave to amend to cure any such deficiency.

Dated: August 10, 2026

Respectfully submitted,

*/s/ Samuel R. Jackson*
Samuel R. Jackson (SBN 5332325)
Hank Bates (*pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Tel: (501) 312-8500
Fax: (501) 312-8505
Email: sjackson@cbplaw.com
Email: hbates@cbplaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 10, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

*/s/ Samuel R. Jackson*
Samuel R. Jackson