USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 9/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORETTA JEAN BERNARDI, *individually and on behalf of all others similarly situated, et al.*,

Plaintiffs,

-v-

NATIONAL DEBT RELIEF, LLC,

Defendant.

1:25-cv-6334-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Defendant National Debt Relief, LLC ("NDR") solicits online applications for its debt relief services through its website. To complete an application, NDR requires applicants to submit their name, phone number, email address, physical address, date of birth, and social security number. Plaintiffs allege that NDR installed tracking technologies on its website that enabled seven third-party advertisers (the "Advertisers") to learn and use Plaintiffs' sensitive personal and financial information without their consent. Plaintiffs filed this action asserting a single claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a) ("Section 631(a)").

NDR moved to dismiss, arguing that Plaintiffs did not adequately plead that the Advertisers read or learned their information while it was in transit to NDR, as the statute requires. And even if the allegations met that requirement, NDR argues, Plaintiffs failed to plead that NDR had the knowledge and intent necessary to hold it liable for the Advertisers' violations. On July 16, 2026, Magistrate Judge Henry J. Ricardo issued a report and recommendation ("R&R") recommending that the Court deny NDR's motion to dismiss. NDR timely objected.

Because Plaintiffs adequately pleaded that Meta learned the contents of Plaintiffs' communications while they were in transit to NDR, and that NDR installed Meta's tracking

technology knowing that it would do so and in order to benefit from that surveillance, the Amended Complaint states a claim under Section 631(a).

Although the Court's analysis of NDR's knowledge and intent diverges in part from the R&R's, the Court agrees with Judge Ricardo that the Amended Complaint adequately pleaded that NDR violated the CIPA. Accordingly, NDR's motion to dismiss is DENIED.

## II. BACKGROUND

### A. Facts[1]

Familiarity with the facts of this case is presumed. The reader is referred to the R&R, Dkt. No. 26, for a comprehensive description of the facts and procedural history of this case. A brief summary of the relevant allegations and procedural history is provided here for context.

### B. Procedural History

Plaintiffs filed the operative complaint—the Amended Complaint—on October 6, 2025. *See generally* AC.[2] The Amended Complaint asserts a single claim against NDR for invasion of privacy under Section 631(a). *See generally id.*

On November 10, 2025, Defendant moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), Dkt. No. 18, and filed an accompanying memorandum of law, Dkt. No. 19 ("Mot."). Plaintiffs filed their opposition on December 8, 2025. Dkt. No. 22. The motion was fully briefed on December 22, 2025, when Defendant filed its reply. Dkt. No. 25.

### C. The R&R

Judge Ricardo issued the R&R on July 16, 2026, recommending that the Court deny Defendant's motion to dismiss. *See generally* R&R. Judge Ricardo concluded that Plaintiffs

[1] The facts herein are taken from the Amended Complaint, Dkt. No. 6 ("AC"), and are accepted as true for the purposes of this motion. *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Unless otherwise indicated, this opinion uses acronyms and abbreviations as they were used in the R&R.

adequately pleaded both an underlying violation of Section 631(a) by the Advertisers and NDR's derivative liability for that violation.

Judge Ricardo began his analysis by articulating the requirements to state a claim that NDR violated Section 631(a). He explained that Plaintiffs first "must allege that the Advertisers 'engaged in conduct falling under one of the first three prongs of the statute.'" *Id.* at 6 (quoting *Cody v. Lacoste USA, Inc.*, No. 23-CV-235 (SSS), 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024)). Second, they must plead a violation of the fourth clause by alleging that "NDR 'knew about [the Advertisers'] unlawful conduct' and 'acted with the intent of aiding [them] in the unauthorized collection and transmission of Plaintiffs' sensitive personal information.'" R&R at 6 (quoting *Camm v. Reach Fin., LLC*, No. 25-CV-1921 (KPF), 2026 WL 861670, at *9 (S.D.N.Y. Mar. 30, 2026)).

Judge Ricardo concluded that Plaintiffs adequately pleaded an underlying violation of the second clause of Section 631(a), which reaches one who "reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit . . . or is being sent from, or received from received at any place within [California.]" Cal. Penal Code § 631(a). He concluded that the Amended Complaint alleges that Meta "simultaneously reads or learns the contents of consumers' communications with NDR." R&R at 11. Judge Ricardo also concluded that the Amended Complaint alleges that Google, Microsoft, X, and Claritas intercept Plaintiffs' communications while they were in transit, *id.* at 14–16, which "some California federal courts have found . . . sufficient to satisfy the 'in transit' requirement at the pleading stage[,]" *id.* at 14 (citing *Mata v. Zillow Grp., Inc.*, No. 24-CV-1095 (DMS), 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024)). Conversely, Judge Ricardo concluded that the Amended Complaint's allegations with respect to TikTok and the Trade Desk were insufficient to satisfy the "while in transit" requirement of Section 631(a)'s second clause. R&R at 16 n.8.

Judge Ricardo also concluded that Plaintiffs plausibly pleaded that NDR possessed the

requisite knowledge and intent in relation to the Advertisers' underlying violations of Section 631(a). *Id.* at 16–19. He determined that the Amended Complaint alleges that "NDR intentionally installed the tracking technologies on its Website[,]" *id.* at 17, and that it "goes even further, alleging that NDR directly guided and benefited from the Advertisers' use of their tracking tools in violation of CIPA[,]" *id.* Judge Ricardo concluded that "[t]hese allegations support a reasonable inference that NDR knew of and intended for the Advertisers to perform the acts that violated CIPA." *Id.* at 18. Because he found that Plaintiffs allege both underlying violations of the second clause of Section 631(a) and NDR's knowledge and intent in relation to the Advertisers' underlying violations, Judge Ricardo recommended that the Court deny NDR's motion to dismiss.

**D. Objections to the R&R**

Defendant filed a timely objection to the R&R on July 30, 2026. Dkt. No. 27 ("Objections" or "Obj.").

First, NDR objects to Judge Ricardo's conclusion that Plaintiffs adequately pleaded that Meta, Google, X, Microsoft and Claritas violated the second clause of Section 631(a). Obj. at 4–8. NDR argues that the Amended Complaint does not allege facts showing that the Advertisers read or attempted to read Plaintiffs' communications while they were in transit, and that the R&R improperly found "conclusory allegations" of contemporaneous reading and learning sufficient to state a claim. *Id.* at 5-6. If these conclusory allegations are set aside, argues NDR, Plaintiffs only allege contemporaneous interception, which is not enough to plead a violation of Section 631(a). *Id.* at 6. NDR also argues that the R&R incorrectly treated the operation of NDR's website code as conduct by the Advertisers. *Id.* at 7–8. The allegations in the Amended Complaint, NDR contends, concern "what NDR's Website code does—not . . . anything the [the Advertisers] did, or when." *Id.* at 7. NDR argues that "the automatic operation of code NDR installed on its Website" does not constitute "contemporaneous action by the [Advertisers]." *Id.* And NDR asserts that the R&R

disregarded that the Amended Complaint "pleads facts inconsistent with [contemporaneity]." *Id.* at 8–9. As an example, NDR points to an allegation that "Meta employs its 'innovative user categorizing systems' only '[a]fter gathering such information . . . ." *Id.* at 8 (quoting AC ¶ 33). NDR argues that this allegation "contradict[s]" the conclusion that Meta read or learned Plaintiffs' communications while they were in transit. *Id.*

Next, NDR objects to Judge Ricardo's conclusion that Plaintiffs adequately pleaded NDR's knowledge and intent. *Id.* at 9–12. NDR argues that the R&R "improperly inferred knowledge and intent" from allegations that NDR intentionally installed the tracking technologies, that NDR specified the types of information it desired the Advertisers to extract from its website, and that the Advertisers provided NDR with benefits. *Id.* at 9-10. NDR contends that its installation of tracking technologies on its website does not establish anything "about what NDR knew regarding how, when, or by what means any Advertiser might process intercepted data." *Id.* at 9. NDR asserts that "[i]ntentional installation is not intent to facilitate a crime." *Id.* (citing *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942, 944 (N.D. Cal. 2024)). And, NDR argues, "[g]eneralized allegations that a defendant installed and benefited from widely used advertising technologies do not support an inference of the knowledge required for criminal aiding and abetting." *Id.* at 10 (citing *YETI Coolers*, 754 F. Supp. 3d at 942–43 and *Licea v. Finish Line, Inc.*, No. 23-CV-2239 (SV), (Cal. Super. Ct. July 10, 2024) (Ex. A at 5–6)).

NDR also argues that Plaintiffs do not allege "any . . . interaction between NDR and the Advertisers," and therefore fail to plead the "concerted conduct the statute requires[.]" *Id.* at 11. And NDR contends that the R&R failed to address California's rule of lenity as to its knowledge and intent, which requires "any ambiguity in Section 631(a) . . . be resolved in [Defendant's] favor." *Id.* The R&R's adoption of "the broadest available reading" of the knowledge and intent requirement, asserts NDR, "extends derivative criminal liability to routine installation of code found on nearly

every modern website, based on nothing more than the operator's desire for analytics and better marketing." *Id.*

Plaintiffs did not object to the R&R but filed a brief responding to Defendant's Objections. *See generally* Dkt. No. 29 ("Opp'n"). Plaintiffs argue that the R&R correctly concluded that they sufficiently pleaded that the Advertisers read or learned the contents of Plaintiffs' communications while they were in transit. *Id.* at 3–11. Plaintiffs contend that the Amended Complaint "provides detailed, Advertiser-by-Advertiser allegations demonstrating that the Advertisers' interceptions and learning of the contents of Plaintiffs' communications occurs systematically as the user inputs information into the Website—in real time, as the webpage loads, and as the communications are in transit and being sent from Plaintiffs' devices[.]" *Id.* at 4. Plaintiffs assert that the R&R correctly recognized that "at the pleading stage, a plaintiff need only allege facts giving rise to a plausible inference that [the 'in-transit'] requirement is met and California courts have been flexible in determining what factual allegations suffice." *Id.* at 6 (quoting R&R at 10). Plaintiffs argue that the Court should reject NDR's argument that the operation of the Advertisers' tracking technology on its website does not constitute "conduct by the Advertisers" because NDR failed to raise the argument before Judge Ricardo as required. *Id.* at 8. Even if it had been raised earlier, Plaintiffs assert the argument still fails because "real-time processing—the code's interception of communications and the Advertisers' receiving and analyzing of the intercepted data—is the Advertiser's conduct, facilitated by NDR's code installation." *Id.* at 9–10.

In response to NDR's argument that the R&R "disregarded allegations that affirmatively negate contemporaneity[,]" Obj. at 8–9, Plaintiffs argue that NDR improperly conflates two alleged violations—the allegation that "NDR aided and employed the Advertisers to read and learn the contents of Plaintiffs' communications *while those communications are in transit*" and, separately, that "NDR aided and employed the Advertisers to *subsequently use* the information obtained through these

interceptions *downstream* to fuel behavioral advertising[.]" Opp'n at 10 (emphases in original) (citing AC ¶¶ 33–95, 134–43). Plaintiffs assert that "[o]ne does not negate the other; they are sequential steps, and distinct CIPA violations with distinct allegations in the [Amended Complaint]." *Id.* at 11.

Next, Plaintiffs contend that they adequately pleaded NDR's knowledge and intent with respect to the Advertisers' violations of Section 631(a). *Id.* at 11–17. Plaintiffs argue that the Amended Complaint's allegations that NDR intentionally installed the tracking technologies on its website, specified the types of information it wanted the Advertisers to extract from its users, and benefitted from the tracking of Plaintiffs' communications, "support a reasonable inference that NDR knew of and intended for the Advertisers to perform the acts that violated CIPA." *Id.* at 11–12 (quoting R&R at 18).

Plaintiffs also argue that California courts "uniformly" hold that allegations of intentional installation and configuration of advertising technology meet the pleading standard for Section 631(a)'s knowledge requirement. *Id.* at 12–13 (listing cases). Plaintiffs assert that "advertising tracking technologies like the Meta Pixel, Google Analytics, and the other[s] . . . are purpose-driven instruments deployed in furtherance of achieving the single goal of surveilling users' communications to better serve them with advertising." *Id.* at 13. Therefore, Plaintiffs contend, "[a] website operator who obtains, installs, configures, and deploys [advertising tracking technology]—like the [technology] NDR deployed—*necessarily* knows what they do because intercepting and transmitting records of user interactions to the Advertiser is the *entire purpose of installing them*." *Id* at 14 (emphasis in original).

Plaintiffs assert that NDR's argument that they failed to allege the "concerted undertaking" that Section 631(a) purportedly requires "misstates the [Amended Complaint] and misconstrues the R&R as not addressing the issue." *Id.* at 14. Plaintiffs list allegations in the Amended Complaint that describe the "symbiotic, ongoing relationship" between NDR and the Advertisers and argue

that "express allegations of a formal contract" are not required to state a claim under Section 631(a). *Id.* at 15.

Finally, Plaintiffs argue that NDR's contention that any ambiguity must be resolved in its favor in accordance with California's rule of lenity fails because "there is no ambiguity to resolve." *Id.* at 16. Plaintiffs state that "NDR asks the Court to apply a . . . heightened knowledge requirement in which [an] act must be intentional *and* NDR's purpose must also be specifically to violate the law." *Id.* at 17 (citing Obj. at 11). Plaintiffs respond that "[t]he requisite intent under Section 631(a) . . . is the intent to install the tracking technology with knowledge that it would function as designed (i.e., to permit third parties to intercept users' communications); not knowledge that such conduct constitutes a CIPA violation." *Id.* (citing *Rusow v. Skinspirit Essential LLC*, No. 24-CV-9317 (CRB), 2025 WL 4657637, at *11 (N.D. Cal. Oct. 15, 2025)).

## III. LEGAL STANDARD

### A. Standard of Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). The Court reviews for clear error those parts of the report and recommendation to which no party has properly objected. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1). When a party lodges a proper objection, the Court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Nambiar*, 158 F.4th at 358–59. A proper objection is both timely and specific, meaning it must have "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar*, 158 F.4th at 359 (citation

omitted). "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection." *Id.* (quoting *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)).

"When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Id.* at 361. But objections that are "nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition" warrant only clear-error review. *Id.* (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022)).

Finally, a "proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359; *accord Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (citation omitted)).

**B. Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

**C. Section 631(a)**

CIPA was enacted in 1967 "to protect the right of privacy of the people of [California]."

Cal. Penal Code § 630. The California Legislature acted "because 'the invasion of privacy' resulting from the use of new technology to 'eavesdrop[ ] upon private communications' causes 'a serious threat to the free exercise of personal liberties.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020) (quoting Cal. Penal Code § 630). To mitigate that threat, CIPA bars various acts of eavesdropping upon, intercepting, or recording communications. *See generally* Cal. Penal Code §§ 631–638.55. Although it is a criminal statute, CIPA authorizes civil actions for violations of its provisions. *Id.* § 637.2.

"Section 631(a) prohibits unauthorized third-party interceptions of communications, or aiding efforts thereto." *Rusow*, 2025 WL 4657637, at *8 (citing Cal. Penal Code § 631(a)). Specifically, Section 631(a) imposes liability on any person who:

> "[1] intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument of any internal telephonic communication system, or . . .
>
> [2] willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit . . . or is being sent from, or received at any place within this state; or . . .
>
> [3] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or . . .
>
> [4] aids, agrees with, employs or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]"

Cal. Penal Code § 631(a).

"[T]he California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of [the statute] by giving greater protection to privacy interests.'" *Matera v. Google, Inc.*, No. 15-CV-4062 (LHK), 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). "Giving effect to CIPA's broad statutory language is consistent with the California

Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024).

"Because [S]ection 631(a) concerns third-party interceptions, a party to a communication cannot violate the section except by aiding another's violation." *Rusow*, 2025 WL 4657637, at *8 (citing *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196–97 (N.D. Cal. 2024)). Accordingly, since NDR is a party to the communications Plaintiffs submit to its website, Plaintiffs can hold NDR liable only under the fourth clause of Section 631(a). Plaintiffs must plead that a third party engaged in conduct prohibited by the first, second, or third clause of the statute, and that NDR aided, agreed with, employed, or conspired with that third party to do so. *See YETI Coolers,* 754 F. Supp. 3d at 940. Because a violation of the third clause requires that the information be "obtained through a violation of the first or second clauses of Section 631(a)," *Cody*, 2024 WL 3761288, at *3, and because Plaintiffs do not assert a violation of the first clause, Plaintiffs must allege an underlying violation of the second clause of Section 631(a).

**i. The Second Clause of Section 631(a)**

To plead a violation of the second clause of Section 631(a), Plaintiffs must allege facts giving rise to the inference that a third party "willfully and without the consent of all parties to the communication . . . reads, attempts to read, or to learn the contents or meaning of any . . . communication while the same are in transit . . . or is being sent from, or received from received at any place within [California.]" Cal. Penal Code § 631(a). Here, the question is whether Plaintiffs adequately pleaded that the Advertisers "read[], attempt[ed] to read, or to learn the contents or meanings" of Plaintiffs' communications "while the same [were] in transit." *Id.*

The interpretation of a statutory provision "always 'begins with the plain language of the

statute.'" *Grajales v. Comm'r of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022) (quoting *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 584 (2d Cir. 2007)). Where the words in the statute are not defined, they are "interpreted as taking their ordinary, contemporary, common meaning." *Arriaga v. Mukasey*, 521 F.3d 219, 225 (2d Cir. 2008) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). The Court "must consider the context in which the statutory terms are used, as [the Second Circuit] do[es] not . . .construe statutory phrases in isolation[.]" *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022); *see also Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) ("[W]e consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme.") (internal citations omitted). "If the statutory language is unambiguous, the inquiry ends there." *United States v. Bulloch*, 165 F.4th 676, 683 (2d Cir. 2026) (citing *United States v. Gayle*, 342 F.3d 89, 93 (2d Cir. 2003), *as amended* (Jan. 7, 2004)). "If, however, the terms are ambiguous or unclear, [the Court] may consider legislative history and other tools of statutory construction." *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 181 (2d Cir. 2024) (citing *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998)).

The second clause of Section 631(a) prohibits "read[ing] or attempt[ing] to read, or to learn the contents of any . . . communication . . . while [that communication] is in transit." Cal. Penal Code § 631(a); *see Limas v. Wayfair LLC,* No. 25-CV-11185 (DMG), 2026 WL 2351592, at *4 (C.D. Cal. Aug. 13, 2026) (explaining that Section 631(a) "uses the word 'same' to avoid repetition"). "While" is the key word: it "implies the interception must occur contemporaneous with the sending or receipt of the message." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023); *see While*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-

webster.com/dictionary/while (last accessed September 9, 2026) (defining "while" as "during the time that"). "[O]nce [a communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077 (N.D. Cal. 2015).

Contemporaneous interception is necessary, but it is not sufficient. Under the plain meaning of the text, the contents of the communication must also be read or learned, or attempted to be read or learned, while the communication is "in the process of being sent or received." *Valenzuela v. Super Bright LEDs Inc.*, No. 23-CV-1148 (JAK), 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021)). "Reading or learning the contents of a communication requires some effort at understanding the substantive meaning of the communication." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (internal quotations omitted). Mere interception, without any attempt to read or learn the contents of a communication, therefore falls outside of the scope of the statute. *See Williams v. DDR Media, LLC*, No. 22-CV-3789 (SI), 2023 WL 5352896, at *4–5 (N.D. Cal. Aug. 18, 2023) (dismissing Section 631(a) claim where the third party's software "merely recorded" a communication and did not attempt to read or learn its contents). And a party that intercepts a communication but reads or learns its contents only after it has been received is likewise not liable under the second clause. *See Briskin v. Shopify, Inc.*, No. 21-CV-6269 (PJH), 2026 WL 161441, at *7 (N.D. Cal. Jan. 21, 2026) (dismissing Section 631(a) claim where complaint alleged relevant data was "encrypted and sent to [defendant's] servers, and only read/analyzed after it ha[d] been received by [defendant].").

**ii. The Fourth Clause of Section 631(a)**

The fourth clause of Section 631(a) creates liability for anyone who "aids, agrees with, employs, or conspires with any person . . . to unlawfully do, or permit, or cause to be done any of the acts or things mentioned . . . in this section[.]" Cal. Penal Code § 631(a).

Again, "[a]s with any question of statutory interpretation, we start with the text." *Wassily v. Bondi*, 150 F.4th 100, 106 (2d Cir. 2025). Because the words "aids, agrees with, employs, or conspires with" are not further defined in the statute, the Court considers the ordinary meaning of these terms. Cal. Penal Code § 631(a). Aid means "to provide with what is useful or necessary in achieving an end" or "to give assistance."[3] *Aid*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/aid (last accessed September 1, 2026). The Supreme Court of California has construed "aid" in other statutory contexts to require "overt or affirmative assistance." *People v. Partee*, 8 Cal. 5th 860, 868, 456 P.3d 437 (2020) (quoting *People v. Nuckles,* 56 Cal. 4th 601, 610, 298 P.3d 867 (2013) (finding that although many "kind[s] of help" may qualify as aiding a principal under the statute, the help must be in the nature of "overt or affirmative assistance")). Applying the term's ordinary meaning to a California statute imposing liability on one who "aids" discrimination, a California federal court concluded that "any party that gave support or provided something useful to the discrimination would potentially be liable." *Riddick v. Sony Elecs., Inc.*, No. 24-CV-319 (BAS) (JLB), 2024 WL 3611147, at *6 (S.D. Cal. July 31, 2024). The Court agrees that to "aid" another requires affirmative assistance—refraining from action would not constitute "aiding" under its ordinary definition.

[3] Contrary to Defendant's characterization, the fourth clause of Section 631(a) is not an "aiding and abetting provision." Obj. at 2. "The statute does not necessarily incorporate the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides "aid[.]" *YETI* Coolers, 754 F. Supp. 3d at 942; *see Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *but see Esparza v. UAG Escondido A1 Inc.,* No. 23-CV-102 (DMS) (KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (imputing the aiding and abetting standard from common law as the scienter requirement because none was expressly provided for in the statute). "The plain text of section 631(a) is unambiguous on this issue: the statute requires that a party 'aids, agrees with, employs, or conspires' with another party. It does not require that a party aid and abet." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (internal citations omitted). And "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). It is particularly telling that the California Legislature "invoked the 'aid and abet' phrase in a neighboring section of CIPA, but not in section 631." *Rusow*, 2025 WL 4657637, at *10 (citing Cal. Penal Code § 632.01(a)(2)). "Courts that read section 631's 'aid' provision to mean 'aid and abet' create an interpretive clash with section 632.01's 'aid and abet' provision, rendering the word 'abet' superfluous." *Id.* The Court agrees that "[c]onsidering CIPA as a whole, the word 'abet' in section 632.01 can only have effect if section 631's 'aid' provision does not take the common-law meaning." *Id.* Accordingly, the Court abides by the statute's text and declines to apply a heightened intent standard.

"Agree" means "to unite in thought; to concur in opinion or purpose" or "to exchange promises; to unite in an engagement to do or not do something." *Agree*, BLACK'S LAW DICTIONARY (12th ed. 2024). To "agree with" another, then, does not require a written agreement, only that the parties are united in a common aim. Employ means "to make use of;" "to hire"; "to commission and entrust with the performance of certain acts or functions or with the management of one's affairs." *Employ*, BLACK'S LAW DICTIONARY (12th ed. 2024). In the context of the statute, which reaches one who "employs . . . any person[,]" the Court understands the term to mean "to hire" or "to commission and entrust with the performance of certain acts." "Conspires with" means to engage with another in a conspiracy, *Conspire*, BLACK'S LAW DICTIONARY (12th ed. 2024), and "the essence of conspiracy 'is an agreement to commit an unlawful act.'" *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)).

The plain text of Section 631(a) prohibits a defendant from aiding, agreeing with, employing, or conspiring with a third party "***to*** unlawfully do, or permit, or cause" the third party to act in violation of the statute. Cal. Penal Code § 631(a) (emphasis added). The word "to" indicates "that the defendant must be acting with the third party in order to have the third party perform acts that violate the statute." *YETI Coolers*, 754 F. Supp. 3d at 942. "At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* The fourth clause does not cover a defendant who provides information about communications to a third party without any knowledge that doing so will result in a violation of the statute. Such a defendant "has not aided, agreed with, or employed the third party to perform acts that violate the . . . statute." *Id.* at 943.

While the defendant must have knowledge of the conduct that violates Section 631(a), the statute does not require that the defendant know that the third party's conduct is unlawful. *See Rusow*, 2025 WL 4657637, at *11 ("[T]he Court reads section 631 as only requiring intentional

conduct, not knowledge of illegality."). As the *Rusow* court explained, cases dismissing derivative CIPA claims for want of knowledge and intent "dismissed a CIPA aiding claim because the defendants did not know of the underlying conduct that formed the violation, not because they did not know of the underlying conduct's illegality." *Id.* (analyzing *YETI Coolers*, 754 F. Supp. 3d at 942–43; *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); and *Licea*, slip op. at 5–6). "The knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." *Bryan v. United States*, 524 U.S. 184, 192 (1998).

## IV. DISCUSSION

The Court treats Defendant's Objections as sufficiently specific to merit *de novo* review. Because Plaintiffs have adequately pleaded that Meta read or learned the contents of their communications while those communications were in transit, and that NDR aided Meta in doing so with the requisite knowledge and intent, Defendant's motion to dismiss is denied.

### A. Plaintiffs Adequately Pleaded an Underlying Violation of Section 631(a) by An Advertiser

Judge Ricardo correctly concluded that the Amended Complaint adequately pleaded that Meta read or learned the content of user communications while they were in transit to NDR, in violation of the second clause of Section 631(a).

As Judge Ricardo identified, the Amended Complaint contains factual allegations that Meta learned the contents of Plaintiffs' communications while they were submitted to NDR rather than after NDR received them. The Amended Complaint alleges that "Meta learns the contents" of a user's communication "[w]hen [the] user proceeds through NDR's application process"—that is, at the moment the data is transmitted to NDR, not at some later point after the data has been stored on NDR's servers. AC ¶ 39; *see also id.* ¶ 35 ("The Meta Pixel *monitors* the website's users *as they interact* with the website[.]"); *id.* ¶ 37 ("The Meta Pixel operates automatically *when* the user loads the website to *monitor, record, collect, and analyze* all of the user's online interactions."); *id.* ¶ 40 ("*[w]hen*

Meta intercepts such user communications to NDR, the Pixel transmits unique identifiers to Meta that identify the user . . . and *indicat[e] that the user is a person interested in debt relief services.*"). These allegations support an inference that Meta does not merely store the contents of a user's communications, but instead "learns" in real time, "the user's name, phone number, email address, that the user is applying for NDR's debt consolidating services, and the amount of debt the user is seeking to consolidate." *Id.* ¶ 39. Learning the amount of debt a user is seeking to consolidate requires "some effort at understanding the substantive meaning" of what the user communicated to NDR, *Eating Recovery Ctr.,* 806 F. Supp. 3d at 1117, and the Amended Complaint alleges that this understanding is reached as the communication is intercepted.

The Amended Complaint also alleges how the interception is accomplished—through the Meta Pixel which "operates from within Defendant's website code and forces the subscriber's browser to share information with Meta." AC ¶ 43. The Amended Complaint alleges that the "transmitting [of] information from the user's browser" "occurs in the background of the webpage operations and out of sight from the user," *id.* ¶ 39 n.4. These allegations are bolstered by screenshots showing the simultaneous operation of the Meta Pixel on NDR's website. *Id.*, Figures 9 and 10. Taken together, the allegations in the Amended Complaint describe more than "real time" interception: they describe the Meta Pixel's function on the NDR's website, the information about users that is conveyed to Meta, and when Meta learns it—namely, while the data is being transmitted. These allegations are enough to make contemporaneous reading and learning of Plaintiffs' communications plausible. *See Lynch*, 952 F.3d at 75.

As Plaintiffs explain, the R&R did not improperly "disregard[] allegations that affirmatively negate contemporaneity[.]" Opp'n at 10–11 (quoting Obj. at 8–9). The allegation Defendant relies on—that Meta builds user profiles "[a]fter gathering" information, AC ¶ 33—describes what Meta does with communications it has already learned. That allegation is fully consistent with the

Amended Complaint's other allegations that Meta learns the contents of communications at the moment of interception. *Torres v. Prudential Fin., Inc.,* No. 22-CV-7465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (explaining that whether a defendant "access[es] or even analyze[s]" communications "after they have been transmitted to the server . . . has no bearing on whether [it] read the communications while they were in transit"). Pleading a subsequent use of information does not indicate the absence of contemporaneous reading or learning of that information, and at this stage Plaintiffs are entitled to the reasonable inference that both occur. In fact, the second and third clauses of Section 631(a) contemplate these violations occurring in sequence: a third party first "reads . . . or . . . learn[s]" a communication in transit, and then "use[s] . . . any information so obtained." Cal. Penal Code § 631(a).

Defendant's related contention that Plaintiffs describe only "what NDR's Website code does," not "anything [the Advertisers] did, or when," Obj. at 7, does not accurately describe the Amended Complaint.[4] That the Meta Pixel "operates from within [NDR's] website code," Obj. at 7 (quoting AC ¶ 43), does not indicate that Meta was uninvolved in the code's operation or convert Meta's reading of Plaintiffs' communications into NDR's conduct. The Amended Complaint alleges that the Meta Pixel is Meta's code: Meta designs the Pixel, distributes it to website operators, and receives the data it transmits. AC ¶¶ 29, 35–37, 39–41. And as discussed, the Amended Complaint alleges that Meta read or learned the contents of Plaintiffs' communications while they were in transit. *Id.* ¶ 37–41. These allegations establish what Meta did and when. That Meta learned the contents of Plaintiffs' communications using its Pixel embedded on NDR's platform does not change that conclusion. *See Ambriz v. Google, LLC*, No. 23-CV-5437 (RFL), 2025 WL 830450, at *4

[4] In any event, because Defendant did not raise this argument before Judge Ricardo, and because "[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all," Defendant's argument on this point is waived. *Piligian*, 490 F. Supp. 3d at 716.

(N.D. Cal. Feb. 10, 2025) (rejecting argument that Google does not learn the contents of communications intercepted by its software because "[w]hen [the software] 'learns' the content of the call that is the same as Google 'learning it.'").

### B. Plaintiffs Adequately Pleaded that NDR Violated the Fourth Clause of Section 631(a)

Having adequately pleaded an underlying violation by Meta, Plaintiffs must also allege that NDR "aid[ed], agree[d] with, employ[ed], or conspir[ed] with" Meta "to" engage in that conduct, which requires both knowledge of the conduct and a purpose to bring it about. Cal. Penal Code § 631(a). The Amended Complaint alleges facts from which the Court can reasonably infer that NDR knew that the Meta Pixel read or learned Plaintiffs' communications while they were in transit, and that NDR installed and configured the Pixel in order for Meta to do so.

Judge Ricardo correctly concluded that the Amended Complaint adequately pleaded that NDR "took intentional steps to facilitate" the underlying violations of Section 631(a). R&R at 19 (citing AC ¶ 96–97 (NDR "obtain[ed] the necessary code and implement[ed] [it] on its website")). Plaintiffs allege that the Meta Pixel "is a string of code that a website owner can install within its website[,]" which "monitors the website's users as they interact with the website[.]" AC ¶ 35. The Amended Complaint alleges that NDR "agreed to use, configured, employed, and maintains" the Meta Pixel, "aiding [Meta] to learn, use and attempt to learn or use Website users' online communications and their sensitive personal and financial information," and that NDR's aiding "was and is deliberate." AC ¶ 98. The overt acts of installing, configuring, and maintaining the code that allows Meta to read and learn Plaintiffs' communications constitute "aid" under its ordinary definition. The reasonable inference from these allegations is that NDR's installation of the Meta Pixel on its website assisted, and indeed enabled, Meta in accessing Plaintiffs' communications while

they were in transit.[5] *See Cousin*, 681 F. Supp. 3d at 1130 (allegations that defendant "intentionally procured Meta Pixel from Meta and installed it on their website" were "sufficient to plead that [defendant] either aided, agreed, employed, or conspired with Meta in the alleged interception").

Defendant's contention that the Amended Complaint nowhere alleges that NDR "contracted with, paid, or communicated with any Advertiser about the code," Obj. at 11, and that there is no "alleged interaction between NDR and the Advertisers," *id.*, in part misreads the Amended Complaint and is predicated on a constrained interpretation of the statute. In addition to intentional installation, Plaintiffs allege that "NDR specified the types of information it desired the Advertisers to extract from its Website, such as its user's communications with it—including communications regarding their amount of debt and their applications for debt consolidation." *Id.* ¶ 99. Obtaining Meta's code, installing it on a website where personal information is collected, and directing Meta regarding the information that should be extracted from its users' communications, *id.* ¶¶ 97–99, are "alleged interaction[s]" with Meta, Obj. at 11. The fourth clause of Section 631(a) is disjunctive; a defendant who "aids" or "employs" a third party does not need to also "agree[] with" or "conspire[] with" that same party. Cal. Penal Code § 631(a). Thus, contrary to NDR's argument, the absence of an allegation of direct communication between NDR and Meta regarding the alleged misconduct is not fatal to the claim. It is, therefore, unsurprising that NDR cites no authority for the proposition that a contract, payment, or communication with the third party is required to plead derivative liability under Section 631(a). Obj. at 11. *Cf. Camm*, 2026 WL 861670, at *9 (allegations that defendant "configure[d] the Tracking Tools on [its] website so that Google could capture user-specific information" satisfied "the knowledge and intent components").

As discussed above, in addition to an overt act of assistance, the fourth clause requires that

[5] Contrary to Defendant's suggestion, Plaintiffs need not plead that NDR "intend[ed] to facilitate a crime." Obj. at 9. Section 631(a) "only require[es] intentional conduct, not knowledge of illegality." *Rusow*, 2025 WL 4657637, at *11.

NDR have acted with knowledge of the conduct that constitutes a violation and with the purpose of bringing that conduct about.[6] *YETI Coolers*, 754 F. Supp. 3d at 942. It is on this point that the Court's analysis diverges from the R&R, which did not separately evaluate these two requirements. *See* R&R at 16-19. The Amended Complaint satisfies both.

The Amended Complaint contains factual allegations that NDR knew that Meta was engaging in the prohibited conduct. A business that seeks out a third party's code, installs it on specific pages where users enter their personal information, and then tells that third party which of those inputs it wants extracted, *id.* ¶¶ 97–99, can reasonably be inferred to know how the code generally functions. And the Amended Complaint alleges that the very reason Meta "encourage[s]" website providers to install the Pixel is that it "facilitates Meta's surveillance of users' communications, activities and interactions[,]" which "in turn" allows Meta to deliver targeted advertisements to those businesses' potential customers. *Id.* ¶ 36. This allegation indicates that the Meta Pixel's surveillance function—or the active reading of users' communications and activities—was understood by NDR. *See Camm*, 2026 WL 861670, at *9 (defendant "certainly knew about Google's unlawful conduct and intended to facilitate Google's collection and transmission, even going so far as to configure the Tracking Tools on [its] website so that Google could capture user-

[6] Defendant argues that "any ambiguity in Section 631(a) must be resolved in its favor under California's rule of lenity," and that the R&R adopted "the broadest available reading" of the statute's knowledge and intent requirement without addressing lenity. Obj. at 11. The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (internal quotations omitted). But the rule only applies where, after exhausting the ordinary tools of construction, a court is left with a "grievous ambiguity or uncertainty" about what the statute prohibits. *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011) (internal quotations omitted); *see also People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886 (2022) (lenity applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule") (internal quotations omitted). The Court need not apply the rule of lenity here. The Court's interpretation of the fourth clause, set out above, does not require that the Court interpret an ambiguous statutory provision: the statute reaches a defendant who acts "to" have a third party do what the statute forbids, and therefore requires both knowledge of the third party's conduct and a purpose to bring that conduct about. That reading is drawn from the statute's text. Because the Court does not identify a "grievous ambiguity" in the statute the rule of lenity has no work to do here. *Limas*, 2026 WL 2351592, at *9 (declining to apply the rule of lenity to CIPA where no "specific, let alone egregious, ambiguities" identified in the statute); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) (same). Defendant's concern that the R&R's reading would impose liability for the routine installation of code found on nearly every modern website does not follow from the reading adopted here, which requires knowledge and purpose, not mere installation.

specific information").

Defendant's suggestion that *YETI Coolers* supports an inference that NDR did not know of the prohibited conduct is unpersuasive. Obj. at 9–10 (citing 754 F. Supp. 3d at 938–44). There, the defendant used a third-party payment processor and allowed the third party to incorporate customers' financial system into its fraud prevention system. 754 F. Supp. 3d at 938. The third party also took the customers' financial information and marketed it to merchants without the customers' consent. *Id.* The underlying violation was the processor's "secondary, unauthorized act of marketing customer information to merchants – and not the third party's collection of customer information itself[.]" *Camm,* 2026 WL 861670, at *9 (finding *YETI Coolers* "inapposite" where the third party's "unauthorized tracking of Plaintiffs' sensitive personal information is the underlying CIPA violation"). The complaint in *YETI Coolers* alleged only that the defendant was "aware of the purposes for which [the third party] collects consumers' sensitive information because [the defendant] is knowledgeable of and benefitting from [the third party's] fraud prevention services[,]" 754 F. Supp. 3d at 943, and the court could not "plausibly infer from Defendant's use of [the third party's] fraud prevention services alone that Defendant knew that [the third party's] services were based on its allegedly illegal interception and storing of financial information," *id.* In other words, the complaint did not allege facts showing the defendant knew of the conduct that constituted a violation. *See Rusow*, 2025 WL 4657637, at *11. Here, by contrast, the underlying violation is Meta's reading of Plaintiffs' communications as they are transmitted to NDR, and Plaintiffs allege that NDR purposefully sought out and installed the very tool that "monitors" its website users because it "facilitates Meta's surveillance of users' communications." AC ¶¶ 35–36; *see also Mata*, 2024 WL 5161955, at *7 (knowledge adequately pleaded where plaintiff alleged that defendant "programmed such third-party tracking technology into its website for advertising purposes and to increase its profits" and "knew that such tracking technology would transmit site visitors' activity . . . as the

entire purpose of implementing such technology is so that Defendant can target advertisements"). Concluding, from these allegations, that NDR was not aware Meta read or learned Plaintiffs' communications while they were in transit would require the Court to draw an inference against Plaintiffs, which Rule 12(b)(6) does not permit. *See Burch*, 551 F.3d at 124.

Plaintiffs also allege facts supporting the inference that NDR installed the Pixel in order for Meta to read and learn users' communications and to use the information so obtained. Plaintiffs allege that NDR installed the Meta Pixel "so" the Advertisers could use the information it obtained, AC ¶ 138, that NDR "purposefully traded" its users' information "in exchange" for advertising benefits, *id.* ¶ 5, and that NDR specified what information Meta should extract, *id.* ¶ 99. These are more than mere "[g]eneralized allegations that a defendant installed and benefitted from widely used advertising technologies[.]" Obj. at 10. The Amended Complaint alleges purpose directly, describing that NDR installed the tracking technology *in order to* have Meta capture its users' communications in real time and use the information it so obtained to improve targeted advertising—precisely what the fourth clause of Section 631(a) requires. It does not matter at the pleading stage that the benefits NDR received are "ordinary objectives of digital marketing[.]" Obj. at 10. That the objective—improved advertising outcomes—is a common one does not make how NDR allegedly pursued that objective lawful or undermine Plaintiffs' allegations that the prohibited conduct was purposeful.

Because Plaintiffs adequately pleaded both an underlying violation of the second clause of Section 631(a) by Meta and NDR's knowing and purposeful aid of that violation, the Court need not consider the allegations as to the remaining Advertisers.[7]

[7] To survive Defendant's motion to dismiss, Plaintiffs need only allege an underlying violation by one Advertiser. On a motion to dismiss, the "inquiry is whether there exists a claim for relief; not whether some allegations, but not others, would support that claim." *United States v. LabQ Clinical Diagnostics, LLC*, No. 22-CV-10313 (LJL), 2026 WL 787460, at *9 (S.D.N.Y. Mar. 20, 2026) (citing *Fed. Trade Comm'n v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022) (the conclusion that a motion to dismiss cannot be used to dismiss parts of claims "flows from the plain language of Rule 12(b)(6)")). "[O]nce a court determines that a claim states a viable basis for relief, it cannot further parse out whether

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 18.

SO ORDERED.

Dated: September 9, 2026
New York, New York

GREGORY H. WOODS
United States District Judge

other portions of the claim would suffice on their own." *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 283 n.6 (S.D.N.Y. 2024).