UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LORETTA JEAN BERNARDI** and **SOLOMON HUEBNER-MENDOZA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NATIONAL DEBT RELIEF, LLC**,<br><br>Defendant. | Case No. 1:25-cv-06334-GHW-HJR |

**DEFENDANT NATIONAL DEBT RELIEF LLC'S**
**ANSWER TO AMENDED CLASS ACTION COMPLAINT**

In accordance with Federal Rule of Civil Procedure 8(b)–(c), Defendant National Debt Relief LLC ("NDR") submits this as its answer and affirmative defenses to Plaintiffs Loretta Jean Bernardi and Solomon Huebner-Mendoza's (collectively, "Plaintiffs") Amended Class Action Complaint ("Amended Complaint").

Unless expressly admitted below, NDR denies the allegations in the Amended Complaint and denies that Plaintiffs or the putative class are entitled to any judgment or other relief whether or not expressly requested. NDR further denies that this case is suitable for class certification, including because the putative class does not meet the requirements of Federal Rule of Civil Procedure 23. Plaintiffs are not an adequate representative of any purported class; their claims are not typical; common questions of law or fact affecting the individual members of the putative class do not predominate; a class action is neither manageable nor superior; and/or there is no ascertainable class with a community of interest.

**NATURE OF THE CASE**

1. NDR admits only that: (i) it provides consumer debt relief services; (ii) it operates a website located at www.nationaldebtrelief.com (the "Website"); and (iii) visitors may, among other channels, check if they qualify for NDR's services through its Website. NDR denies the

remaining allegations in Paragraph 1, including any suggestion that the Website is the sole means by which visitors may apply for NDR's services.

2. NDR admits only that: (i) visitors may choose to check if they qualify for NDR's services by filling out an online application; (ii) its current online application asks for a first name, last name, email, phone number, and the applicant's range of debt from a drop-down menu. NDR denies the remaining allegations in Paragraph 2.

3. NDR admits only that: (i) it collects information associated with users who choose to use the Website; and (ii) like most websites, the Website uses certain advertising and analytic technologies offered by well-known companies such as Meta, Google, Microsoft, Twitter, TikTok, The Trade Desk, and Claritas (the "Advertisers"). NDR denies the remaining allegations in Paragraph 3.

4. Denied.

5. NDR admits only that: (i) it benefits from using advertising and analytic technologies on its Website; and (ii) depending on the specific tracking technology, its configuration on any given date, and various other factors, the tracking technologies can enhance analytics and improve advertising and marketing efficacy. The remainder of Paragraph 5 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Advertisers in Paragraph 5 and therefore denies them. NDR denies any remaining allegations in Paragraph 5.

6. Denied. NDR affirmatively states that users of the Website are provided with disclosures regarding the use of cookies and tracking technologies, and that users' continued use of the Website after such disclosures constitutes consent.

7. Denied.

8. NDR admits only that: (i) it benefits from using advertising and analytic technologies on its Website; and (ii) depending on the specific tracking technology, its configuration on any given date, and various other factors, the tracking technologies can enhance analytics and improve advertising and marketing efficacy. The remainder of Paragraph 8 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Advertisers in Paragraph 8 and therefore denies them. NDR denies any remaining allegations in Paragraph 8.

9. Denied.

10. Denied.

11. Paragraph 11 states a legal conclusion to which no response is required. To the extent a response is required, NDR admits only that Plaintiffs purport to bring this lawsuit on behalf of themselves and a class. NDR denies the remaining allegations in Paragraph 11.

**THE PARTIES**

12. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore denies them.

13. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies them.

14. NDR admits only that: (i) it is a New York limited liability company with its principal place of business located at 180 Maiden Lane, 28th Floor, New York, NY 10038; (ii) it offers debt relief services; and (iii) it operates the Website. NDR denies the remaining allegations in Paragraph 14.

## JURISDICTION AND VENUE

15. Paragraph 15 contains legal conclusions to which no response is required. To the extent a response is deemed required, NDR does not contest venue.

16. NDR admits only that it is a New York limited liability company with its principal place of business located at 180 Maiden Lane, 28th Floor, New York, NY 10038. The remainder of Paragraph 16 contains legal conclusions to which no response is required. To the extent a response is deemed required, NDR does not contest personal jurisdiction.

17. Paragraph 17 contains legal conclusions to which no response is required. To the extent a response is deemed required, NDR admits only that the allegations in the First Amended Complaint support this Court's jurisdiction under CAFA.

## LAWS AT ISSUE

18. Paragraph 18 contains legal conclusions to which no response is required. To the extent a response is required, NDR denies the allegations to the extent that they misquote, mischaracterize, or take out of context the cited source.

19. Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is required, NDR denies the allegations to the extent that they misquote, mischaracterize, or take out of context the cited source.

20. Paragraph 20 contains legal conclusions to which no response is required. To the extent a response is required, NDR denies the allegations to the extent that they misquote, mischaracterize, or take out of context the cited source.

21. Paragraph 21 contains legal conclusions to which no response is required. To the extent a response is required, NDR denies the allegations to the extent that they misquote, mischaracterize, or take out of context the cited source.

**FACTUAL ALLEGATIONS**

22. NDR admits only that: (i) it provides debt relief services; (ii) it operates the Website, on which visitors may learn about National Debt Relief and the services it offers; and (iii) visitors may choose to check if they qualify for NDR's services by filling out an online application. Although Figure 1 appears to reflect the Website's home page, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 22.

23. NDR admits only that: (i) the Website's homepage has an "Apply Now" button that visitors can click if they are interested in determining whether they might qualify for any of NDR's services; and (ii) to ascertain whether a visitor may qualify for any NDR services, the Website requests certain information, including an approximation of how much debt the applicant has. Although Figures 1-3 appear to reflect certain pages of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshots and what they purport to show and therefore denies any allegations regarding the same.

24. NDR admits only that visitors of the Website who are exploring whether they might qualify for NDR's services are asked to provide their contact information, including their first name, last name, phone number, and email address. Although Figure 4 appears to reflect a page of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 24.

25. NDR admits only that: (i) visitors of the Website who are exploring whether they might qualify for NDR's services are asked to provide certain information, including their address and date of birth; and (ii) under the fields requesting such information, the form states: "You

understand that by clicking on the 'Submit' button you are providing 'written instructions' to National Debt Relief (NDR) under the Fair Credit Reporting Act authorizing NDR to obtain information from your personal credit profile or other information from Experian. You authorize NDR to obtain such information solely to verify your identity and display back credit information. This is a secure soft credit pull and will NOT impact your credit score." Although Figure 5 appears to reflect a page of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 25.

26. NDR admits only that visitors of the Website who are exploring whether they might qualify for NDR's services are given the option to add family members by providing certain information, including a first and last name and date of birth. Although Figure 6 appears to reflect a page of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 26.

27. NDR admits only that a visitor may choose to complete the application on the Website by providing their social security number so that NDR can confirm the applicant's identity and provide a personalized quote. Although Figure 7 appears to reflect a page of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 27.

28. NDR admits only that once a visitor who has chosen to apply for NDR's services completes the application on the Website, NDR notifies the applicant that a debt specialist will call them and provides a toll-free number the applicant can call if they choose. Although Figure 8

appears to reflect a page of the Website, NDR lacks knowledge or information sufficient to form a belief about the source, authenticity, and date of the screenshot and what it purports to show and therefore denies any allegations regarding the same. NDR denies the remaining allegations in Paragraph 28.

29. NDR admits only that, like most websites, the Website uses certain advertising and analytic technologies offered and designed by well-known companies such as the Advertisers. The remainder of Paragraph 29 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Advertisers in Paragraph 29 and therefore denies them. NDR denies any remaining allegations in Paragraph 29.

30. Paragraph 30 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Advertisers in Paragraph 30 and therefore denies them. NDR denies any remaining allegations in Paragraph 30.

31. NDR admits only that it collects certain information voluntarily provided by applicants for purposes of determining, among other things, whether they qualify for NDR's services and in order to contact them. The remaining allegations in Paragraph 31 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies them.

32. Denied.

33. Paragraph 33 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and therefore denies them.

34. Paragraph 34 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

35. Paragraph 35 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and therefore denies them.

36. NDR denies the allegations in Paragraph 36 to the extent they relate to NDR. The remaining allegations in Paragraph 36 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

37. NDR admits only that its Website uses Meta Pixel. The remaining allegations in Paragraph 37 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and therefore denies them.

38. Denied.

39. NDR lacks knowledge or information sufficient to form a belief about the source or authenticity of the screenshots reflected in Figures 9–10 and what they purport to show and therefore denies any allegations regarding the same. NDR denies any remaining allegations.

40. Paragraph 40 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and therefore denies them.

41. Paragraph 41 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies them.

42. Denied.

43. NDR notes that Paragraph 43 refers to "TBN's server," which does not appear to reference NDR. To the extent Paragraph 43 is directed at NDR, NDR admits only that it uses Meta Pixel on its Website. The remaining allegations in Paragraph 43 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies them.

44. Paragraph 44 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 44 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the quoted sources.

45. Paragraph 45 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and therefore denies them.

46. Paragraph 46 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the quoted sources.

47. Paragraph 47 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and therefore denies them.

48. Paragraph 48 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the quoted sources.

49. Paragraph 49 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 49 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

50. Paragraph 50 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

51. Paragraph 51 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

52. NDR admits only that it uses certain Google tracking technologies and/or tag managers on its Website. The remaining allegations in Paragraph 52 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and therefore denies them.

53. Paragraph 53 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

54. Paragraph 54 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies them.

55. Paragraph 55 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and therefore denies them.

56. NDR lacks knowledge or information sufficient to form a belief about the source or authenticity of the screenshots reflected in Figures 11–12 and what they purport to show and therefore denies any allegations regarding the same. The remaining allegations in Paragraph 56 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore denies them.

57. Paragraph 57 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 and therefore denies them.

58. Paragraph 58 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

59. Paragraph 59 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies them.

60. NDR admits only that the Website uses Google Analytics. NDR denies the remaining allegations in Paragraph 60.

61. Paragraph 61 contains generic technical allegations about how the Internet works rather than allegations specific to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies them.

62. NDR admits only that: (i) it operates the Website; and (ii) the Website uses Google Analytics. The remainder of Paragraph 62 consists of generic technical allegations about how the Internet works rather than allegations specific to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of such allegations and therefore denies them.

63. Paragraph 63 contains allegations that do not relate to NDR, and therefore no response is required.

64. Paragraph 64 contains allegations that do not relate to NDR, and therefore no response is required.

65. Paragraph 65 contains allegations that do not relate to NDR, and therefore no response is required.

66. Paragraph 66 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

67. Paragraph 67 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

68. Paragraph 68 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 and therefore denies them.

69. NDR admits only that its Website uses certain X technologies. The remaining allegations in Paragraph 69 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

70. Paragraph 70 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

71. NDR admits only that its Website uses certain X technologies. The remaining allegations in Paragraph 71 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 and therefore denies them.

72. Paragraph 72 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and therefore denies them.

73. Paragraph 73 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

74. Paragraph 74 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

75. NDR admits only that it uses certain Microsoft tracking technologies on its Website. The remaining allegations in Paragraph 75 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore denies them.

76. Paragraph 76 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and therefore denies them.

77. Paragraph 77 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

78. NDR admits only that its Website uses certain TikTok technologies. The remaining allegations in Paragraph 78 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore denies them.

79. Paragraph 79 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

80. NDR admits only that its Website uses certain TikTok technologies. NDR denies the remaining allegations in Paragraph 80.

81. Paragraph 81 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 81 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

82. NDR admits only that its Website uses certain TikTok technologies. The remaining allegations in Paragraph 82 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 and therefore denies them.

83. Paragraph 83 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

84. NDR admits only that its Website uses the Trade Desk Pixel. The remaining allegations in Paragraph 84 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 and therefore denies them.

85. Paragraph 85 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 and therefore denies them.

86. Paragraph 86 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 86 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

87. Paragraph 87 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

88. Paragraph 88 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

89. Paragraph 89 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

90. Paragraph 90 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

91. NDR admits only that its Website uses the Claritas Pixel. NDR denies the remaining allegations in Paragraph 91.

92. Paragraph 92 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

93. Paragraph 93 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

94. NDR admits only that its Website uses the Claritas Pixel. The remaining allegations in Paragraph 94 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and therefore denies them.

95. NDR admits only that its Website uses the Claritas Pixel. The remaining allegations in Paragraph 95 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 and therefore denies them.

96. Denied. NDR affirmatively states that the technologies described in the Amended Complaint serve legitimate purposes in connection with the operation, optimization, analytics, and functionality of the Website.

97. NDR admits only that: (i) it operates the Website; and (ii) it uses some of the Advertisers' technologies on its Website. NDR denies the remaining allegations in Paragraph 97.

98. Denied.

99. NDR admits only that: (i) it operates the Website; (ii) it uses some of the Advertisers' technologies on its Website; and (iii) in some instances, it has the ability to configure certain Advertisers' technologies to collect certain types of information. NDR denies the remaining allegations in Paragraph 99.

100. NDR admits only that it uses certain Advertisers' tracking technologies on the Website. NDR denies the remaining allegations in Paragraph 100.

101. NDR admits only that users may apply for NDR's services on its Website. The remaining allegations in Paragraph 101 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and therefore denies them.

102. Denied. NDR affirmatively states that users of the Website are provided with disclosures regarding the use of cookies and tracking technologies, and that users' continued use of the Website after such disclosures constitutes consent.

103. Denied.

104. Paragraph 104 contains allegations that do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

105. Denied to the extent the allegations relate to NDR. The remaining allegations in Paragraph 105 do not relate to NDR, and therefore no response is required. However, if and to the extent a response is deemed required, NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 and therefore denies them. NDR further denies the allegations to the extent that they misquote, mischaracterize, or take out of context the sources cited in the footnotes.

106. Denied.

107. Paragraph 107 contains legal conclusions to which no response is required. To the extent a response is required, denied.

108. Paragraph 108 contains legal conclusions to which no response is required. To the extent a response is required, denied.

109. Paragraph 109 contains legal conclusions to which no response is required. To the extent a response is required, denied.

110. Paragraph 110 contains legal conclusions to which no response is required. To the extent a response is required, denied.

111. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 and therefore denies them.

112. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 and therefore denies them.

113. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113 and therefore denies them.

114. Denied.

115. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 and therefore denies them.

116. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 and therefore denies them.

117. Denied.

118. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 and therefore denies them.

119. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 and therefore denies them.

120. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 and therefore denies them.

121. Denied.

122. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 and therefore denies them.

123. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 and therefore denies them.

124. Denied.

125. NDR incorporates its responses to Paragraphs 1 through 124 as if set forth at length herein.

126. Paragraph 126 states a legal conclusion to which no response is required. To the extent a response is required, NDR admits only that Plaintiffs bring this lawsuit on behalf of themselves and a putative class. NDR denies the remaining allegations in Paragraph 126.

127. Paragraph 127 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 127.

128. Paragraph 128 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 128.

129. Paragraph 129 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 129.

130. Paragraph 130 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 130.

131. Paragraph 131 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 131.

132. Paragraph 132 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 132.

133. Paragraph 133 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies the allegations in Paragraph 133.

**COUNT I**
**VIOLATION OF CIPA**
**CAL. PENAL CODE 631**

134. NDR incorporates its responses to Paragraphs 1 through 133 as if set forth at length herein.

135. Paragraph 135 states a legal conclusion to which no response is required. To the extent a response is required, NDR admits only that Plaintiffs bring this lawsuit on behalf of themselves and a putative class. NDR denies the remaining allegations in Paragraph 135.

136. Paragraph 136 states a legal conclusion to which no response is required.

137. Denied.

138. Denied.

139. Denied.

140. Denied.

141. NDR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 regarding where Plaintiffs and putative class members were located when they allegedly visited the Website and therefore denies them.

142. Denied.

143. Paragraph 143 states a legal conclusion to which no response is required. To the extent a response is required, NDR denies that Plaintiffs or any putative class member has been injured or is entitled to damages or any other relief as alleged in this action.

**PRAYER FOR RELIEF**

NDR denies that Plaintiffs or any putative class member is entitled to any of the relief requested in the Prayer for Relief section.

**NDR'S AFFIRMATIVE DEFENSES**

NDR has not completed its full investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The defenses asserted herein are based on NDR's knowledge, information, and belief at this time. By asserting the defenses herein, NDR has not knowingly and intentionally waived any applicable defenses and hereby expressly reserves the right to assert any additional defenses, cross-claims, and/or third-party claims as may be appropriate at a later time. Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of Plaintiffs' claims, NDR asserts the following separate and additional defenses on information and belief:

**First Affirmative Defense**
**(Lack of Legally Protected Privacy Interest)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs and putative class members do not maintain a legally protected privacy interest over any data allegedly collected. When Plaintiffs signed up for accounts with some or all of the Advertisers referenced in the Amended Complaint, they agreed to those Advertisers' terms of service, privacy policy, and cookies policy. Those policies and terms authorized some if not all of the Advertisers to collect Plaintiffs' information from other websites. Further, Plaintiffs had access to account activity controls through many of the third-party platforms (e.g., Meta and Google), which allow users to view, manage, and limit the Advertisers' tracking activities. Plaintiffs were on notice of, and had the ability to prevent, the alleged receipt of certain website data but chose not to take those steps. Plaintiffs could also have contacted NDR by telephone to submit an application rather than using the Website. Moreover, the information relating to the Plaintiffs that was purportedly shared with the Advertisers consisted of data that Plaintiffs voluntarily submitted to a publicly accessible website and does not constitute private "contents" of a communication within the meaning of CIPA. Additionally, Plaintiffs' information may have been publicly-available (e.g., through bankruptcy proceedings or debt collection actions) or is otherwise nonprivate information, not private "personal information" or personally identifiable information that is entitled to protection under the law. Further, to the extent any Plaintiff continued to visit the Website or use NDR's services after learning of its use of tracking technologies, they cannot assert a reasonable claim to privacy in information collected by the Website.

**Second Affirmative Defense**
**(Consent, Express or Implied; Implied License)**

Plaintiffs and putative class members consented to the Advertisers' receipt of the information allegedly collected from the Website, including (but not limited to) to the extent they viewed the Website's cookie banner and/or privacy policy and continued to use the Advertisers and/or NDR's services. Additionally, Plaintiffs' and class members' agreement to any of the Advertisers' terms of use and/or privacy policies constituted consent to and/or created an implied license for the information sharing alleged in the Amended Complaint.

**Third Affirmative Defense**
**(Barred by Contract)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by contracts and/or agreements between Plaintiffs (or putative class members) and NDR and/or the Advertisers whose tracking technologies were allegedly used on the Website.

**Fourth Affirmative Defense**
**(No Predicate Violation; No Derivative Liability)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs cannot establish that any of the Advertisers committed a predicate violation of Section 631(a)'s first, second, or third clauses, which is a prerequisite to any aiding-and-abetting claim against NDR under the statute's fourth clause. As to the first clause, courts have uniformly held that it applies only to communications transmitted over telephones and not those transmitted over the internet. As to the second clause, Plaintiffs fail to allege that any Advertiser willfully read or attempted to learn the contents of any communication contemporaneously—i.e., "while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). The Amended Complaint's own allegations establish that the Advertisers' processing and analysis of data occurs after collection, not

simultaneously with the communication's transmission, which forecloses any plausible predicate violation under the second clause. As to the third clause, because Plaintiffs have not established a violation of the first or second clause, they cannot establish that any information was "obtained" through conduct prohibited by those clauses—a threshold requirement for liability under the third clause. Without a plausible predicate violation by any Advertiser, NDR cannot be held derivatively liable under Section 631(a)'s fourth clause.

**Fifth Affirmative Defense**
**(Party to Communications)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because NDR was a party to any and all communications Plaintiffs allegedly transmitted through the Website. Courts consistently hold that a party to a communication cannot be liable for a direct violation of Section 631(a). Plaintiffs' own allegations confirm that NDR, as the owner and operator of the Website, was a direct recipient of the communications at issue. To the extent any third-party Advertiser received information associated with those communications, it did so in connection with services performed on NDR's behalf, functioning as NDR's vendor, service provider, or agent—not as an independent eavesdropper. NDR's use of third-party analytics and advertising technologies to assist with website performance optimization and advertising does not transform those service providers into unauthorized interceptors of NDR's own communications.

**Sixth Affirmative Defense**
**(Good Faith)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because at all times NDR acted in good faith and in compliance with any applicable statutes and/or regulations.

**Seventh Affirmative Defense**
**(Lack of Requisite Knowledge and Intent)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because NDR lacked the knowledge and specific intent required to sustain an aiding-and-abetting claim under Section 631(a). To state a viable fourth-clause claim, Plaintiffs must establish both that NDR had knowledge of the Advertisers' purportedly unlawful conduct and that NDR acted with the specific intent to facilitate a violation of the statute. Plaintiffs cannot do so.

**Eighth Affirmative Defense**
**(Assumption of Risk)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by assumption of risk arising from Plaintiffs' voluntary use of internet-based services, including the Website, and/or their knowledge of Internet tracking practices. Plaintiffs knowingly and voluntarily used the Internet and visited the Website, with full knowledge that websites commonly use cookies and similar tracking technologies. The use of cookies and analytics tools on websites is ubiquitous and widely known, and Plaintiffs assumed the risk of any alleged privacy invasion by choosing to browse the Internet. Further, Plaintiffs could have taken readily available steps to limit tracking, including using private browsing modes, cookie-blocking software, or adjusting their browser settings, but chose not to do so.

**Ninth Affirmative Defense**
**(Release)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by release, including to the extent Plaintiffs impliedly released such claims by continuing to use NDR's services after learning of the alleged conduct.

**Tenth Affirmative Defense**
**(Failure to Mitigate)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, to the extent discovery reveals that Plaintiffs and/or class members failed to mitigate their damages. For example, to the extent Plaintiffs and putative class members had notice regarding the information any third party allegedly received about them, they are barred, in whole or in part, from recovering damages.

Plaintiffs and putative class members also are barred, in whole or in part, from recovering damages based on the alleged disclosure of information that they publicized through other channels, such as social media, or otherwise shared with friends or other third parties.

Plaintiffs and putative class members also are barred, in whole or in part, from recovering damages to the extent they did not attempt to use settings that would limit the data shared with the Website and/or third parties.

Plaintiffs and putative class members also are barred, in whole or in part, from recovering damages to the extent they failed to read disclosures that would have put them on notice of NDR's use of data as disclosed in NDR's terms and policies.

**Eleventh Affirmative Defense**
**(Acts or Omissions of Plaintiffs and/or Third Parties)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because the Plaintiffs' alleged damages, if any, were caused by persons and entities other than NDR. Such intervening and superseding conduct of others bars and/or diminishes Plaintiffs' recovery. Any alleged harm to Plaintiffs and putative class members was proximately caused by subsequent and intervening or superseding acts of Plaintiffs or the putative class members and/or of third parties. NDR did not authorize any third party to use individually identifiable information

they collected, if any, to violate Plaintiffs' privacy rights and thus any injury Plaintiffs may have suffered was caused by the actions of third parties, not NDR. Additionally, any actions taken by third parties with respect to cookies or data collection were within the third parties' sole control and discretion, not NDR's. To the extent Plaintiffs previously visited other websites that used the third-party technologies described in the Amended Complaint, or similar tracking technologies, Plaintiffs' information would have, under Plaintiffs' theory, already been in that third party's possession.

**Twelfth Affirmative Defense**
**(Lack of Proximate Cause)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because NDR's conduct was not the proximate cause of any damage or injury alleged to have been suffered by Plaintiffs.

**Thirteenth Affirmative Defense**
**(Lack of Damages)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs and the putative class have suffered no actual injury or legally cognizable damages, and their purported damages, if any, are speculative and/or uncertain and therefore not compensable. Plaintiffs have not alleged any concrete and particularized injury, such as identity theft, financial loss, or other tangible harm, resulting from the alleged conduct. The mere allegation that information was transmitted to a third-party advertising platform does not constitute cognizable injury. Additionally, to the extent Plaintiffs claim injury based on the alleged value of their personal information, such claims are speculative and unquantifiable. Plaintiffs have not identified any actual misuse of their information or any economic harm traceable to the alleged conduct. Further, to the extent Plaintiffs seek statutory damages under Cal. Penal Code § 637.2,

such damages require a showing that the claimant was "injured by" a violation, which Plaintiffs have not established.

**Fourteenth Affirmative Defense**
**(Statute of Limitations)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by the statute of limitations under applicable law. The statute of limitations for Plaintiffs' and putative class members' claims under the California Invasion of Privacy Act is one year. The limitations period began to run when Plaintiffs and class members had actual or inquiry notice of a potential privacy violation, including, for example, when they began seeing targeted advertisements or when they reviewed information about their online activity through third party account activity controls, such as those provided by Google and Meta. Plaintiffs' and putative class members' claims are time-barred to the extent they are based on conduct occurring prior to the applicable limitations period. To the extent Plaintiffs seek to represent a class, the putative Class Period is inappropriate given applicable statutes of limitations, and any class must be limited to those individuals whose claims accrued within the applicable limitations period.

**Fifteenth Affirmative Defense**
**(Laches)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by the doctrine of laches due to unreasonable delay and resulting prejudice. Plaintiffs were aware or should have been aware of the alleged use of tracking technologies on the Website well before filing suit, and their delay in asserting claims has prejudiced NDR's ability to defend this action.

**Sixteenth Affirmative Defense**
**(Waiver)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by waiver based on Plaintiffs' prior conduct and knowledge regarding the challenged practices.

Plaintiffs knowingly and voluntarily visited the Website, accepted the Website's terms and conditions including its privacy policy, and/or continued to use the Website despite having constructive or actual notice of the alleged tracking practices, thereby waiving any objection to such practices.

**Seventeenth Affirmative Defense**
**(Equitable Estoppel)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by the doctrine of equitable estoppel. Plaintiffs' conduct, including their agreement to the Website's terms of service and privacy policy, their continued use of the Website, and/or their failure to take available steps to prevent tracking, induced NDR to reasonably believe that Plaintiffs did not object to the alleged tracking practices. Plaintiffs are now estopped from asserting claims based on conduct to which they impliedly consented.

**Eighteenth Affirmative Defense**
**(Failure to State a Claim)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs fail to state a claim upon which relief can be granted. Without limitation: (i) NDR cannot be liable for a direct violation of Section 631(a) because it was a party to the communications at issue; (ii) Plaintiffs fail to allege a plausible predicate violation of Section 631(a)'s first, second, or third clauses by any Advertiser, which is required to sustain an aiding-and-abetting claim under the fourth clause; (iii) Plaintiffs fail to allege that NDR acted with the knowledge and specific intent necessary for aiding-and-abetting liability; (iv) Plaintiffs fail to allege that any data transmitted to any third party constituted "contents" of a communication within the meaning of the statute; and (v) Plaintiffs fail to allege that any Advertiser read or attempted to

learn the contents of any communication contemporaneously with its transmission, as required by the second clause's "while the same is in transit" requirement.

**Nineteenth Affirmative Defense**
**(Unclean Hands)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by the doctrine of unclean hands.

**Twentieth Affirmative Defense**
**(Equitable Relief)**

Plaintiffs and putative class members cannot establish that legal damages are an inadequate remedy such that they are entitled to equitable relief.

**Twenty-First Affirmative Defense**
**(No Entitlement to Interest or Fees)**

Plaintiffs and class members are not entitled to their requested amount, or rate, of pre- or post- judgment interest. Nor are they entitled to recover attorneys' fees or other costs and expenses.

**Twenty-Second Affirmative Defense**
**(Unconstitutional Request for Statutory and Punitive Damages)**

Statutory, punitive, or exemplary damages should not be awarded or should otherwise be limited. That is because (1) any recovery of statutory or exemplary damages would violate the substantive and procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, by Article 1, Section 7 of the California Constitution, by section 3294 of the California Civil Code, and by the common law; and (2) imposition of any statutory, punitive, or exemplary damages would constitute an excessive fine or penalty under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the California Constitution.

Any aggregation of statutory damages should be barred or should otherwise be limited. This is because imposition of massively aggregated statutory damages on the scale of what

Plaintiffs and putative class members seek would constitute an excessive fine or penalty under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the California Constitution. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022).

**Twenty-Third Affirmative Defense**
**(Not Proper for Class Certification)**

This case is improper for resolution on a class-wide basis because the putative class does not meet the requirements of Federal Rule of Civil Procedure 23. Specifically, Plaintiffs are not an adequate representative of any purported class; their claims are not typical; common questions of law or fact affecting the individual members of the class do not predominate; a class action is neither manageable nor superior; and/or there is no ascertainable class with a community of interest. By way of example only, Plaintiffs and putative class members cannot show that any information allegedly intercepted or disclosed relates specifically to them. Because more than one individual may have access to a single device or computer, mini-trials would be necessary to determine if the information allegedly collected related to each and every individual actually using the computers and/or computer browsers at issue. Additionally, individualized inquiries are required to determine: (i) whether each putative class member had an account with each third party technology provider at the time they visited the Website and, if so, their account settings; (ii) whether each putative class member knew or had reason to know of the Website's use of tracking technologies; (iii) whether each putative class member's website activity reflected information, if any, about them rather than to some other person; (iv) whether each putative class member inputted truthful information about themselves on the Website; (v) whether each putative class member visited the Website for reasons that are considered private under the law; (vi) whether prior or subsequent to visiting the Website each putative class member disclosed to any other third party (e.g., friends, financial institutions, in bankruptcy filings, on social media, etc.) any "private"

information they claim the Website improperly shared with a third party; (vii) the specific cookies, if any, that were transmitted during each visit; (viii) each class member's browser and device settings; (ix) whether each class member had cookie-blocking or ad-blocking software enabled; (x) each class member's subjective expectations and beliefs regarding privacy; (xi) whether each class member suffered any cognizable injury; and (xii) the circumstances of each class member's website visit, including the date, time, and manner of interaction with the Website, among other things.

If the Court certifies a class in this action, then NDR asserts the affirmative defenses set forth herein against each and every member of the certified class. Additionally, given the lack of discovery and aggregated nature of Plaintiffs' claims, it is not feasible for NDR to forecast potential affirmative defenses that might apply to any given absent class member at this time. NDR expressly reserves the right to assert additional affirmative defenses as the case progresses.

**Twenty-Fourth Affirmative Defense**
**(Indispensable Party)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs have failed to join necessary and indispensable parties to the action. Plaintiffs' CIPA claim is predicated on the theory that the Advertisers—including Meta, Google, X Corp., Microsoft, TikTok, The Trade Desk, and Claritas—committed predicate violations of Section 631(a) by intercepting and learning the contents of users' communications. Yet none of the Advertisers are named as defendants in this action. Because NDR's liability is entirely derivative of the Advertisers' alleged primary violations, complete relief cannot be accorded among the existing parties, and adjudication in the Advertisers' absence may impair their ability to protect their interests or leave NDR subject to inconsistent obligations. The Advertisers are therefore necessary and indispensable parties.

**Twenty-Fifth Affirmative Defense**
**(Extraterritorial Application)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, to the extent the claims asserted require the improper extraterritorial application of California law. NDR is a New York limited liability company with its principal place of business in New York. CIPA is a California criminal statute, and its application must be limited to conduct with a sufficient nexus to California. To the extent Plaintiffs seek to hold NDR liable based on the actions of third-party Advertisers that occurred outside California, or based on communications initiated from or received at locations outside California, such claims improperly seek to apply CIPA extraterritorially.

**Twenty-Sixth Affirmative Defense**
**(Dormant Commerce Clause)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, by the Dormant Commerce Clause.

**Twenty-Seventh Affirmative Defense**
**(Authorized Conduct)**

NDR's conduct is authorized, in whole or in part, by applicable law and industry practice. NDR published a privacy policy on its Website disclosing its use of cookies and tracking technologies, consistent with California Business & Professions Code Section 22575 et seq. ("CalOPPA") and similar statutes. NDR's use of advertising and analytics technologies on the Website was consistent with its publicly available privacy disclosures and the terms under which users accessed the Website. To the extent NDR's privacy policy and cookie banner disclosed the use of tracking technologies, NDR's conduct was authorized and did not violate Section 631(a).

**Twenty-Eighth Affirmative Defense**
**(Impossibility/Impracticability)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because if CIPA were construed to bar the use of standard advertising and analytics technologies—including the collection of IP addresses, cookies, and other technical data necessary for modern website functionality, performance optimization, and advertising—compliance would be impossible or impracticable for NDR and virtually every other website operator. Such a construction would criminalize routine and ubiquitous internet practices that the California Legislature could not have intended when it enacted CIPA in 1967.

**Twenty-Ninth Affirmative Defense**
**(Rule of Lenity)**

The provisions on which Plaintiffs base their CIPA claims are ambiguous. Because CIPA is a penal statute housed within California's Penal Code and carrying criminal penalties, the rule of lenity requires that any ambiguity be resolved in NDR's favor. Courts have recognized that CIPA's language is difficult to apply to modern technologies and have held that "courts should generally resolve [CIPA's] many ambiguities in favor of the narrower interpretation." *Doe v. Eating Recovery Center, LLC*, No. 3:23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). The California Legislature enacted CIPA in 1967 to address traditional wiretapping and eavesdropping. There is no indication the Legislature intended the statute to sweep so broadly as to criminalize the standard use of widely adopted advertising and analytics technologies offered by globally recognized platforms and common to nearly every modern website. Plaintiffs' proposed interpretation would effectively make it a criminal act for any website to use standard advertising tools, an outcome that must be rejected under the rule of lenity.

**Thirtieth Affirmative Defense**
**(Legitimate Competing Interests)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because NDR's use of advertising and analytics technologies on the Website is justified by legitimate competing interests, including, without limitation: website functionality and user experience optimization; cybersecurity, fraud prevention, and bot detection; performance analytics and service improvement; and advertising attribution and marketing efficiency.

**Thirty-First Affirmative Defense**
**(Binding Arbitration)**

NDR reserves and asserts the right to compel arbitration and stay this action pursuant to the governing agreement if discovery reveals Plaintiffs or any putative class member consented and/or agreed to submit disputes to binding arbitration.

**Thirty-Second Affirmative Defense**
**(No "Contents" of Communication Intercepted)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because the data allegedly transmitted to the Advertisers does not constitute the "contents or meaning" of any "message, report, or communication" within the meaning of Section 631(a). The information Plaintiffs allege was collected—including IP addresses, cookies, device identifiers, and other technical metadata—is routing, addressing, or signaling information, not substantive communication content. To the extent the Advertisers received technical data necessary to facilitate the transmission and display of web pages, such data does not constitute protected "contents" under CIPA. Moreover, information that Plaintiffs voluntarily entered into form fields on a publicly accessible website—such as name, phone number, and email address—was provided to NDR, not to the Advertisers, and any incidental receipt by a third-party analytics or advertising tool of such data in connection with an HTTP request does not amount to reading or learning the "contents" of a communication.

**Thirty-Third Affirmative Defense**
**(No Contemporaneous Interception; Communications Not "In Transit")**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because no Advertiser read, attempted to read, or attempted to learn the contents of Plaintiffs' communications "while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," as required by the second clause of Section 631(a). The Amended Complaint's own allegations establish that the Advertisers' processing and analysis of any data collected occurred after the communications were completed—not contemporaneously with their transmission. Courts have consistently interpreted the word "while" in the second clause to impose a contemporaneity requirement that applies to all three

temporal predicates (in transit, passing over a wire, and being sent from or received in California), and Plaintiffs' failure to allege simultaneous interception and comprehension is fatal to their claim.

**Thirty-Fourth Affirmative Defense**
**(Lack of Standing)**

The claims and allegations in the Amended Complaint are barred, in whole or in part, because Plaintiffs lack Article III standing to pursue this action. To establish standing, Plaintiffs must demonstrate that they suffered a concrete and particularized injury in fact that is fairly traceable to NDR's alleged conduct and redressable by a favorable decision. Plaintiffs have not identified any concrete harm resulting from the alleged transmission of data to the Advertisers. They do not allege identity theft, financial loss, unauthorized charges, or any other tangible injury. The mere allegation that tracking technologies were present on a website Plaintiffs visited does not, without more, constitute a concrete injury sufficient to confer Article III standing.

## RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

NDR reserves the right to allege additional defenses as they may become known, or as they evolve during the litigation, and to amend its Answer accordingly.

## PRAYER FOR RELIEF

WHEREFORE, NDR prays as follows:

1. That the Amended Complaint be dismissed with prejudice;
2. That Plaintiffs take nothing by way of the Amended Complaint;
3. That Plaintiffs' prayer for relief is denied in full;
4. That judgment be entered in favor of NDR and against Plaintiffs;
5. For costs of suit incurred herein, including attorneys' fees and expenses; and

6. For such other and further relief as the Court deems just and proper.

DATED: September 23, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*

Gregory P. Szewczyk (SBN 4795464)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVCE**

I hereby certify that on this 23rd day of September, 2026, I directed a true and correct copy of the foregoing to be served via the electronic filing system upon the following counsel of record:

Joseph Henry (Hank) Bates, III
Carney Bates & Pulliam, PLLC
One Allied Drive
Suite 1400
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: hbates@cbplaw.com

Samuel R Jackson
Carney Bates & Pulliam, PLLC
One Allied Drive
Ste 1400
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: sjackson@cbplaw.com

*s/Stephanie Agabo*
Legal Administrative Assistant